1  WILLIAM J. THOMAS, JR., Bar No. 67798
   HEATHER C. BAUGH, Bar No. 244850
2  ANTHONY J. VAN RUITEN, Bar No. 256087
   BEST BEST & KRIEGER LLP
3  400 Capitol Mall, Suite 1650
   Sacramento, California 95814
4  Telephone: (916) 325-4000
   Telecopier: (916) 325-4010
5
   Attorneys for Intervenor
6  California Cattlemen's Association

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*,<br><br>             Plaintiffs,<br><br>     v.<br><br>UNITED STATES FOREST SERVICE,<br><br>             Defendants. | Case No. 08-CV-1460 PJH<br><br>CALIFORNIA CATTLEMEN'S ASSOCIATION'S REPLY TO OPPOSITION TO MOTION FOR LEAVE TO INTERVENE<br><br>[Filed concurrently with:<br>1. Declaration of Mike Bryne; and<br>2. Compendium of Authorities.]<br><br>Date:   July 23, 2008<br>Time:   9:00 a.m.<br>Ctrm:   3<br>Judge:  Honorable Judge Phyllis J. Hamilton<br><br>Complaint filed: March 14, 2008 |
| CALIFORNIA CATTLEMEN'S ASSOCIATION,<br><br>             Intervenor. | |

SACRAMENTO\HBAUGH\51837.1

REPLY TO OPPOSITION TO MOTION TO INTERVENE

**TABLE OF CONTENTS**

                              **Page**

1.   INTRODUCTION ................................................................................................ 1

2.   BACKGROUND ................................................................................................. 2

3.   ARGUMENT ...................................................................................................... 4

    A.   CCA HAS A SIGNIFICANTLY PROTECTABLE INTEREST IN THIS LITIGATION AND SHOULD BE PERMITTED INTERVENTION AS A MATTER OF RIGHT ............................................................................ 4

        (1)   This Case Does Not Pose a Traditional NEPA Challenge ....................... 4

        (2)   Grazing Interests Have Been Allowed to Intervene in New Mexico in a Similar Suit ..................................................................................... 7

        (3)   Even if this is Regarded as a Traditional NEPA Case, CCA Should Be Permitted to Intervene as a Matter of Right ......................................... 8

    B.   PERMISSIVE INTERVENTION IS APPROPRIATE EVEN IF INTERVENTION AS A MATTER OF RIGHT IS NOT AVAILABLE ............. 10

        (1)   CCA will Contribute Unique Arguments and Information ...................... 13

        (2)   CCA Has an Interest in the Outcome of the Merits Phase ....................... 14

        (3)   A Remedies Phase is Unlikely ................................................................. 15

4.   CONCLUSION ................................................................................................... 15

**TABLE OF AUTHORITIES**
(continued)

Page

**Cases**

*Churchill County v. Babbit*
150 F.3d 1072 ............................................................................................................. 4, 5, 8, 9

*Citizens for Better Forestry v. Dept. of Agriculture*
481 F.Supp.2d 1059, 1063 (N.D. Cal. 2007) ............................................................. 2, 10, 11

*County of Fresno v. Andrus*
622 F.2d 436, 438 (9th Cir. 1980) ............................................................................. 1, 4, 5, 14

*Donaldson FKA Sweet v. United States*
400 U.S. 517 ............................................................................................................. 8, 9

*Kleissler v. United States Forest Service*
157 F.3d 964 (3rd Cir. 1998) ..................................................................................... 9, 11

*Kootenai Tribe of Idaho v. Veneman*
313 F.3d 1094, 1109 (9th Cir. 2002) ......................................................................... passim

*Olympic Forest Coalition*
2007 WL 3374996 at *2 ............................................................................................ 12

*San Juan County, Utah v. United States*
503 F.3d 1163, 1193 (10th Cir. 2007) ....................................................................... 9

*SEC v. U.S. Realty & Improvement Co.*
310 U.S. 434, 459, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940) ....................................... 10

*Sierra Club v. Espy*
18 F.3d 1202 (5th Cir. 1994) ..................................................................................... 9

*Sierra Club v. Glickman*
82 F.3d 106 (5th Cir. 1996) ....................................................................................... 9

*Sierra Club v. United States EPA*
995 F.2d 1478, 1482 (9th Cir. 1993) ......................................................................... 1, 4, 5, 6

*Stringfellow et al. v. Concerned Neighbors in Action et al.*
480 U.S. 370, 374-376 .............................................................................................. 11, 14

*The Lands Council v. McNair*
(9th Cir. July 2, 2008) ............................................................................................... 2, 10

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

**TABLE OF AUTHORITIES**
(continued)

Page

*Wetlands Action Network v. United States Army Corps. of Engineers*
222 F.3d 1105, 1114 ............................................................................................ 4, 8, 15

*Wilderness Society v. Babbit*
104 F.Supp.2d 10 (D.D.C. 2000) ..................................................................................... 9

**Statutes**

40 Code Federal Regulations section 1508.4 ................................................................... 3
Federal Rules of Civil Procedure Rule 24 (a) ...................................................... 5, 10, 13
Federal Rules of Civil Procedure Rule 24(b). ...................................................... 1, 10, 13
Federal Rules of Civil Procedure Rule 24(b)(2) ........................................................ 10, 11
Public Law 108-44, sec 389 (2005) .................................................................................. 6
Public Law 108-447, sec 339 (2005) .............................................................................. 14
Public Law 110-161, sec. 421 (2008) ......................................................................... 6, 14
Public Law 110-161, sec. 421 (2008) ............................................................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

The Plaintiffs have disingenuously argued that California Cattlemen's Association ("CCA") lacks a significant protectable interest in this litigation. This assertion flies in the face of the Congressional history behind the Federal Land Policy Management Act, and specifically the enactment of the 2005 and 2008 Appropriations Act riders at issue in this case. It also ignores the very real consequences that this litigation will invariably have on ranchers represented by the CCA. As a practical matter, the CCA and the public land ranchers have the *only* financial and property interests being jeopardized by this lawsuit. A determination on the merits in favor of Plaintiffs will necessarily require this Court to invalidate permits which ranchers have vested rights in, potentially destroying their livelihoods, impacting their private lands, and impacting local communities. Since grazing is time-sensitive, the loss of these valuable permits could result in unforeseen consequences to the local communities and economy, in addition to the detrimental impacts to public land ranching that Congress has clearly sought to preserve.

Contrary to what Plaintiffs would have this Court believe, this is not a matter of the Court ordering the government to engage in more environmental review pursuant to the National Environmental Protection Act ("NEPA") before it issues a routine project decision. Therefore, the government is not the only party that has a significant protectable interest in this litigation, and this case is not analogous to those cases cited by Plaintiffs that narrowly define a significant protectable interest. Rather, CCA's members have a legitimate right to defend the application of the Appropriations Act and the FLPMA, as they combine to regulate ranchers' grazing management practices and monitoring obligations, and thus have immediate impact on ranchers who seek permit renewal. *Sierra Club v. United States EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993); *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

Alternatively, even if the Court finds that intervention as a matter of right is not permissible in this case, permissive intervention under Rule 24 (b) should certainly be granted

because the CCA will contribute a great deal to the resolution of this case. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1109 (9th Cir. 2002); see also *Citizens for Better Forestry v. Dept. of Agriculture*, 481 F.Supp.2d 1059, 1063 (N.D. Cal. 2007); *The Lands Council v. McNair*, No. CV-06-00425, (9th Cir. July 2, 2008) (*en banc* order affirming district court's order to deny the land council a preliminary injunction) (see Compendium of Authorities, Exhibit D).

Importantly, CCA can and will provide arguments that reflect the interests of cattlemen and are uncolored by political decisions and party lines. The USFS cannot be, nor should it be required to defend the interests of grazers, or the monitoring or other information they provided during their permit renewal process. Rather, the USFS's sole function as defendant in this suit will be to justify the USFS's application of the Appropriation Act CEs to the allotments at issue. Since the CCA can and will provide independent arguments and factual information in defense of the claims being made by Plaintiffs that may not be presented by the government, especially in an election year, this Court should exercise its discretion and permit CCA to intervene because CCA has an important interest in the subject matter of this case, and can contribute an independent perspective to the orderly resolution of it.

2.  **BACKGROUND**

To understand why this case is so unique from typical environmental actions, it is essential to understand the history of environmental review as to grazing public lands. For years, the United States Forest Service ("USFS") has struggled to fulfill its obligations under NEPA with respect to public grazing. Lacking adequate resources at almost every level, the USFS has consistently had trouble meeting deadlines for completing environmental assessments ("EAs") and for generating environmental impact statements ("EISs") for individual grazing permits. (See Declaration of Mike Byrne ["Byrne Decl."] at ¶¶ 13-15.) This has lead to potential severe hardship on the part of cattlemen, who seek permits for grazing that are time-sensitive, and in their absence would require transferring cattle from public to private lands which are generally unavailable.

In the early 1990s, Congress became focused on the strain the USFS was experiencing. In an effort to address the situation, Congress balanced the needs of the environment against the need for time-sensitive permit renewal in two Recession Acts, and later two Appropriations Act Riders. The 2005 and 2008 Appropriations riders at issue in this case are indicative of the balance struck by Congress between cattle and environmental interests. Therefore, the elements these riders impose reflect a hybrid that is not often seen in traditional categorical exclusions under NEPA. Like most *statutory exclusions* found in NEPA, the "Categorical Exclusions" ("CE")[1] outlined in the 2005 and 2008 rider seek to remove some grazing permit processes from NEPA's extensive review requirements if certain criteria are met- regardless of possible impacts that would traditionally require an EIS under NEPA.

However, unlike most statutory exclusions, the CE's attempt to ensure that in so removing some grazing permit renewals from full NEPA review, they limit such process in an environmentally conscious manner. This aspect of the CEs make them appear like traditional categorical exclusions under 40 Code Federal Regulations section 1508.4. However, the CEs contained within these Appropriations riders are not traditional regulatory categorical exclusions found within NEPA. The CEs here impose independent requirements that, if met, remove specific grazing decisions from the purview of NEPA.

Accordingly, this is not a traditional "NEPA challenge," but rather it is a review of the USFS's application of the three elements of the CEs, and there is no law precluding this court from allowing CCA to intervene as a matter of right to protect its core interest. These CEs are a distinct law, and are designed to protect a host of interests including CCA's. Plaintiffs have strategically attacked the application of these CEs as applied to individual allotments in an effort to create delay, eliminate grazing and chill the USFS from using legal tools that streamline environmental review as Congress envisioned. See *CRS Report for Congress*, The National Environmental Policy Act: Streamlining NEPA, Updated January 9, 2007, Linda Luther, p. 10

---

[1] The riders use the term "categorical exclusion," however, the riders do not establish a traditional categorical exclusion as found in 40 Code Federal Regulations section 1508.4 of NEPA's regulations. Rather, this is an imprecise nomenclature used by the rider, and therefore should not be considered determinative as to whether this is a traditional NEPA action.

SACRAMENTO\HBAUGH\51837.1                -3-

REPLY TO OPPOSITION TO MOTION TO INTERVENE

[finding that litigation often creates NEPA-related project delay.] (see Compendium of Authorities, Exhibit A). Consequently, this case will set an important precedent, as it has the potential to make permit re-issuance so burdensome and costly and difficult to administer that public grazing becomes difficult or impossible.

3. ARGUMENT

A. CCA HAS A SIGNIFICANTLY PROTECTABLE INTEREST IN THIS LITIGATION AND SHOULD BE PERMITTED INTERVENTION AS A MATTER OF RIGHT

(1) This Case Does Not Pose a Traditional NEPA Challenge

It is true that the Ninth Circuit has determined that in some applications private parties do not have a significant protectable interest in the merits of a NEPA action because NEPA requires action only by the government, and only the government can, therefore, be liable. *Wetlands Action Network v. United States Army Corps. of Engineers*, 222 F.3d 1105, 1114; *Churchill County v. Babbit*, 150 F.3d 1072. However, this narrow rule has not been applied to laws designed to <u>remove a project entirely</u> from the purview of NEPA. Where a party articulates a property or permit right that is threatened by the litigation, the Court will permit intervention even if the underlying cause of action is environmental in nature, where the party will have some obligation under the law at issue. *Sierra Club v. United States EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993) [allowing intervention by defendants in a clean water act]; *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) [allowing private farms to intervene as defendants in a NEPA cases because the competing policy of the Reclamation Act was adopted by Congress to provide farmers some rights.

This case does not involve a traditional NEPA challenge, so *Churchill* and cases like it are inapplicable. In *Churchill*, the County of Churchill alleged that the government violated NEPA

SACRAMENTO\HBAUGH\51837.1      -4-

by failing to prepare a program EIS prior to implementing the Fallon Paiute Shoshone Indian Tribes Water Rights Settlement Act. A local power utility ("Utility") attempted to intervene in the suit as a defendant as a matter of right under Federal Rule 24 (a) ("Rule 24 (a)"). *Id.* at 1077. The Utility contended that the action was more than a NEPA challenge because Churchill was attacking the settlement itself in an attempt to prevent its implementation. *Id.* at 1082-103. The Court disagreed finding that the action was "firmly grounded on claims of NEPA violation." *Id.*

Here, as opposed to the *County of Churchill*, Plaintiffs' claims deal with issues squarely outside the realm of NEPA- mainly the application of the CEs by the USFS. If the Court finds the USFS's application of the CEs was proper, NEPA will never be implicated. Therefore, CCA is not contending Plaintiffs have alleged NEPA claims that are illusory, as was argued by the proposed intervenors in *Churchill*. Rather, Plaintiffs have clearly alleged violations of particular statutory elements of the riders on an allotment by allotment basis that will ultimately dictate, regulate, or perhaps eliminate the conduct of CCA's members.

Since the CEs were enacted with the interest of cattlemen in mind, and since cattlemen have been given monitoring and reporting obligations by the USFS which becomes part of the data available to USFS on their implementation of the CEs, CCA should be permitted to intervene. In *Sierra Club*, the City of Phoenix attempted to intervene in a case brought by environmentalists against the EPA. *Sierra Club supra*, 995 F.2d at 1480. There, plaintiffs alleged that the EPA unlawfully changed the terms of permits it issued to the City of Phoenix for two of their wastewater treatment plants, and sought an injunction. *Id.* The Court held that the City had a right to intervene because it was regulated by the provisions of the Clean Water Act with respect to discharging water, and that the more restrictive permits being sought by plaintiffs as a remedy would require "remedial conduct" by the City itself. The court further held that "it is one thing to hold that only the government can be a defendant in a NEPA suit, where the statute regulates only government action, but quite another to exclude permit-holding property owners from a Clean Water Act suit, where the statute directly regulates their conduct." *Id.* at 1485.

Like the farmers in *Fresno supra*, and the City of Phoenix in *Sierra Club supra*, the 2005 and 2008 riders will regulate the behavior and impact of CCA's members. The first element of

SACRAMENTO\HBAUGH\51837.1                -5-

REPLY TO OPPOSITION TO MOTION TO INTERVENE

the riders requires the continuance of current grazing management of the allotment. Pub. Law 108-44, sec 389 (2005); Pub. Law 110-161, sec. 421, (2008). Plaintiffs attempt to confuse the Court by interchangeably using the permitted number of cattle per permit, with the actual grazing numbers on each allotment. A proper comparison for the first element of the CEs is to compare actual cattle grazed upon the allotment to actual cattle grazed upon the allotment and a comparison of cattle permitted in the past and in the renewed permits. Manipulating comparisons to make it falsely appears to have increased is unfair. Since it is the ranchers who can clarify and explain this best, CCA's members are the most knowledgeable as to those relevant facts. (Byrne Decl.)

CCA's members participate in determining and actually implementing the grazing practices on these allotments. Consequently, to receive a permit renewal, CCA's members have to provide information to USFS concerning their past and present practices, they must engage in activities to protect that land in the future, and may in some instances have to conform their grazing plans to meet required criteria. (Byrne Decl. at ¶¶ 4-17.)

Further, the second element within the riders requires monitoring. USFS often requests that ranchers provide monitoring data and other similar information annually and prior to receiving a permit which assists the USFS's determination so that this criteria can be achieved. (Byrne Decl.) Accordingly, this action is not about NEPA as alleged, and the restrictions that will be required and imposed if USFS is forced to comply will be analogous with those in *Sierra Club*. NEPA review is the remedy Plaintiffs seek, *should the Court ultimately be persuaded by their arguments and overturn the discretionary decision of USFS to apply the CEs*. Consequently, the CCA's members will be impacted by the adjudication, and it will require some conduct on the part of ranchers independent of the USFS.

Finally, the third element deals with whether the USFS's decisions to apply the CEs to the subject allotments are consistent with agency policy concerning extraordinary circumstances. Plaintiffs have alleged, though perhaps incorrectly, that this requires a review of the special species, habitat, and wilderness conditions on the subject allotments. If the Court determines the Plaintiffs' interpretation of this third element is correct, CCA will be in the *best* position to

provide the Court with current, accurate, on-the-ground information about the *actual* conditions as they exist now, and have existed in the past on each allotment. (Byrne Decl.) Consequently, CCA should be permitted to intervene because the CEs help cattlemen renew permits that USFS does not think pose an environmental risk, and require cattlemen to engage in various tasks to assist the USFS in its application and administration of the grazing program.

          (2)    <u>Grazing Interests Have Been Allowed to Intervene in New Mexico in a Similar Suit</u>

Although the Ninth Circuit has narrowly defined the interest at issue in *NEPA* suits when intervention as a matter of right is sought, it has *never ruled* on the interest at issue in this suit because the 2005 and 2008 riders are not part of NEPA's framework. Plaintiffs cite no authority for the proposition that the 2005 and 2008 riders prevent parties from intervening as a matter of right, nor can they, as the Ninth Circuit has yet to address this issue. Though the Ninth Circuit has not addressed this issue yet, the District Court of New Mexico has recently recognized that cattlemen do have a significant protectable interest being impacted as a result of litigation concerning the application of the 2005 and 2008 riders to public allotments. See, *Forest Guardians v. United States Forest Service*, Case No. 1:07-CV-01043, Second Amended Complaint filed February 4, 2008, Order Granting Intervention; Pub. Law 108-447, sec 339, (2005); Pub. Law 110-161, sec. 421, (2008). (See Compendium of Authorities, Exhibits B and C.) That court has allowed cattleman to intervene in an *identical action* seeking to invalidate USFS application of the CEs to public allotments. *Forest Guardians v. United States Forest Service*, Case No. 1:07-CV-01043, Second Amended Complaint filed February 4, 2008, Order Granting Intervention. Thus, it is irrelevant that only the USFS can comply with NEPA, as this case is not solely about NEPA review, and a full NEPA review may never be ordered by this Court with respect to the subject allotments.

(3)     <u>Even if this is Regarded as a Traditional NEPA Case, CCA Should Be Permitted to Intervene as a Matter of Right</u>

Application of the Ninth Circuit's general rule denying intervention by third parties in a NEPA compliance action is inappropriate in this case. The rationale behind the Ninth Circuit's rule is that, because NEPA requires action only by the government, only the government can be liable under NEPA. *Wetlands Action Network v. United States Army Corps. of Engineers*, 222 F.3d 1105, 1114; *Churchill County v. Babbit*, 150 F.3d 1072. When the Ninth Circuit promulgated this rule, it did not address the facts as they exist in this case. It now appears the Ninth Circuit did not conceive of the extraordinary facts here when it developed this rule. Here, while the government is technically liable for any NEPA violation, the USFS is always assisted by the third party actions of the permitees in administering the allotments and in complying with environmental review, and ranchers will suffer the consequences and obligations of the government if Plaintiffs' prayed for remedy is granted. (Byrne Decl.) The USFS, to varying degrees, relied on permitees as a source of information in evaluation of allotment use and conditions and to some extent for monitoring purposes of environmental conditions. (Byrne Decl. at ¶¶ 9-11) Thus, even though it is technically true that only the government can comply with NEPA, the ranchers that are impacted by this litigation will certainly also have a role in effectuating any remedy proposed by this Court.

Permitees, as participants in permit management and the environmental compliance process, have a significant protectable interest in USFS compliance with NEPA as it has been defined by the Supreme Court. *Donaldson FKA Sweet v. United States*, 400 U.S. 517. The participation and expenditure of private resources by third parties to the federal government in the administration of public grazing necessarily illustrates that permitees have a very different role in continuing grazing management of their allotments (which are an integral part of their ranches) than does a typical project developer complying with a NEPA review. Administering these allotments while engaging in NEPA compliance was not considered by the Ninth Circuit when it affirmed its general rule in the numerous cases cited by Plaintiffs. The Ninth Circuit apparently

SACRAMENTO\HBAUGH\51837.1     -8-

presumed that all environmental knowledge and NEPA compliance by the federal government would be done using government resources, and that only the government would set out to cure violations. In this case, private resources were expended by permitees to assist the USFS in managing the allotments, providing environmental mitigations and to comply with NEPA (i.e., managing the grazing process, controlling seasonal areas of use, developing standards, and monitoring possible impacts). (Byrne Decl.)

Additionally, cattle grazing is time-sensitive and the animals are alive and must graze. This is certainly not a situation envisioned by the Court when it ruled that additional environmental review would only impact the government because it is the only party that can "be liable" under NEPA. (*Churchill County v. Babbitt* (1998) 150 F.3d 1072, 1082.) Therefore, if the Court believes this is a typical "NEPA case," CCA has a significant protectable interest that entitles it to intervention as a matter of right.

The narrow rule prohibiting intervention argued for by the plaintiffs has been expressly rejected by the Third Circuit, the Fifth Circuit, and the United States District Court for the District of Columbia. *Kleissler v. United States Forest Service*, 157 F.3d 964 (3rd Cir. 1998); *Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996); *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994); and *Wilderness Society v. Babbit*, 104 F.Supp.2d 10 (D.D.C. 2000).) The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention. *Donaldson FKA Sweet v. United States*, 400 U.S. 517; *San Juan County, Utah v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007). CCA and its permitee members would be directly and substantially impacted by any action aimed at invalidating the permits associated with the specific allotments issued through the CE process and targeted by the plaintiffs in this action. Further, NEPA compliance often entails the use of private stakeholders, private resources, and data exchange that is not limited to government action only. Therefore, CCA should be allowed to intervene as a matter of right because it has a significant protectable interest in this case.

B.  **PERMISSIVE INTERVENTION IS APPROPRIATE EVEN IF INTERVENTION AS A MATTER OF RIGHT IS NOT AVAILABLE**

CCA should be permitted to intervene because this litigation will have far reaching consequences on public land grazing, and CCA can and will contribute to the orderly and fair resolution of this case. The Ninth Circuit permits permissive intervention by a third party defendant under Rule 24(b) in environmental cases that involve NEPA challenges when a case will have wide reaching consequences that directly impact a proposed intervenor, and the proposed intervenor can contribute to the orderly resolution of the case. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1109 (9th Cir. 2002); see also *Citizens for Better Forestry v. Dept. of Agriculture*, 481 F.Supp.2d 1059, 1063 (N.D. Cal. 2007); *The Lands Council v. McNair*, No. CV-06-00425, (9th Cir. July 2, 2008) (*en banc* order affirming district court's order to deny the land council a preliminary injunction). An applicant seeking to intervene under Rule 24(b)(2) must show that: (1) its application is timely; and (2) its claim or defense and the main action have a question of law or fact in common.

The Ninth Circuit recently explained that:

> Unlike Rule 24(a), a "significant protectable interest" is not required by Rule 24(b) for intervention; all that is necessary for permissive intervention is that intervenor's "claim or defense and the main action have a question of law or fact in common."
> *Kootenai Tribe supra*, 313 F.3d at 1107.

Fed. R. Civ. P. 24(b). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940); *Kootenai Tribe supra*, 313 F.3d at 1108. Rather, the Court is to use its discretion in equity to ensure that justice is done. *Id.*

In *Kootenai Tribe*, the Ninth Circuit held that private environmental groups lacked the significant protectable interest necessary to intervene as of right in a suit under NEPA in defense of a U.S. Forest Service rule. The court did, however, affirm a grant of permissive intervention for the proposed defendant-intervenors because they satisfied the terms of Rule 24(b)(2) *even*

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

*though the causes of action brought by plaintiffs dealt with NEPA, the Administrative Procedures Act ("APA") and the Endangered Species Act. Id.* at 1110-11. The Ninth Circuit agreed with the district court that permissive intervention was appropriate because "the magnitude of this case is such that both Applicants' intervention will contribute to the equitable resolution of the case." *Id.* at 1111.

*Kootenai Tribe* supports the permissive intervention of the CCA into this case because it, like this case, dealt with a breadth of environmental challenges, including challenges under NEPA. See also, *Citizens for Better Forestry v. Dept. of Agriculture*, 481 F.Supp.2d 1059, 1063 (N.D. Cal. 2007); *Stringfellow et al. v. Concerned Neighbors in Action et al.*, 480 U.S. 370, 374-376. Importantly, the CCA has satisfied the plain language of Rule 24(b)(2). It is uncontested that this application is timely and not prejudicial to any party. Moreover, if the CCA is allowed to participate as an Intervenor-Defendant, its defenses will respond to the issues urged by the Plaintiffs and provide the Court with the unique perspective and position of the cattlemen who sustain California's beef industry. Thus, there is complete commonality between Plaintiffs' claims and CCA's defenses.

This case, like that in *Kootenai Tribe*, has far-reaching implications for the CCA. In *Kootenai Tribe* the decision to develop roads in national forests was hotly contested and had the potential to impact multiple sectors. *Id.* at 1107-1110. Here, even though regulations have not been challenged, nationwide decision-making is at stake with respect to grazing on nearly 381 allotments, 51 of which are located in California. The CCA has an interest in being one of the fundamental "uses" of the multiple uses on national forest land, and the ultimate decision in this case will *directly impact* that interest. Indeed, beyond the interests shown by the environmentalist intervenors in *Kootenai Tribe*, CCA has property and economic interests in the subject allotments. Moreover, as a representative of the directly affected industry, CCA's participation will "contribute to the equitable resolution" of this case because it will provide the perspective of those parties who will be most directly impacted by this case's outcome. It is, therefore, in the interest of justice to CCA to participate in this case. See *Kootenai Tribe*, 313 F.3d at 1110-11; *Kleissler*, 157 F.3d at 971.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

Plaintiffs incorrectly assert that *Olympic Forest* is the controlling case in this area. See Opposition to Motion to Intervene at 6:6-7. In *Olympic Forest*, the plaintiffs sued the USFS, alleging the USFS was proceeding with a timber sale in violation of NEPA and the National Forest Management Act and the Administrative Procedures Act. *Olympic Forest Coalition*, 2007 WL 3374996 at *2. Plaintiffs contend a narrow reading of *Kootenai Tribe* in light of *Olympic Forest*, arguing permissive intervention is only appropriate when the government will not fully defend the legality of its decision. *Id.* at 6:1-8.

Importantly, *Olympic Forest* is a district court opinion from Washington that distinguished *Kootenai Tribe* because the government defendants in *Olympic Forest* "made every indication" that they intended to "fully defend the legality" of their timer sale to the proposed intervenors. *Id.* Even if *Olympic Forest* was mandatory authority, there is no indication from the government that it plans to defend this action at all, let alone that it will fully defend the legality of its decisions with respect to grazing on the subject allotments. Regardless, this is not the proper test. Even if the government had provided such an indication at this early stage, the Court would have to consider such a claim in light of the fact that in November of 2008 a new administration will assume responsibility in the White House, potentially altering the political strategy of USFS in this case. Since it is not possible to predict what arguments the USFS will promote, the CCA should be permitted to intervene as it will certainly forward arguments that are in the interests of ranchers who have actually engaged in the management of their allotments and have assisted with on-the ground implementation of the CEs via the permit renewal and permit administration process. (Byrne Decl.)

Further, *Olympic Forest* incorrectly determined that the proposed defendant intervenors "did not have an independent basis for jurisdiction because only the federal government can be required to comply with NEPA and NFMA." *Id.* at *7. This is a misunderstanding of the rule from *Kootenai Tribe*, which allowed private parties to intervene in NEPA and NFMA cases *despite the Ninth Circuit decisions where at times intervention was limited as a matter of right in such cases.* In *Kootenai Tribe*, the Court did seek to determine if the proposed environmentalist intervenors had an independent basis for jurisdiction. *Id.* at 1109. Rather, the Court simply

1  looked to see if there was Article III standing because the Government was not engaged, not that
2  there were causes of action other than NEPA and APA that the intervenors could assert rights
3  pursuant to. *Id.* The Court found that the proposed intervenors had suffered an injury in fact
4  because the group had direct contact with the potentially threatened forests, and a causal
5  connection between the development of new roads and the potential environmental impact
6  existed. *Id.* It was irrelevant that the intervenors would be defending NEPA claims that they
7  were deemed by that Court unable to defend as a matter of right. *Id.* at 1109-1110. The Court
8  there *permitted permissive intervention* even though intervention as a matter of right was perhaps
9  excluded by existing Ninth Circuit case law. *Id.* at 1110, [holding that an independent protectable
10 interest is only required under 24 (a), and does not preclude intervention under 24 (b)].

11      Here, the CCA members will suffer an immediate and concrete injury if Plaintiffs prevail,
12 because their permits will potentially become void. CCA is also concerned that its members will
13 additionally experience hardship with respect to other allotments that will require environmental
14 review because of the chilling effect and delay this suit may have on USFS to take advantage of
15 the riders and similar statutes in the future. Since there is a direct correlation between the remedy
16 sought by the Plaintiffs (i.e.- the revocation of permits) and the interests of CCA (ownership of
17 permits and the financial interest such ownership entails), CCA clearly has the standing required
18 by *Kootenai Tribe*. This is sufficient under *Kootenai Tribe* for this Court to grant permissive
19 intervention, which merely requires a showing that there will be far reaching consequences that
20 could directly impact the proposed intervenor.

22              (1)    <u>CCA will Contribute Unique Arguments and Information</u>

24      CCA's position is unique and reflects the interests of those parties most likely to suffer the
25 immediate consequences of this Court's decision. Unlike the government, CCA will argue for
26 grazing interests that currently exist, and may exist in the future if public land grazing is rendered
27 impossible by lawsuits such as this. USFS's job in this litigation is to justify its decisions through
28 the prism of the political paradigm in which it is currently acting, and not to assert the arguments

SACRAMENTO\HBAUGH\51837.1                    -13-

REPLY TO OPPOSITION TO MOTION TO INTERVENE

that ranchers would find most beneficial. CCA, conversely, seeks only to ensure that ranchers who comport with the law do not loose valuable grazing rights as groups like Plaintiffs attempt to deplete the government's limited resources to administer public land grazing and to wear it down through litigation. Because its members have a direct interest in making sure that this litigation fairly represents the process through which these ranchers go to obtain and administer these renewed permits, CCA should be permitted to intervene as it can and will contribute to the orderly resolution of this case.

### (2)    CCA Has an Interest in the Outcome of the Merits Phase

CCA has an interest in more than the liability phase. Plaintiffs pre-suppose that they will prevail on the case in chief, and CCA will simply be arguing as to what remedy or review is required. First, CCA has a very real interest in litigating the application of the CEs *before any discussion of remedies is engaged in*, as it is the application of the CEs that will ultimately dictate the scope of any permissible appeal, and will shape how the Court would apply any NEPA review or any other remedy it may or may not determine is required. *Stringfellow et al. v. Concerned Neighbors in Action et al.*, 480 U.S. 370, 374-376. Further, as has been noted, the riders at issue in this case were designed as a compromise to protect the grazing interests by narrowing NEPA review in a time when USFS was simply too overwhelmed to issue full NEPA decisions on all the allotment permit renewals it had before it. Pub. Law 108-447, sec 339, (2005); Pub. Law 110-161, sec. 421, (2008); *CRS Report for Congress*, The National Environmental Policy Act: Streamlining NEPA, Updated January 9, 2007, Linda Luther, p. 15, 19-20; *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). Consequently, CCA has a legitimate interest in asserting its position and ensuring the record fairly reflects the body of information that USFS had available when it made its decisions in respect to the Appropriations riders of 2005 and 2008.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

SACRAMENTO\HBAUGH\51837.1      -14-

REPLY TO OPPOSITION TO MOTION TO INTERVENE

   (3) <u>A Remedies Phase is Unlikely</u>

The Plaintiffs, and possibly the Ninth Circuit, have suggested that environmental cases have a "remedies phase," and some courts have gone so far as to limit *permissive intervention* to such phase. *Wetlands Action Network v. United States Army Corps. of Engineers*, 222 F.3d 1105, 1114. However, these grazing cases are traditionally decided on summary judgment, and the Court will issue a decision and impose relief from the Plaintiffs' prayer if the Court deems the their contentions are correct. The USFS will then implement that decision. Therefore, in order for CCA to have a meaningful opportunity to participate, it must be permitted intervention immediately. Because there is always a chance of settlement as the case evolves, and such settlement would constitute a remedy, CCA should be allowed in the case at the outset. Allowing only partial participation would circumvent CCA's legitimate interest, and also prevent the Court from accessing valuable information.

4. <u>CONCLUSION</u>

For all of the foregoing reasons, CCA respectfully requests that this Court exercise its discretion and allow CCA to intervene as a defendant in this action.

Dated: July 9, 2008          BEST BEST & KRIEGER LLP

By: /s/ William J. Thomas, Jr.
   William J. Thomas, Jr.
   Heather C. Baugh
   Anthony J. Van Ruiten
   Attorneys for Intervenor
   California Cattlemen's Association

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CALIFORNIA 95814

SACRAMENTO\HBAUGH\51837.1  -15-

REPLY TO OPPOSITION TO MOTION TO INTERVENE