1  WILLIAM J. THOMAS, JR., Bar No. 67798
   HEATHER C. BAUGH, Bar No. 244850
2  ANTHONY J. VAN RUITEN, Bar No. 256087
   BEST BEST & KRIEGER LLP
3  400 Capitol Mall, Suite 1650
   Sacramento, California 95814
4  Telephone: (916) 325-4000
   Telecopier: (916) 325-4010
5
   Attorneys for Intervenor
6  California Cattlemen's Association

7

8

9             UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12

| | |
|---|---|
| 13  WESTERN WATERSHEDS PROJECT, et al., | Case No. 08-CV-1460 PJH |
| 14 | DECLARATION OF MIKE BRYNE IN SUPPORT OF CALIFORNIA CATTLEMEN'S ASSOCIATION'S REPLY TO MOTION FOR LEAVE TO INTERVENE |
| 15  Plaintiffs, | |
| 16  v. | |
| 17  UNITED STATES FOREST SERVICE, | [Filed concurrently with: |
| 18  Defendants. | 1. Reply to Motion for Leave to Intervene; and 2. Compendium of Authorities.] |
| 19 | |
| 20 | Date: July 23, 2008  Time: 9:00 a.m.  Ctrm: 3 |
| 21 | Judge: Honorable Phyllis J. Hamilton |
| 22 | Complaint filed: March 14, 2008 |
| 23  CALIFORNIA CATTLEMEN'S ASSOCIATION, | |
| 24 | |
| 25  Intervenor. | |

26

27

28

SACRAMENTO\HBAUGH\51797.1

DECLARATION OF MIKE BRYNE

# DECLARATION OF MIKE BRYNE

I, Mike Bryne, declare as follows:

1. I have personal knowledge of the matters stated in this declaration. I could and would competently testify to the following facts if called upon to do so.

2. I, along with my brothers, are multi-generational cattle operators in Modoc County, California. We have held and maintained United States Forest Service ("USFS") grazing permits for decades.

3. I presently serve as chairman of California Cattlemen's Association ("CCA's") Public Lands Committee and am also the past chairman of the Public Lands Council which represents all cattle (NCBA), sheep (ASI) grazing across all western states. In all capacities, I have been very involved in Federal land administration. I have experience working with Congress, USDA, DOI, USFS Regional Offices, and local USFS offices and employees. I am therefore familiar with grazing statutes, Congressional actions, federal environmental and internal agency policy, permit issuance, and allotment management.

4. Like all permitees, I am extremely familiar with grazing management on my allotment. I know the various species, habitats, and wilderness areas contained on, or supported by the environment on my allotment. I also know the past and current grazing practices, and know whether there have been changes in environmental conditions that USFS should be made aware of. I have often been asked to provide this sort of information to the USFS when renewing my permits, and it is my understanding that this information is used to assist USFS in supplementing its environmental review of grazing on public allotments- including my own.

5. I familiarize myself with this information because it allows me to run a successful grazing operation, which in turn allows me to support my family financially, and contribute to my local community and the wider California economy.

6. As a practical matter, the CCA and the public land ranchers have the only financial and property interests being jeopardized by this lawsuit. A determination on the

SACRAMENTO\HBAUGH\51797.1                -1-

merits in favor of Plaintiffs will necessarily require this Court to invalidate permits- like my own- which ranchers have vested rights in, potentially destroying their livelihoods impacting their private lands and impacting local communities.

7. In my opinion, livestock operators have a direct interest in the outcome of this legal challenge. The outcome of this litigation will affect many of their permits, their operations, their livestock, their economic interests, their families and ultimately their rural communities.

8. Like all public land permittees, because of my intimate understanding of the allotment I graze, I am more familiar with issues on my allotment than any USFS employee has ever been, or ever can be. I believe this to be true because USFS agents change frequently, are required to spread themselves over many allotments, and are often backlogged with administrative work. Conversely, I have been grazing on this land consistently for generations, and am intimately aware of its past and current environmental state.

9. In my capacity as chairman of the CCA, I have learned that USFS frequently relies on cattlemen like me to provide it with current information and to coordinate on grazing management plans. As a result of this collaboration, USFS often requires ranchers to provide ongoing monitoring and to comply with various mitigation efforts when such efforts are required to protect sensitive species. The USFS relies on grazers' on-the-ground information and insight to support many of its environmental decisions so that an allotment's environmental ecology is preserved, and so that grazing is not unduly burdened by unreasonable or uninformed environmental requirements.

10. I believe, based on the afore mentioned experience, that CCA's members have a legitimate right to defend the application of the 2005 and 2008 Appropriations Riders at issue in this case, and found in Pub. Law 108-44, sec 389 (2005); Pub. Law 110-161, sec. 421, (2008), as ranchers often suggest and coordinate grazing management practices and perform monitoring obligations for the government. Without such input from ranchers, USFS could not successfully meet all of its legal obligations for fulfilling environmental review *and* renew permits in a timely and fair fashion.

SACRAMENTO\HBAUGH\51797.1                     -2-

DECLARATION OF MIKE BRYNE

11. In my capacity as a rancher, I have participated in numerous meetings and interactions with USFS agents to discuss and outline best grazing management practices, environmental protection of listed or threatened species, and monitoring obligations that could assist the USFS in future determinations.

12. I believe the USFS was able to apply the subject "categorical exclusions" found in the 2005 and 2008 riders at issue in this case ("CEs") because of the information ranchers like myself have provided to it over the years, and continue to provide.

13. Prior to the implementation of the CEs, USFS struggled to fulfill its obligations under NEPA with respect to public grazing. Lacking adequate resources at almost every level, the USFS had trouble meeting deadlines for completing environmental assessments ("EAs") and for generating environmental impact statements ("EISs") for individual grazing permits.

14. This consistent backlog caused extreme hardship on the part of cattlemen. Grazing is time-sensitive and requires movement of animals to feed resources. Since the livestock are alive and require forage for sustenance, grazing permits must be issued in a timely fashion, and failure to complete NEPA review could lead to permits not being issued.

15. In the early 1990s, Congress became focused on the strain the USFS was experiencing. In an effort to address the situation, Congress balanced the needs of the environment against the need for time-sensitive permit renewal in two Recession Acts, and the two Appropriations Act Riders at issue here.

16. These CEs were extremely important, and represented a Congressional compromise that could assist the USFS in stream lining its environmental review requirements. They also ensure that USFS's focus and resources remains on more environmentally sensitive allotments.

17. Invalidation of the USFS's discretionary application of these CEs could result in permit revocation. Such revocation could have dire consequences to grazers, their animals, and their local communities. I believe that this is exactly the situation Congress was trying to avoid.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed this 8th day of July 2008, in Tulelake, California.

*Mike Byrne*
Mike Byrne

SACRAMENTO\HBAUGH\51797.1