JEFFREY R. CHANIN (CSB # 103649)
KLAUS H. HAMM (CSB # 224905)
WARREN A. BRAUNIG (CSB # 243884)
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
Telephone:   (415) 391-5400
Facsimile:   (415) 397-7188
Email: jchanin@kvn.com
       khamm@kvn.com
       wbraunig@kvn.com

LAUREN M. RULE (ISB # 6863), *pro hac vice*
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
Telephone:   (208) 342-7024
Facsimile:   (208) 342-8286
Email: lrule@advocateswest.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; NATURAL RESOURCES DEFENSE COUNCIL; CENTER FOR BIOLOGICAL DIVERSITY; CALIFORNIA TROUT; ENVIRONMENTAL PROTECTION INFORMATION CENTER; KLAMATH SISKIYOU WILDLANDS CENTER; LOS PADRES FOREST WATCH; SIERRA FOREST LEGACY; SEQUOIA FORESTKEEPER; GRAND CANYON TRUST; UTAH ENVIRONMENTAL CONGRESS; RED ROCK FORESTS; and OREGON NATURAL DESERT ASSOCIATION,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. FOREST SERVICE,<br><br>Defendant. | Case No.: C 08-01460 PJH<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: CMC set for August 14, 2008<br>Time: 2:30 p.m.<br>Judge: Hon. Phyllis J. Hamilton |

The parties to this action hereby submit the following Joint Case Management Conference Statement.

**1.     Jurisdiction and Service**

All parties named in this lawsuit have been served.

A.     <u>Plaintiffs' Statement</u>

Plaintiffs assert subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States, including the National Environmental Policy Act, 42 U.S.C. § 4321 et seq.; the FY 2005 Consolidated Appropriations Act, Pub. L. No. 108-447, Sec. 339; the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; and the Equal Access to Justice Act, 28 U.S.C. § 2214 et seq.

Plaintiffs assert that venue is proper in this Court under 28 U.S.C. § 1391(e), and that a change of venue under 28 U.S.C. § 1404 is not appropriate.  Plaintiffs are not aware of any issues related to personal jurisdiction.

B.     <u>Defendant's Statement</u>

Defendant agrees that this case arises under the Court's Federal Question Jurisdiction and that the Administrative Procedure Act provides for judicial review of certain final agency actions arising under other laws.  Defendant disagrees that the Administrative Procedure Act provides an independent basis of subject matter jurisdiction.

Defendant disagrees that venue for Plaintiffs' challenges to the 138 individual Agency decisions, covering 386 grazing allotments spanning 25 National Forests in 8 states, is appropriate in this judicial district.  Defendant intends to file a motion to sever and transfer venue prior to the Case Management Conference.  As discussed further in Number 4 (Motions) and Number 8 (Discovery), Defendant may challenge Plaintiffs' standing as to some or all of their claims.

**2.     Facts**

A.     <u>Plaintiffs' Statement</u>

This action arises from alleged violations of the FY 2005 Consolidated Appropriations

Act ("2005 appropriations rider"), the National Environmental Policy Act ("NEPA"), and the Appeals Reform Act.

In 2005, Congress passed an appropriations rider that allowed Defendant Forest Service to issue decisions in fiscal years 2005-2007 that reauthorized livestock grazing on Forest Service lands without first conducting an environmental assessment ("EA") or environmental impact statement ("EIS") as may be required under NEPA if the decisions met three requirements. Those requirements were: (1) the decision continues current grazing management; (2) monitoring indicates that current grazing management is meeting, or satisfactorily moving toward, objectives in the land and resource management plan, as determined by the Secretary; and (3) the decision is consistent with agency policy concerning extraordinary circumstances. The Forest Service's internal guidelines interpret "current management" to mean the management that has been implemented over the past three to five years. The 2005 appropriations rider allowed the Forest Service to use this authority to categorically exclude grazing reauthorizations from analysis in an EA or EIS for up to 900 grazing allotments.

When the Forest Service had not used this categorical exclusion authority for 900 allotments by the end of fiscal year 2007, Congress extended the rider through fiscal year 2008. It also added a provision that prohibited the use of this rider for allotments that were in Wilderness Areas.

At the time the amended complaint in this case was filed, the Forest Service had issued hundreds of decisions reauthorizing grazing on more than 700 grazing allotments under the authority of the 2005 appropriations rider, categorically excluding those decisions from analysis in an EA or EIS.

Plaintiffs allege that 138 of these decisions, reauthorizing grazing on 386 allotments, do not meet one or more of the requirements of the 2005 appropriations rider. Plaintiffs also allege that, by not completing an EA or EIS prior to reauthorizing grazing in these decisions, Defendant violated NEPA.

B.   Defendant's Statement

Grazing on the National Forests has long been a legally recognized use of those federal

lands. Since 1995, Congress has directed that existing grazing permits be continued on existing terms, while the Forest Service conducts any NEPA analysis that might be required in support of the permitting process, unless and until that process indicates that changes should be made with respect to particular grazing allotments. *See* Rescissions Act of 1995, Pub. L. No. 104-19; 2004 Appropriations Rider, § 325, Pub. L. No. 108-108; 2005 Appropriations Rider, § 339, Pub. L. No. 108-447; 2008 Appropriations Rider, § 421, Pub. L. No. 110-161. The 2005 and 2008 Appropriations Riders further provide that the Forest Service need not perform an EA or EIS for any permitting decision that meets three criteria. First, the decision must authorize a continuation of current grazing management; second, monitoring information must indicate that such management is meeting or satisfactorily moving towards the objectives of the applicable Land and Resource Management Plan for the Forest in which the allotment is authorized, under the National Forest Management Act, 16 U.S.C. §§ 1600—1614; and third, use of the CE must be consistent with the Agency's policy on "extraordinary circumstances."

The Forest Service denies that its decisions violated the terms of the relevant congressional directives or that the Forest Service otherwise conducted insufficient NEPA analysis.

The Parties agree that factual issues relevant to resolution of Plaintiffs' claims are to be resolved on the administrative records compiled for the challenged decisions.

**3.     Legal Issues**

A.     <u>Plaintiffs' Statement</u>

(1)     Whether decisions that reauthorized grazing on allotments that had not been in use for the prior three to five years violated the first requirement of the 2005 appropriations rider, Pub. L. No. 108-447, Sec. 339.

(2)     Whether decisions that reauthorized grazing at grazing levels higher than what had occurred on the allotment during the prior three to five years violated the first requirement of the 2005 appropriations rider.

(3)     Whether grazing reauthorization decisions that changed grazing management from the management practices that had occurred on the allotment during the prior three to five

1 years violated the first requirement of the 2005 appropriations rider.

2     (4) Whether the Forest Service had adequate monitoring data for each grazing
3 reauthorization decision to demonstrate grazing management is meeting or moving toward Land
4 and Resource Management Plan objectives to comply with the second requirement of the 2005
5 appropriations rider.

6     (5) Whether the Forest Service's existing data demonstrated that its grazing
7 reauthorization decisions comply with the second requirement of the 2005 appropriations rider.

8     (6) Whether the Forest Service conducted an adequate and proper analysis for each of
9 the grazing reauthorization decisions to determine whether extraordinary circumstances existed
10 to comply with the third requirement of the 2005 appropriations rider.

11     (7) Whether the Forest Service's determinations about extraordinary circumstances
12 for its grazing reauthorization decisions were reasonable and supported by the administrative
13 record as required by the Administrative Procedure Act, 5 U.S.C. § 706.

14     (8) Whether the Forest Service violated NEPA, 42 U.S.C. § 4321 et seq., by not
15 completing an EA or EIS for the grazing decisions challenged in this lawsuit.

16     B. <u>Defendant's Statement</u>

17     (9) Whether this action is properly venued in this judicial district.

18     (10) Whether plaintiffs have standing to challenge any or all of the grazing allotment
19 decisions at issue in this case.

20     (11) Whether, as to any of the 386 allotments challenged in this case, the Forest
21 Service's decisions were arbitrary or capricious in applying the factors that Congress laid out in
22 the 2005 Appropriations Rider.

23     **4. Motions**

24 The only motion filed in this case thus far is a Motion to Intervene by the California
25 Cattlemen's Association ("CCA"). On July 23, 2008, the Court denied CCA's motion for
26 intervention as of right, and granted CCA permissive intervention as to the remedy phase of the
27 case.

28 Plaintiffs anticipate filing a motion for partial summary judgment on a subset of their

1  challenged decisions, as explained below under Number 15.  Plaintiffs anticipate filing one or
2  more additional motions for summary judgment subsequent to a ruling on their initial summary
3  judgment motion if such motions are necessary to litigate the remainder of their challenged
4  decisions.

5  As noted in Number 1, above, Defendant intends to move that Plaintiffs' claims be
6  severed and transferred to appropriate judicial districts.  Defendant may also file a motion
7  challenging Plaintiffs' standing to challenge any or all of the decisions at issue in this case,
8  which may be included in their cross-motion for summary judgment (*see* Number 17, below).

9  **5.    Amendment of Pleadings**

10  Plaintiffs have previously amended their complaint once in this case.  In order to
11  streamline and simplify this action, Plaintiffs intend to amend their complaint to withdraw their
12  Third Claim For Relief For Violations of the Appeals Reform Act, the related item D from their
13  Prayer For Relief, and related allegations.  Defendant has indicated that it will stipulate to this
14  amendment.

15  Defendant has not yet answered the complaint.

16  By Stipulation and Order approved July 8, 2008 [Dkt. #25], Defendant's obligation to
17  respond to the Amended Complaint is stayed until after the Case Management Conference.

18  **6.    Evidence Preservation**

19  This litigation involves review of final agency action under the Administrative Procedure
20  Act, and the documentary evidence will be provided through the administrative record.  The
21  parties agree that, because this case is exempted from the initial disclosure requirements, Fed. R.
22  Civ. P. 26(a)(1)(B)(i), the parties are exempted from the otherwise applicable requirements of
23  Fed. R. Civ. P. 26(f), including the requirement to discuss evidence preservation, see Fed. R.
24  Civ. P. 26(f)(1)-(2).  Nevertheless, on April 21, 2008, Defendant undertook steps to preserve
25  documents pertinent to this action and that may be included in the administrative records.

26  **7.    Disclosures**

27  This litigation involves review of final agency action under the Administrative Procedure
28  Act.  No disclosures have been made under Fed. R. Civ. Proc. 26**.**  For the reasons set out in

Number 6, above, the parties agree that this case is exempt from the disclosure requirements of Rule 26.

### 8.     Discovery

Because Plaintiffs' legal claims will be based on review of the administrative record, no discovery has taken place and the parties currently do not anticipate taking discovery beyond the administrative record as to the merits of Plaintiffs' claims.  As described in Section 15 below, if the Court does not grant Defendant's motion to sever and transfer, the parties propose that the initial merits phase of the litigation focus on nine of the 138 grazing decisions challenged by Plaintiffs.  The parties further propose that the administrative records produced during this initial merits phase be limited to the records related to these nine grazing decisions.

Defendant may seek discovery on Plaintiffs' standing.  Such discovery could initially be accomplished through interrogatories and requests for production of documents.  Following receipt and evaluation of responses to that written discovery, Defendant would be able to assess whether deposition discovery is required.

When Plaintiffs move for summary judgment, they will support their standing allegations with evidence about the grazing decisions on which they move.

The parties agree that, to the extent that discovery into Plaintiffs' standing is permitted, it initially should be limited to the grazing decisions listed in Number 15 below.

### 9.     Class Actions

This is not a class action lawsuit.

### 10.     Related Cases

The parties are not aware of any related cases.

### 11.     Relief

Plaintiffs seek declaratory and injunctive relief to: (1) declare the Forest Service in violation of the 2005 appropriations rider and reverse and set aside the challenged decisions; (2) declare the Forest Service in violation of NEPA and compel the Forest Service to complete an EA or EIS for the allotments at issue in the litigation; and (3) enjoin the Forest Service from using the 2005 appropriations rider in the future to reauthorize grazing until it ensures it will

1  comply with all of the rider requirements. Any further injunctive relief sought by Plaintiffs as
2  well as any request for attorney fees and costs would occur in a subsequent phase of the
3  litigation.
4      Defendant disagrees that Plaintiffs are entitled to any relief in this action or that, if relief
5  is ordered, it should include all the elements of relief that Plaintiffs seek.

6  **12.    Settlement and ADR**

7      The parties believe they will be in a better position to determine the prospects for
8  settlement after the Court rules on Plaintiffs' initial motion for summary judgment. The parties
9  are concurrently filing a Notice of Need For ADR Phone Conference.

10  **13.    Consent to Magistrate Judge for all Purposes**

11      The parties have not consented to a magistrate judge for all purposes.

12  **14.    Other References**

13      The parties believe that this matter is not appropriate for reference to binding arbitration,
14  a special master, or the Judicial Panel on Multidistrict Litigation.

15  **15.    Narrowing of Issues**

16      A.    <u>Plaintiffs' Statement</u>

17      Plaintiffs propose that the parties address the merits of Plaintiffs' claims by following a
18  bifurcated "test case" approach. Under the test case approach, the parties propose that they
19  initially would litigate nine of the 138 grazing decisions challenged in Plaintiffs' amended
20  complaint. Plaintiffs have selected nine grazing decisions for the initial merits phase. The
21  Plaintiffs believe that those nine decisions present a range of issues that are representative of the
22  issues raised in the remaining 129 decisions challenged by Plaintiffs. Plaintiffs are hopeful that
23  the guidance provided by the Court's rulings on the nine decisions will enable the parties and the
24  Court to address the remaining 129 decisions efficiently.
25      The following are the nine grazing decisions that the parties propose to include in the
26  preliminary merits phase: (1) decision authorizing grazing on the Diamond Mountain allotment
27  in the Lassen National Forest; (2) decision authorizing grazing on the Champ's Flat, Gooch
28  Valley, Lower Pine Creek, and North Eagle Lake allotments in the Lassen National Forest; (3)

1  decision authorizing grazing on the Mercer allotment in the Plumas National Forest; (4) decision
2  authorizing grazing on the Red Castle, East Fork Black's Fork, Middle Fork Black's Fork,
3  Lyman Lake, Little West Fork Black's Fork, and Elizabeth Mountain No. 2 allotments in the
4  Wasatch-Cache National Forest; (5) decision authorizing grazing on the Gilbert Peak/Hessie
5  Lake-Henry's Fork allotments in the Wasatch-Cache National Forest; (6) decision authorizing
6  grazing on the South Skyline, Booth Canyon, and Potters Canyon allotments in the Manti La Sal
7  National Forest; (7) decision authorizing grazing for the 1000 Lake, Solomon, and Daniels
8  allotments in the Fremont River Ranger District of the Fishlake National Forest; (8) decision
9  authorizing grazing for the Ashton/Island Park Nine allotments in the Caribou-Targhee National
10 Forest; and (9) decision authorizing grazing for the Muddy Ridge allotments in the Bridger-
11 Teton National Forest.

12 Plaintiffs intend to oppose Defendant's anticipated motion to sever and transfer because a
13 sever and transfer would create duplicative litigation, hinder judicial economy, waste time and
14 money, and create significant inconvenience to Plaintiffs and their attorneys.  If the Court or
15 Defendant believes it necessary to include a test case within the Northern District of California,
16 Plaintiffs propose to include the decision authorizing grazing on the Sweetwater allotment in the
17 Los Padres National Forest.

18       B.    Defendant's Statement

19 As noted above, Defendant intends to move to sever and transfer Plaintiffs' numerous
20 challenges to Agency decisions spanning National Forests in much of the Western United States
21 to appropriate judicial districts.  In that connection, Defendant notes that not one of plaintiffs'
22 test cases involves a National Forest within the Northern District of California, and most of the
23 test cases relate to Forests in other states (Utah, Idaho, and Wyoming).

24 If the Court does not grant Defendant's motion to sever and transfer, Defendant has
25 agreed that Plaintiffs' test case approach, as discussed above, would be an acceptable alternative
26 means of handling this very large and challenging case.

27       **16.**    **Expedited Schedule**

28 The parties do not believe that this is the type of case that can be handled on an expedited

basis with streamlined procedures.

**17.    Scheduling**

The parties propose the following schedule, if the Court denies Defendant's motion to sever and transfer.  Defendant may have 30 days from the [Plaintiffs: case management conference/Defendant: date of the Court's ruling on the motion to sever and transfer] within which it may respond to the amended complaint as to the nine "test" cases. Defendant shall compile, file, and serve the administrative records within 90 days of the [Plaintiffs: case management conference/Defendant: Court's ruling on the motion to sever and transfer]. Defendant may also conduct discovery on Plaintiffs' standing as to the test cases for a period of 90 days following the [Plaintiffs: case management conference/ Defendant: Court's ruling on the motion to sever and transfer].

Within 30 days of the time that the administrative records are filed with the Court, Plaintiffs may file a motion related to the production of the administrative records.  Within 30 days of the resolution of that motion, or 30 days after the deadline for filing the motion if no such motion is filed, Plaintiffs shall move for summary judgment as to the initial nine decisions challenged.  Within 30 days of plaintiffs' motion, Defendant shall file an opposition and cross-motion for summary judgment, which may include a challenge to Plaintiffs' standing.  Plaintiffs shall file a combined opposition and reply brief within 30 days of Defendant's opposition and cross-motion, and Defendant may file a reply within 15 days thereafter.

After the Court rules on the parties' cross-motions for summary judgment, the parties will further meet and confer and will file a supplemental Joint Case Management Conference statement setting forth proposed dates for the remainder of the litigation.

**18.    Trial**

The parties anticipate that this litigation can be decided on summary judgment based on review of the administrative record and that a trial will not be necessary.

**19.    Disclosure of Non-Party Interested Persons or Entities**

Plaintiffs have filed a "Certification of Interested Persons or Entities" as required by Civil Local Rule 3-16.  That Certification stated: "Pursuant to Civil L.R. 3-16, the undersigned

1 certifies that as of this date, other than the named parties, there is no such interest to report."

**20.    Other Matters**

There are no other matters.

Dated:  July 25, 2008                    FOR PLAINTIFFS

                                         By:    /s/ Klaus H. Hamm
                                                JEFFREY R. CHANIN
                                                KLAUS H. HAMM
                                                WARREN A. BRAUNIG
                                                KEKER & VAN NEST LLP
                                                710 Sansome Street
                                                San Francisco, CA 94111


Dated:  July 25, 2008                    FOR DEFENDANT

                                         By:    /s/ David B. Glazer
                                                DAVID B. GLAZER
                                                Natural Resources Section
                                                Environmental and Natural Resources Division
                                                Department of Justice
                                                301 Howard Street, Suite 1050
                                                San Francisco, CA 94105
                                                Concurrence obtained per General Order