United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WESTERN WATERSHEDS
PROJECTS, et al.,

    Plaintiff(s),

    v.

U.S. FOREST SERVICE,

    Defendant(s).
_____/

No. C 08-1460 PJH

**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO INTERVENE**

The motion of the California Cattlemen's Association ("CCA") to intervene in this action was heard on July 23, 2008. Warren Braunig and Klaus Hamm appeared for plaintiffs; David Glazer appeared for defendant; and William Thomas appeared for the CCA. For the reasons stated at the hearing and summarized below, the court denies the request to intervene as a matter of right, but grants the request for permissive intervention on the question of remedies should the defendant's liability be established.

**BACKGROUND**

This case concerns grazing rights, and arises under the 1969 National Environmental Policy Act ("NEPA"). See Amended Complaint, ¶ 1. On March 14, 2008, various non-profit organizations concerned with environmental and wildlife protection (collectively "plaintiffs"), filed the instant suit against defendant United States Forest Service ("Forest Service"), challenging the Forest Service's alleged practice of re-authorizing livestock grazing on federal land without conducting the proper environmental review under NEPA.

As part of its management of the nations forests, the Forest Service issues grazing permits to cattle producers and ranchers, allowing them to graze their cattle on national forest lands under certain circumstances. NEPA, however, requires the Forest Service to balance the need for timely processed and fairly executed permits, against the need for environmental review, and to that end, requires the Forest Service to complete an environmental assessment ("EA") or environmental impact statement ("EIS") before issuing or renewing ten-year grazing permits. See id. at ¶ 3.

In 1995, Congress passed the Rescissions Act, which required the Forest Service to establish a schedule for NEPA compliance, and to re-issue grazing permits pending NEPA compliance. The 1995 schedule was deemed largely unworkable due to overly strict timing requirements, however, and ten years later, in 2005, Congress passed an Appropriations Rider that allowed the Forest Service to categorically exclude a limited number of grazing re-authorizations in fiscal years 2005-2007 from NEPA compliance, provided certain conditions were met. See Amended Complaint, ¶ 33. The rider has been extended for fiscal year 2008.

Plaintiffs allege that the Forest Service used the 2005 Appropriations Rider to exclude hundreds of grazing permit renewals from environmental review under an EA or EIS. Id. at ¶ 34. Specifically, plaintiffs complain that several of the Forest Service's categorical exclusions ("CE"s) were unlawful, since they did not comply with the requisite conditions set forth in the 2005 Appropriations Rider. See, e.g., Amended Complaint, ¶ 109. In their original complaint, plaintiffs specifically challenged 25 CE decisions involving nine forests in California where the Forest Service re-authorized grazing on 46 allotments. See Original Complaint, ¶ 5. In the operative Amended Complaint, however, plaintiffs now challenge 138 CE decisions involving 25 forests throughout the entire western state region, where the Forest Service re-authorized grazing on 386 allotments. See Amended Complaint, ¶ 5.

2

Based on these 138 allegedly unlawful CE decisions, plaintiffs assert three claims for relief in their amended complaint: (1) for violation of the 2005 Appropriations Rider; (2) for violation of NEPA; and (3) for violations of the Appears Reform Act (which requires the Forest Service to establish a notice and comment process, as well as appear procedures, for all Forest Service projects and activities relating to land and resource management). See id. at ¶¶ 250-261. Plaintiffs seek a declaration that the Forest Service is guilty of the alleged violations, and they seek an order from the court reversing and setting aside the grazing decisions issued by the Forest Service, requiring the Forest Service to conduct appropriate environmental analyses under NEPA, and permanently enjoining the Forest Service from re-authorizing grazing under the CE process provided for in the Appropriations Rider, until such time as the Forest Service can demonstrate compliance with the CE process. See id. at Prayer for Relief.

The California Cattlemen's Association ("CCA") now seeks to intervene in the action. The CCA is a California trade association representing over 2,100 members in all facets of the livestock and cattle industry. Many of the CCA's members utilize forage on Forest Service lands in order to sustain their livestock, and otherwise rely on the Forest Service's grazing permits. The CCA claims that their members have a substantial stake in the planning and management of grazing programs throughout the National Forest System, since any restriction on national forest grazing would impact grazing operations and the entire California cattle industry.

The Forest Service does not oppose the CCA's intervention. Plaintiffs, however, do oppose the motion.

**DISCUSSION**

Federal Rule of Civil Procedure 24 allows two types of intervention: intervention as of right, and permissive intervention.

1.   Rule 24(a) (intervention as of right)

A non-party has a right to intervene where a federal statute confers such an

3

unconditional right, or where the non-party's interest may be impaired by disposition of the pending action and the non-party is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a). FRCP 24(a)(2) states in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action. . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In determining whether a potential party may intervene as of right, courts in the Ninth Circuit apply a four part test: (1) whether the applicant's motion is timely; (2) whether the applicant claims a significantly protectable interest relating to the property or transaction subject to the action; (3) whether disposition of the action may impair or impede protection of the interest; and (4) whether the current parties adequately represent the interests of the applicant. Sierra Club v. EPA, 995 F.2d 1478, 1484 (9th Cir. 1993); Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489,1493 (9th Cir. 1995). Generally, an intervening applicant is required only to make a minimal showing that representation of its interests may be inadequate. California v. Tahoe Regional Planning Agency, 792 F.2d 775, 778 (9th Cir. 1986). FRCP 24 is construed liberally in favor of the proposed intervenor. Sierra Club, 995 F.2d at 1481.

Although the CCA argues that it meets each prong of the four-prong test for evaluating intervention as of right, the heart of the dispute is the existence of a significantly protectable interest. Whether an applicant for intervention demonstrates a sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established. See Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993). However, an applicant for intervention must demonstrate a "significantly protectable interest." Forest Conservation Council, 66 F.3d at 1493. To do so under FRCP 24(a), a proposed intervenor must: (1) establish an interest protectable under some law, and (2) show a relationship between the legally protected interest and the claims at issue. Id. at

4

1  1494; Sierra Club v. EPA, 995 F.2d 1478, 1484 (9th Cir. 1993).

2  The CCA asserts that it has a direct and significant pecuniary interest in adjudication
3  of the instant suit because nearly 40% of all cattle raised in the West spend some of their
4  lives on public land allotments, and the grazing permits at issue are therefore critical to the
5  functioning of the livestock industry and to the CCA's members.  Specifically, the CCA
6  argues that it and its members have a protectable interest in the application of the CE
7  criteria to the grazing permits, and would be economically and directly impacted in the
8  event that plaintiffs win this case and the Forest Service's grazing decisions and permits
9  are reversed.

10  As plaintiffs point out in their response, however, it is well settled that third parties do
11  not have a significantly protectable interest in NEPA actions, as a matter of law.  In
12  Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094 (9th Cir. 2002), the Ninth Circuit
13  considered its prior precedent and reaffirmed that "as a general rule, the federal
14  government is the only proper defendant in an action to compel compliance with NEPA."
15  Id. at 1108.  To that end, the Ninth Circuit held that "private intervenors in [] NEPA action[s]
16  may not intervene as of right pursuant to Rule 24(a)."  Id.  Applying that well-established
17  rule here, no intervention as a matter of right is, therefore, permissible.

18  The CCA acknowledges the general rule cited by plaintiffs, but argues that the
19  instant case is sufficiently distinguishable from a pure NEPA action to justify a departure.
20  First, the CCA asserts that because this case involves a claim under the 2005
21  Appropriations Rider in addition to a NEPA claim, the case is not a traditional NEPA case,
22  and the rule against intervention is inapplicable.  However, a review of Ninth Circuit cases
23  that have applied the general rule excluding private parties from NEPA cases reveals that
24  the Ninth Circuit has not limited application of the general rule solely to cases in which only
25  a NEPA claim is asserted.  Rather, the Ninth Circuit has held that no significantly
26  protectable interest can be found sufficient to justify intervention in the merits phase, where
27  private parties seek to intervene in cases that involve the government's compliance with
28

5

NEPA *and* other environmental statutes. See, e.g., Kootenai Tribe, 313 F.3d at 1094 (claims involving NEPA and Administrative Procedures Act); Wetlands Action Network v. U.S. Army Corps of Engr's, 222 F.3d 1105, 1114 (9th Cir. 2000)(claims involving Clean Water Act and NEPA); Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489 (9th Cir. 1995)(claims involving NEPA and National Forest Management Act).

Moreover, while it is true enough that none of the above cases dealt expressly with the Appropriations Rider claim that is at issue here, the underlying rationale for the general rule – that NEPA (and the other environmental statutes) requires action only by the government, thereby justifying a limitation of environmental compliance actions to the government alone – is also satisfied here. Looking at plaintiffs' Appropriations Rider claim, for example, plaintiffs' claim seeks to hold the Forest Service liable for conduct with which *only the Forest Service* is required to comply. It is the Forest Service that stands to be held liable for failing to comply with the CE requirements set forth in the Appropriations Rider. Indeed, plaintiffs do not allege, nor has the CCA pointed out here, that any party other than the Forest Service can be legally bound by the CE requirements set forth in the Appropriations Rider. Accordingly, there is no reason, based solely on the inclusion of the Appropriations Rider claim, to deviate from the Ninth Circuit's well-established rule that "the federal government is the only proper defendant in an action to compel compliance with NEPA." See, e.g., Wetlands Action Network, 222 F.3d at 1114.

The CCA's second argument for circumventing the rule against private party intervention – that its members are directly regulated in such a way that intervention as a matter of right should be permitted – is also unpersuasive. In support of its argument, the CCA relies on Sierra Club v. United States EPA, and County of Fresno v. Andrus, 622 F.2d 436 (9th Cir. 1980**)**.[1] According to the CCA, these cases stand for the proposition that

---

[1] County of Fresno can no longer be relied upon for an argument in support of intervention into the merits of a case. As Ninth Circuit decisions subsequent to it have clarified, County of Fresno is "limited [] to the remedial phase of a trial." See, e.g., Churchill, 150 F.3d at 1082-83; Wetlands Action Network, 222 F.3d at 1114.

6

when a permit or property right is threatened by litigation, or when the private party will have some legal obligation under the laws at issue, intervention as a matter of right is permissible, notwithstanding the fact that the underlying claims in the case are environmental claims that target only the government's conduct. See CCA Reply at 4:19-22. However, these cases are not quite apposite.

In Sierra Club, plaintiff brought suit against the Environmental Protection Agency ("EPA") under the Clean Water Act, and the City of Phoenix sought to intervene in the case, since the relief sought by plaintiff would require the EPA to change the terms of permits issued to the City of Phoenix for two of its wastewater treatment plans. In reversing the district court's denial of the City's motion to intervene, the Ninth Circuit noted the general rule that NEPA cases do not permit intervention by private parties, but held that suits brought under the Clean Water Act are distinguishable, precisely because the Clean Water Act "does not principally regulate the EPA." See Sierra Club, 995 F.2d at 1485. Rather, the Clean Water Act "regulates private parties and state and local governments, such as the City of Phoenix." See id. Thus, in view of the statute's direct regulation of the City of Phoenix's conduct as a permit holder, any "compliance must ultimately be by the City of Phoenix and other parties regulated by the Clean Water Act." Id.

Subsequently, in Wetlands Action Network v. U.S. Army Corps of Engr's, the Ninth Circuit affirmed a district court's denial of a private party's right to intervene as of right in a case brought by a non-profit environmental group against the Corps of Engineers alleging violations of NEPA and the Clean Water Act. Notably, the non-profit plaintiff was specifically challenging the Corps' decision to grant the private party a permit to fill 16.1 acres of federal wetlands. As here, the private party there sought to intervene in the action, arguing that its' stake in the permit at issue justified a departure from the "none but a federal defendant" rule in NEPA actions. See 222 F.3d 1105, 1114 (9th Cir. 2000). The Ninth Circuit rejected this argument, however, noting that the general rule applicable in NEPA actions continued to extend to the case at bar, notwithstanding the fact that the

7

proposed intervenor had permit rights that might be affected. See id. The Ninth Circuit relied, in part, on its prior ruling in Churchill County v. Babbitt, 150 F.3d 1072 (9th Cir. 1998), amended by Churchill County v. Babbitt, 158 F.3d 491, (9th Cir. Oct. 29, 1998). In Churchill, a pure NEPA case, the court also refused to allow a private party to intervene in an action brought by a non-profit against the government under NEPA, despite the private party's argument that the case involved more than just a NEPA claim. See 150 F.3d at 1082-83.

The general import of both Wetlands Action Network and Churchill, therefore, is that even third party permit holders whose rights may be affected, are not exempt from the general rule applicable to NEPA actions, when a NEPA cause of action has been stated.

The court rejects as unsupported the CCA's third ground for urging the court to depart from the general "none but a federal defendant" rule – that this case presents unique and extraordinary circumstances that warrant a departure from the usual. And with regard to its fourth argument, the court declines to follow the district court opinions from outside the Ninth Circuit, cited in the CCA's Compendium of Authorities, in view of settled Ninth Circuit authority.

In view of the court's finding that the CCA does not have a significantly protectable interest in the question whether the Forest Service violated NEPA and the other statutes asserted,ic court does not address the other Rule 24(a) factors.

2.  Rule 24(b) (permissive intervention)

Fed. R. Civ. P. 24(b), governing permissive intervention, states as follows:

> Upon timely application anyone may be permitted to intervene in an action. . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The court may permit intervention where the court finds that the applicant's claims and those of the main action have a question of law or fact in common. Id.; see also Garza v. County of Los Angeles, 918 F.2d 763, 777 (9th Cir. 1990). Under FRCP 24(b)(2), an

8

proposed intervenor must show that its application is timely and that it is has independent grounds for jurisdiction, but it need not demonstrate a "significantly protectable" interest relating to the property or transaction which is the subject of the action. Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1008-09 (9th Cir. 2002). Once the foregoing conditions for intervention are met, whether to grant permissive intervention is within the sound discretion of the district court. Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2001) § 7:254.

Unlike the question of intervention as a matter of right, the decision to grant permissive intervention is firmly within the court's discretion. In deciding whether to grant permissive intervention, a court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the other parties." See Garza, 918 F.2d at 777. Considerations of trial convenience, equity, and judicial economy usually dominate the district court's decision whether to grant permissive intervention. See 6 Moore's Federal Practice § 24.10[1](2004). Furthermore, in Kootenai Tribe, the Ninth Circuit held that, in order for permissive intervention to be appropriate, "all that is necessary... is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" See 313 F.3d at 1108. Rule 24 (b) 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." Id.

Here, the CCA asserts that it is in the interests of justice for it to participate in this case, since the case has far reaching implications for the CCA, and for the industry that will be most directly affected by the outcome – i.e., the livestock industry. The CCA invokes Kootenai Tribe for support, which affirmed the district court's grant of permissive intervention in an environmental compliance case (it also affirmed the court's denial of intervention as a matter of right). The CCA also contends that it will contribute unique arguments and information to the case regarding grazing rights. Finally, it insists that it has an interest in the outcome of the *merits* phase of this case, not just the remedies phase, in

view of the fact that a remedies phase is unlikely, and the fact that it is the merits phase that will dictate the scope of any permissible appeal.

The court finds that the CCA's stated interest in the litigation – i.e., the fact that its' members will be affected by the court's decision whether to reverse or to allow the CE decisions regarding grazing permits – does not impact the question whether the Forest Service is guilty of violating *its* duties under NEPA or the Appropriations Rider.  Thus, there is no significant benefit that can be had from allowing the CCA to intervene on the merits as to liability.  Indeed, allowing the CCA to intervene on the merits in a case as massive as this one portends to be, is likely to complicate matters unnecessarily while providing little benefit to the court on the question of the Forest Service's liability.  Even the CCA doesn't suggest that the Forest Service's representation is inadequate to protect its own interests.  On the other hand, the CCA's concerns with respect to potential remedies, and their impact upon CCA members, are legitimate and the court finds that its input with respect to the remedies that plaintiffs seek is likely to be helpful.  Furthermore, plaintiffs do not oppose intervention with respect to the remedies phase.

Accordingly, the CCA's request for permissive intervention is GRANTED, but just as to the remedies phase of this proceeding should the Forest Service be found liable for violating NEPA or the other laws asserted.

3.    Intervention of additional parties

The joinder of additional parties as intervenors contained in the notice filed July 21, 2008,[2] although untimely, will be permitted to the extent intervention has been permitted of the CCA and only on condition that all such intervenors are represented by the same lawyer as the CCA and speak with one voice in briefs and in court.

In addition to participating in the remedies phase of this case after liability has been

---

[2] Those parties are: Arizona Cattle grower's Association, Colorado cattlemen's Association, Idaho Cattlemen's Association, Washington Cattlemen's Association, Oregon cattlemen's Association, Wyoming Stock grower's Association, Utah Cattlemen's Association, California Woolgrower's Association, Colorado Woolgrower's Association, and the Public Lands Council.

determined, intervenors may participate, upon notification by the plaintiffs and defendant, in settlement discussions about remedies even if those discussions precede a determination of liability.

## CONCLUSION

The request to intervene as a matter of right is DENIED. The request for permissive intervention is GRANTED, but only on the question of remedies should the Forest Service's liability be established

**IT IS SO ORDERED.**

Dated: July 30, 2008

PHYLLIS J. HAMILTON
United States District Judge