1  RONALD J. TENPAS
     Assistant Attorney General
2    Environment and Natural Resources Division
     United States Department of Justice
3  DAVID B. GLAZER (D.C. 400966; MD)
     Natural Resources Section
4    Environment and Natural Resources Division
     United States Department of Justice
5    301 Howard Street, Suite 1050
     San Francisco, California  94105
6    Telephone:    (415) 744-6491
     Facsimile:     (415) 744-6476
7    E-mail:  david.glazer@usdoj.gov
   ALISON D. GARNER (UT 9988)
8  Natural Resources Section
   Environment and Natural Resources Division
9  United States Department of Justice
   P.O. Box 663, Ben Franklin Station
10 Washington, D.C.  20004-0663
   Telephone:    (202) 514-2855
11 Facsimile:     (202) 305-0506
   E-mail:  alison.garner@usdoj.gov

12

13 Attorneys for the United States of America

14

15              UNITED STATES DISTRICT COURT

16           NORTHERN DISTRICT OF CALIFORNIA

17              SAN FRANCISCO DIVISION

18

19 _____
                                        )
20 WESTERN WATERSHEDS PROJECT, *et al.,* )  No. 08-CV-1460 PJH
                                        )
21        Plaintiffs,                    )  DEFENDANT'S NOTICE OF MOTION
                                        )  AND MOTION TO SEVER CLAIMS
22     v.                                )  AND TRANSFER VENUE AND
                                        )  MEMORANDUM OF LAW IN SUPPORT
23                                       )
   UNITED STATES FOREST SERVICE,         )  Date:   September 3, 2008
24                                       )  Time:  9:00 a.m.
        Defendant.                       )
25 _____   )  Hon. Phyllis J. Hamilton

26

27

28

*Western Watersheds Project, et al. v. U.S. Forest Service*, No. 08-cv-1460 PJH
Defendant's Motion to Sever Claims and Transfer Venue

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... iii

NOTICE OF MOTION ............................................................................................................ 1

STATEMENT OF ISSUES PRESENTED .............................................................................. 1

LEGAL BACKGROUND ........................................................................................................ 2

I.     National Environmental Policy Act ........................................................................... 2

II.    2005 Consolidated Appropriations Rider .................................................................. 3

FACTUAL BACKGROUND .................................................................................................... 4

ARGUMENT ............................................................................................................................ 4

I.     Plaintiffs' Claims Challenging Decisions to Authorize 386 Grazing Allotments
       Should Be Severed Under Rule 21 for Misjoinder .................................................... 4

       A.     Misjoinder of Claims Exists Because the Decisions to Authorize
              386 Grazing Allotments Do Not Constitute A Common Transaction
              or Series of Transactions ................................................................................. 6

       B.     Misjoinder Exists Because Plaintiffs' Claims Do Not Sufficiently
              Involve a Common Question of Law or Fact ................................................... 7

II.    Each of the Claims Arising Outside of the Northern District of California
       Should Be Transferred to the Judicial District Encompassing the
       Administrative Unit of the National Forest where the Claim Arose .......................... 8

       A.     The District Court Has Broad Discretion under Section 1404(a) to
              Adjudicate a Motion to Transfer Venue According to an Individualized
              Case-by-Case Consideration of Fairness, Taking into Account the
              Convenience of the Parties and the Interests of Justice ................................. 8

       B.     The Claims Might Have Originally Been Brought in the Judicial
              Districts Where the National Forests Are Located .......................................... 9

              1.     Claims Challenging Decisions on the Lost Padres and
                     Mendocino National Forests Were Properly Brought in the
                     U.S. District Court for the Northern District of California ................. 9

              2.     Claims Challenging Decisions on the Klamath, Modoc, Lassen,
                     Plumas, Stanislaus, Inyo, and Sequoia National Forests
                     Could Have Been Brought in the U.S. District Court for the
                     Eastern District of California .............................................................. 9

i

| | | | |
|---|---|---|---|
| | 3. | **Claims Challenging Decisions on the Prescott National Forest Could Have Been Brought in the U.S. District Court for the District of Arizona** | 10 |
| | 4. | **Claims Challenging Decisions on the Salmon-Challis and Caribou-Targhee National Forests Could Have Been Brought in the U.S. District Court for the District of Idaho** | 10 |
| | 5. | **Claims Challenging Decisions on the Bridger-Teton and Shoshone National Forests Could Have Been Brought in the U.S. District Court for the District of Wyoming** | 10 |
| | 6. | **Claims Challenging Decisions on the Wasatch-Cache, Ashley, Manti La Sal, and Fishlake National Forests Could Have Been Brought in the U.S. District Court for the District of Utah** | 11 |
| | 7. | **Claims Challenging Decisions on the Rio Grande, Medicine Bow-Routt, and Pike and San Isabel National Forests Could Have Been Brought in the U.S. District Court for the District of Colorado** | 11 |
| | 8. | **Claims Challenging Decisions on the Malheur and Umatilla National Forests Could Have Been Brought in the U.S. District Court for the District of Oregon** | 11 |
| | 9. | **Claims Challenging Decisions on the Okanogan-Wenatchee and Colville National Forests Could Have Been Brought in the U.S. District Court for the Eastern District of Washington** | 12 |
| C. | | **An Individualized, Case-by-Case Consideration of Fairness, the Convenience of the Parties, and the Interests of Justice Favor Transfer** | 12 |
| | 1. | **The Interests of Justice Favor Transfer** | 13 |
| | 2. | **Transfer of Venue Would Not Result in Prejudice or Inconvenience** | 17 |
| **CONCLUSION** | | | 18 |

ii

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Adams v. Bell*, 711 F.2d 161 (D.C. Cir 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Arete Power, Inc. v. Beacon Power Corp.*, No. C-07-5167-WDB, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Cal. Trout v. Schaeffer*, 58 F.3d 469 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7

*Ctr. for Biological Diversity v. Kempthorne*, No. 3:07-cv-00894-EDL, 2007 WL 2023515 (N.D. Cal. July 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Ctr. for Biological Diversity v. Rural Utilities Serv.*, No. 3:08-cv-01240-MMC (N.D. Cal. June 27, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) . . . . . . . . . . . . 12

*Deseret Empire Bank v. Ins. Co. of No. America,*, 623 F.2d 1371 (9th Cir. 1980) . . . . . . . . . . . . 5

*Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086 (N.D. Cal. 2002) . . . . . . . . . . 16

*Gerin v. Aegon USA, Inc.*, 2007 WL 1033472 (N.D. Cal. April 4, 2007) . . . . . . . . . . . . . . . . . 13

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re Horseshoe Entm't*, 337 F.3d 429 (5th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In the Matter of Directv*, C-02-5912-JW, 2004 WL 2645971 (N.D. Cal. July 26, 2004) . . . . . 5, 6

*Inherent.com v. Martindale-Hubbel*, 420 F. Supp. 2d 1093 (N.D. Cal. 2006) . . . . . . . . . . . . . 8, 9

*Jones v. Bayer Healthcare*, No. 03-05531-JSW, 2005 WL 148525 (N.D. Cal. June 23, 2005) . 5

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059 (9th Cir. 2002) . . . . . . . . . . . . . . . 2

*Pfeiffer v. Himax Techs., Inc.*, 530 F. Supp. 2d 1121 (C.D. Cal 2008) . . . . . . . . . . . . . . . . . . . 15

*Piper Aircraft v. Reyno*, 454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sierra Club v. Bosworth*, 510 F.3d 1016 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sierra Club v. Flowers*, 276 F. Supp.2d 62 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043 (3rd Cir. 1973) . . . . . . . . . . . . . . . . . . . . 17

*S. Utah Wilderness Alliance v. Norton*, 2004 WL 896522 (D.D.C., Apr. 27, 2004) . . . . . . . 14, 15

*Stewart Org. v. Ricoh Corp.*, 487 U.S. 22 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13 (D.D.C. 1996) . . . . . . . . . . . . . . . 12-18

*Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) . . . . . . . . . . . . . . . 5, 6

*Wild South v. Jacobs*, No. 1:03-cv-1230-ODE,  (N.D. Ga. Dec. 18, 2003) . . . . . . . . . . . . . 5, 13

## FEDERAL STATUTES

16 U.S.C. §§ 1600-1614  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1391(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-11

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

42 U.S.C. § 4321–4370f  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 4332(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5 U.S.C. §§ 701–706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. 108-447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Pub. L. No. 104-19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 108-108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 110-161 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## FEDERAL RULES

Fed. R. Civ. P. 20(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

Fed R. Civ. P. 21  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5

## FEDERAL REGULATIONS

36 C.F.R. § 200.2(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

40 C.F.R. § 1501.4(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

40 C.F.R. § 1508.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

40 C.F.R. § 1508.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**<u>NOTICE OF MOTION</u>**

Defendant U.S. Forest Service hereby serves notice that it will bring on for hearing a motion to sever and transfer claims, pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a).  The motion is currently calendared to be heard by the Hon. Phyllis J. Hamilton on September 3, 2008, at 9:00 a.m., in Courtroom No. 3.

**<u>STATEMENT OF ISSUES PRESENTED</u>**

Defendant moves pursuant to Rule 21 of the Federal Rules of Civil Procedure to sever plaintiffs' claims challenging decisions to authorize grazing on 386 allotments in twenty-five National Forests and to transfer venue of such claims pursuant to 28 U.S.C. § 1404(a) to the judicial districts containing the National Forests where each decision was made.  With the exception of decisions concerning five allotments, plaintiffs' claims have no connection with this judicial district; nevertheless, plaintiffs would seek to have this Court adjudicate claims concerning 381 grazing allotments located in seven other Western States.  For the reasons set forth below, plaintiffs' claims should be severed and transferred to the appropriate judicial districts.

Plaintiffs' claims should be severed for misjoinder because (1) plaintiffs' claims do not arise out of a single transaction or series of transactions, and (2) plaintiffs' claims do not involve common issues of law or fact.  Then, each severed claim should be transferred to the appropriate judicial district.  Transfer is proper because each claim could have been brought in the judicial district containing the National Forest where the claim arose.  Furthermore, transfer of the severed claims serves the interests of justice and convenience because (1) the judicial districts encompassing each affected National Forest have an interest in seeing localized controversies decided at home; (2) claims challenging 381 of the 386 grazing allotments have a stronger nexus to the judicial districts where the claims arose than to this district; and (3) plaintiffs do not allege any specific relationship with this district, while a majority of plaintiffs have concrete connections to the districts to which transfer is sought.

Accordingly, this Court should exercise its discretion to sever plaintiffs' claims into nine separate suits and transfer those claims as follows:  (1) claims challenging decisions on the Los

Padres and Mendocino National Forests should be severed and should remain in the Northern District of California; (2) claims challenging decisions on the Klamath, Modoc, Lassen, Plumas, Stanislaus, Inyo, and Sequoia National Forests should be severed and transferred to the Eastern District of California; (3) claims challenging decisions on the Prescott National Forest should be severed and transferred to the District of Arizona; (4) claims challenging decisions on the Salmon-Challis and Caribou-Targhee National Forests should be severed and transferred to the District of Idaho; (5) claims challenging decisions on the Bridger-Teton and Shoshone National Forests should be severed and transferred to the District of Wyoming; (6) claims challenging decisions on the Wasatch-Cache, Ashley, Manti La Sal, and Fishlake National Forests should be severed and transferred to the District of Utah; (7) claims challenging decisions on the Rio Grande, Medicine Bow-Routt, and Pike and San Isabel National Forests should be severed and transferred to the District of Colorado; (8) claims challenging decisions on the Malheur and Umatilla National Forests should be severed and transferred to the District of Oregon; and (9) claims challenging decisions on the Okanogan-Wenatchee and Colville National Forests should be severed and transferred to the Eastern District of Washington.

A proposed order granting the requested relief is submitted herewith.

## LEGAL BACKGROUND

### I.    National Environmental Policy Act

The National Environmental Policy Act of 1969, 42 U.S.C. § 4321–4370f ("NEPA") is a procedural statute that does not "mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions." *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1070–71 (9th Cir. 2002) (citation and internal quotation marks omitted).

NEPA generally requires federal agencies to prepare a detailed Environmental Impact Statement ("EIS") for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). To determine whether an action requires an EIS, an agency may prepare an Environmental Assessment ("EA"). 40 C.F.R. § 1501.4(b). An EA is a concise public document that briefly describes the proposal; examines alternatives to the

proposal; considers the environmental impacts, if any; and lists other agencies and individuals consulted. 40 C.F.R. § 1508.9. If the agency finds that the proposed action will have no significant impact, it issues a Finding of No Significant Impact ("FONSI"), in which case an EIS is not required. *Cal. Trout v. Schaeffer*, 58 F.3d 469, 472 (9ᵗʰ Cir. 1995).

Council of Environmental Quality ("CEQ") regulations also require each agency to identify categories of actions which "do not individually or cumulatively have a significant effect on the human environment." *Sierra Club v. Bosworth*, 510 F.3d 1016, 1018-19 (9ᵗʰ Cir. 2007) (citing 40 C.F.R. §§ 1507.3(b)(2)(ii), 1508.4). These categories of actions are then eligible for coverage in a categorical exclusion ("CE"). *Id.* The CEQ regulations provide, however, that an EA or EIS may be required in individual cases posing "extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4. Some CEs are established through agency regulation, while other CEs, such as the ones at issue in this case, are established by legislation.

## II.    2005 Consolidated Appropriations Rider

The 2005 Consolidated Appropriations Rider directs the Forest Service to categorically exclude certain grazing re-authorization decisions from NEPA review if three criteria are met. FY 2005 Consolidated Appropriations Act, Sec. 339, Pub. L. 108-447. First, the decision must continue "current grazing management." Second, the Forest Service must have monitoring data indicating that current grazing management is meeting, or is satisfactorily moving toward, the objectives of the applicable Land and Resources Management Plan for the forest in which the allotment is authorized, as determined by the Secretary.[1]/ *Id.* Third, the decision must be consistent with the Forest Service policy regarding extraordinary circumstances.[2]/ *Id.*

---

[1]/    Land and Resource Management Plans provide the guidelines for the overall direction and management of the National Forests that they govern, pursuant to the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600-1614.

[2]/    The Forest Service Handbook directs land managers to consider various resource conditions in determining whether the proposed action involves extraordinary circumstances. 67 Fed. Reg. 54,622, 54,627 (Aug. 23, 2002).

## FACTUAL BACKGROUND

Grazing on National Forests has long been a legally recognized use of those public lands. Since 1995, Congress has directed that existing grazing permits be renewed and grazing continue on existing terms and conditions while the Forest Service completes any needed environmental analysis or other processing in accordance with applicable law. *See* Rescissions Act of 1995, Pub. L. No. 104-19; FY 2004 Consolidated Appropriations Act, Pub. L. No. 108-108, § 325; FY 2005 Consolidated Appropriations Act, Pub. L. 108-447, § 339; FY 2008 Consolidated Appropriations Act, Pub. L. No. 110-161, § 421.

Plaintiffs in this case include thirteen separate organizations, only two of which reside in the Northern District of California. Plaintiffs filed this action pursuant to NEPA, the 2005 Consolidated Appropriations Rider and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, against the U.S. Forest Service, seeking review of decisions authorizing 386 grazing allotments in twenty-five National Forests in eight states. (*See* Pls.' First Amd. Compl. ¶¶ 1, 5.)

## ARGUMENT

### I.    Plaintiffs' Claims Challenging Decisions to Authorize Grazing on 386 Allotments Should Be Severed Under Rule 21 for Misjoinder

Plaintiffs have raised claims challenging independent decisions made on twenty-five National Forests to authorize 386 grazing allotments. Because factually, each of these decisions is entirely independent of the others, the claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). Moreover, while the claims may seek to advance the same general legal theory, i.e., that under NEPA the Forest Service must allegedly complete an EIS or EA/FONSI prior to issuing or re-authorizing ten-year grazing allotment permits, the claims do not include a common question of law or fact. Plaintiffs and their respective claims therefore are not properly joined, and the court should sever their claims, pursuant to Fed. R. Civ. P. 21.

In order for parties to be properly joined as plaintiffs in a single action, they must satisfy Rule 20(a), which has two requirements: (1) there must be a right to relief arising out of the same transaction, occurrence or series of transactions or occurrences; (2) there must be a question of law or fact common to all of the plaintiffs which will arise in the action. Fed. R. Civ.

4

P. 20(a); *see also In the Matter of Directv*, C-02-5912-JW, 2004 WL 2645971, *3 (N.D. Cal. July 26, 2004). Both requirements must be satisfied for joinder to be proper. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

If either requirement is not met, the court may sever the claims under Rule 21, which provides that "[t]he court may also sever any claim against a party," Fed. R. Civ. P. 21; *see also Coughlin*, 130 F.3d at 1350, so long as "no substantial right will be prejudiced by the severance." *Jones v. Bayer Healthcare*, No. 03-05531-JSW, 2005 WL 148525, *1 (N.D. Cal. June 23, 2005) (citing *Coughlin*, 130 F.3d at 1350). Because severance is a case management determination "peculiarly within the discretion of the trial court," courts have broad discretion in deciding a motion to sever. *Id.*; *Bayer Healthcare*, 2005 WL 148525 at *1.

In *Wild South v. Jacobs*, the U.S. District Court for the Northern District of Georgia granted a motion to sever plaintiffs' claims into four separate suits based on the districts in which the National Forests at issue were located. No. 1:03-cv-1230-ODE, slip op. at 22 (N.D. Ga. Dec. 18, 2003). Various environmental organization challenged under the APA, NEPA and NFMA, Forest Service approval of thirty-two timber sales and projects on seven National Forests. The court found improper joinder and severed the claims, holding that the fact-specific nature of the analysis required to adjudicate each of the thirty-two claims "will differ based on data that the Forest Service collected for each site and will also differ based on the different requirements of the Forest Plans." *Id.* at 20.[3/]

Because plaintiffs' claims do not satisfy either of the requirements of Rule 20(a),[4/] the respective claims are not properly joined. Therefore, the court should sever plaintiffs' claims

---

[3/]    The court then transferred the four severed cases to the states where the National Forests at issue were located. *Id.* at 20. A copy of the slip opinion is attached hereto for the Court's convenience.

[4/]    It is important to note that the two requirements of Rule 20(a) "must be satisfied in order to allow for joinder ... however, even if these requirements are satisfied, there is no requirement that the parties must be joined. Rule 20(a) is permissive in character; joinder in situations falling within the rule's standard is not required." *Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067, 1078 (C.D. Cal. 2002) (emphasis in original) (citing 7 Wright, Miller, & Kane, *Federal Practice and Procedure*, § 1652 at 395-96). Furthermore, Rules 20 and 21 require the court to analyze other relevant factors in order to determine "whether the permissive joinder of a party will comport with the principle of fundamental fairness." *Wynn*, 234 F. Supp. 2d at 1078 (quoting *Deseret Empire Bank v. Ins. Co. of No. Am.*, 623 F. 2d 1371, 1375 (9th Cir. 1980)).

pursuant to Rule 21.

    A.    **Misjoinder of Claims Exists Because the Decisions to Authorize 386 Grazing Allotments Do Not Constitute A Common Transaction or Series of Transactions**

In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established. *Directv*, 2004 WL 2645971 at *3. Under Rule 20, a series of transactions requires some connection or logical relationship. *Id*. ("'Transaction' is admittedly a word of flexible meaning, and may comprehend a series of many occurrences, depending ... upon their logical relationship.") The first prong of the test, the "same transaction" requirement, simply refers to the similarity in the factual background of claims. *Coughlin*, 130 F.3d at 1350. Because plaintiffs' claims do not meet this test, they are not properly joined and should therefore be severed. In this case, the only connection among the claims is the common allegation of violations of NEPA. The mere allegation of procedural violations is not, in and of itself, sufficient to create a common transaction or occurrence. *Id*. (granting motion to sever claims because each claim was discrete and involved "different legal issues, standards, and procedures"); *Wynn*, 234 F. Supp. 2d at 1078 (holding that the mere assertion of commonality is not sufficient to claim the right to relief arises out of the same transaction or occurrence).

Moreover, the 386 site-specific decisions involved in this case do not constitute a series of transactions because they were approved by different District Rangers on separate National Forests, under varying circumstances, with different parameters and at different times. (*See* Pls.' First Amd. Compl. ¶¶ 33, 34.) The Forest Service officials' decisions in this case were therefore "separate and unrelated" actions, "occurring at different times for different reasons." *Wynn*, 234 F. Supp. 2d at 1080 (internal quotations and citation omitted).

The decisions to authorize grazing on twenty-five National Forests do not, therefore, constitute a single transaction or occurrence or a series of transactions or occurrences and, pursuant to Rules 20(a) and 21, plaintiffs' respective claims should be severed.

6

### B.    Misjoinder Exists Because Plaintiffs' Claims Do Not Sufficiently Involve a Common Question of Law or Fact

Plaintiffs and their respective claims also are not properly joined because they do not satisfy the second requirement of Rule 20(a), which requires their claims involve common questions of law or fact. Although plaintiffs' claims are based on alleged violations of NEPA and the 2005 Appropriations Rider, "the mere fact that all Plaintiffs' claims arise under the same general law[s] does not necessarily establish a common question of law or fact." *Coughlin*, 130 F.3d at 1351. In fact, even if this Court elects not to sever, it will still have to give each claim individualized attention. *Id.* The basis for plaintiffs' claims rests on allotment-specific allegations, e.g., that the grazing authorized on a particular allotment does not constitute the continuation of current management for that allotment, that monitoring data for an allotment is insufficient or does not show the particular allotment is meting or moving toward forest plan objective or that extraordinary circumstances exist on a particular allotment. Thus, each decision will have to be separately analyzed to determine if the legal parameters for application of the CE were met.

The decision to authorize grazing on a particular allotment, and the determination that the 2005 Appropriations Rider CE covers that grazing authorization decision is made by those officials whose on-the-ground experience takes into account the unique geographic area, the environment, the existence and impacts of potential extraordinary circumstances, and the guidelines in the relevant Forest Plan. Each decision was made independently of other grazing decisions, particularly those decisions made on different Forests. Similarly, the determination here as to whether the Forest Service appropriately complied with NEPA through the 2005 Appropriations Rider will require independent scrutiny of each grazing decision for each of the 386 challenged allotments.

Therefore, because the decisions challenged here are so individualized and because no common questions of law or fact exist between or among them, plaintiffs' respective claims are improperly joined and the court should sever such claims.

II.   **Each of the Claims Arising Outside of the Northern District of California Should Be Transferred to the Judicial District Encompassing the Administrative Unit of the National Forest where the Claim Arose**

The decisions challenged here authorize grazing on 386 allotments on twenty-five National Forests across eight states and nine federal judicial districts.  Only five allotments on two National Forests (Sweetwater on the Lost Padres National Forest; and Pine Mountain, York Cabin, Middle Creek, and Elk Mountain on the Mendocino National Forest) are located within the boundaries of the Northern District of California.  Because the remaining claims asserted here would have properly been brought in the judicial districts where the affected Forests are located, this Court may transfer the claims to the appropriate districts.  Transfer of venue is warranted because it would not inconvenience the parties and because it is in the interests of justice to resolve plaintiffs' localized claims in the districts most affected by the challenged decisions.

A.   **The District Court Has Broad Discretion under Section 1404(a) to Adjudicate a Motion to Transfer Venue According to an Individualized Case-by-Case Consideration of Fairness, Taking into Account the Convenience of the Parties and the Interests of Justice**

This court has broad discretion under 28 U.S.C. § 1404(a) to transfer claims to those districts described *supra* at 1-2.  *Inherent.com v. Martindale-Hubbel*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) ("A motion to transfer venue lies within the broad discretion of the district court").   Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In determining whether an action should be transferred under section 1404(a), courts employ a two-step analysis.  First, the court considers whether the action could have originally be brought in those districts to which the transfer is sought.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir 1985); *Inherent.com*, 420 F. Supp. 2d at 1098.  Second, the Court undertakes an individualized, case-by-case consideration of convenience and fairness, taking into account the convenience of the parties and the interests of justice.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

Here, each of the severed claims might have been brought in the judicial districts to which transfer is sought.  This court should transfer the remaining claims to those judicial

districts, both because the interests of justice in having localized controversies decided at home favor transfer, and because no prejudice or harm will occur to the plaintiffs if the Court grants defendant's motion.

**B.    Transfer of Venue is Appropriate Because the Claims Might Have Originally Been Brought in the Judicial Districts Where the National Forests Are Located**

In adjudicating a motion to transfer, the threshold question is whether the action might have been brought in those districts to which transfer is sought. *Inherent.com*, 420 F. Supp. 2d at 1098; *Hatch*, 758 F.2d at 414. In a suit involving a federal question, venue is proper in "any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or (3) the plaintiff resides if no real property is involved in the action." 28 U.S.C. §1391(e).

As defendant establishes below, the severed claims could have been brought in the districts to which transfer is sought and, therefore, transfer of the claims to those courts is proper.

1.    **Claims Challenging Decisions on the Los Padres and Mendocino National Forests Were Properly Brought in the U.S. District Court for the Northern District of California**

Plaintiffs here properly brought their claims as to the grazing allotments in the Los Padres and Mendocino National Forests. The Sweetwater allotment on the Los Padres National Forest is located in Monterey County, California. (*See* Pls.' First Amd. Compl. ¶ 111.) The Pine Mountain, York Cabin, Middle Creek, and Elk Mountain grazing allotments are located within Lake County, California, on the Mendocino National Forest. (*See* Pls.' First Amd. Compl. ¶ 116.) Both counties are located within the Northern District of California; therefore, plaintiffs properly challenge two CE decisions for five grazing allotments within the Northern District of California, pursuant to 28 U.S.C. § 1391(e)(2), and defendant is not seeking to transfer venue of these claims.

2.    **Claims Challenging Decisions on the Klamath, Modoc, Lassen, Plumas, Stanislaus, Inyo, and Sequoia National Forests Could Have Been Brought in the U.S. District Court for the Eastern District of California**

Plaintiffs' claims challenging decisions on the Klamath, Modoc, Lassen, Plumas, Stanislaus, Inyo, and Sequoia National Forests could have originally been brought in the Eastern

1   District of California.  Therefore, transfer of those severed claims to that judicial district is

2   appropriate.  First, those claims could have been brought there pursuant to 28 U.S.C.

3   § 1391(e)(2), because plaintiffs' challenges to the forty-seven grazing allotments arose within

4   the Eastern District of California.  (*See* Pls.' First Amd. Compl. ¶¶ 120, 124, 127, 132, 139, 143,

5   151, 155.)  Second, section 1391(e)(1) would also have allowed plaintiffs to bring suit in the

6   Eastern District of California because the Forest Service maintains its Region 5 office within that

7   judicial district, in Vallejo, California.  36 C.F.R. § 200.2(e) (2000).

8           **3.      Claims Challenging Decisions on the Prescott National Forest Could**
            **Have Been Brought in the U.S. District Court for the District of**
9           **Arizona**

10          Plaintiffs' claims challenging eleven decisions on the Prescott National forest may be

11   transferred to the District of Arizona, because such claims could have been brought in Arizona

12   under 28 U.S.C. § 1391(e)(2).  The eleven grazing allotments are located in Yavapai County,

13   Arizona, and therefore arose within that judicial district.  (*See* Pls.' First Amd. Compl. ¶ 159.)

14          **4.      Claims Challenging Decisions on the Salmon-Challis and Caribou-**
            **Targhee National Forests Could Have Been Brought in the U.S.**
15          **District Court for the District of Idaho**

16          Plaintiffs' claims challenging eleven decisions on the Salmon-Challis and Caribou-

17   Targhee National Forests may be transferred to the District of Idaho because could have been

18   brought there originally pursuant to 28 U.S.C. § 1391(e)(2).  The eighty-two grazing allotments

19   at issue here are located entirely within the District of Idaho.  (*See* Pls.' First Amd. Compl. ¶¶

20   165, 171.)

21          **5.      Claims Challenging Decisions on the Bridger-Teton and Shoshone**
            **National Forests Could Have Been Brought in the U.S. District Court**
22          **for the District of Wyoming**

23          Plaintiffs' claims challenging eleven decisions on the Bridger-Teton and Shoshone

24   National Forests may be transferred to the District of Wyoming because such claims could have

25   been brought there originally under 28 U.S.C. §1391(e)(2).  The forty-eight grazing allotments at

26   issue are located entirely within the Tenth Circuit in the District of Wyoming.  (*See* Pls.' First

27   Amd. Compl. ¶¶ 179-80, 187.)

28

                                                     10

6.    **Claims Challenging Decisions on the Wasatch-Cache, Ashley, Manti La Sal, and Fishlake National Forests Could Have Been Brought in the U.S. District Court for the District of Utah**

Plaintiffs' claims challenging forty-two decisions on the Wasatch-Cache, Ashley, Manti La Sal, and Fishlake National Forests may be transferred to the District of Utah because such claims could have been brought there under 28 U.S.C. § 1391(e)(2). The 119 grazing allotments are located entirely within the Tenth Circuit in the District of Utah. (*See* Pls.' First Amd. Compl. ¶¶ 190, 196, 201, 204.) In addition, under section 1391(e)(1), suit could have been brought in the District of Utah, because the Forest Service maintains, within that district, its Region 4 headquarters in Ogden, Utah. 36 C.F.R. § 200.2(e) (2000).

7.    **Claims Challenging Decisions on the Rio Grande, Medicine Bow-Routt, and Pike and San Isabel National Forests Could Have Been Brought in the U.S. District Court for the District of Colorado**

Plaintiffs' claims challenging thirteen decisions on the Rio Grande, Medicine Bow-Routt, and Pike and San Isabel National Forests may be transferred to the District of Colorado because such claims could have been brought there originally pursuant to 28 U.S.C. § 1391(e)(2). The fifty grazing allotments at issue are located entirely within the Tenth Circuit in the District of Colorado. (*See* Pls.' First Amd. Compl. ¶¶ 214, 219, 224.) Additionally, suit could have been brought in the District of Colorado under section 1391(e)(1), because the Forest Service maintains, in Golden, Colorado, a regional headquarters office. 36 C.F.R. § 200.2(e) (2000).

8.    **Claims Challenging Decisions on the Malheur and Umatilla National Forests Could Have Been Brought in the U.S. District Court for the District of Oregon**

Plaintiffs' claims challenging seventeen decisions on the Malheur and Umatilla National Forests may be transferred to the District of Oregon because such claims could have been brought there originally under 28 U.S.C. § 1391(e)(2), given that the seventeen grazing allotments at issue are located entirely within that judicial district. (*See* Pls.' First Amd. Compl. ¶¶ 229, 235.) Additionally, because the Forest Service maintains its Region 6 headquarters in Portland, Oregon, *see* 36 C.F.R. § 200.2(e) (2000), suit could have been brought in the District of Oregon, under 28 U.S.C. § 1391(e)(1).

11

9.  **Claims Challenging Decisions on the Okanogan-Wenatchee and Colville National Forests Could Have Been Brought in the U.S. District Court for the Eastern District of Washington**

Finally, because plaintiffs' claims challenging four decisions on the Okanogan-Wenatchee and Colville National Forests could have been brought in the Eastern District of Washington, transfer of such claims to that judicial district is appropriate. The claims could have been brought there under 28 U.S.C. § 1391(e)(2), as the eighteen grazing allotments at issue are located entirely within the Eastern District of Washington. (*See* Pls.' First Am. Compl. ¶¶ 239, 245.)

C.  **An Individualized, Case-by-Case Consideration of Fairness Based on the Convenience of the Parties and the Interests of Justice Favors Transfer**

Once the Court determines venue is proper in the transferee district, it then proceeds to an individualized case-by-case consideration of convenience and fairness. *GNC*, 211 F.3d at 498. *See also Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In making this determination, the court must consider three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Ctr. for Biological Diversity v. Kempthorne*, No. 3:07-cv-00894-EDL, 2007 WL 2023515 at *3 (N.D. Cal. July 12, 2007).

To aid in this determination, Ninth Circuit courts have looked at various factors when weighing the private interests of the parties and the public interests of the court. These factors include, but are not limited to (1) the plaintiffs' choice of forum; (2) the local interest in having localized controversies decided at home; (3) the avoidance of unnecessary problems in conflict of law; (4) the familiarity of each forum with applicable law; (5) the relevant public policy of the forum state; (6) the relative intensity in the jurisdictions of any local interests the litigation might implicate; (7) the relative ease of access to evidence; and (8) the cost of obtaining witnesses. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (setting out factors 2–4); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 20 (D.D.C. 1996) (noting that it is appropriate to consider "those whose rights and interests are in fact most vitally affected"); *Arete Power, Inc. v. Beacon Power Corp.*, No. C-07-5167-WDB, 2008 WL 508477, *9 (N.D. Cal. Feb. 22, 2008) (considering intensity of local interests and possibility of

12

1   inconsistent rulings); *GNC*, 211 F.3d at 499 n. 21 (considering state's public policy).

2          Here, both the interests of justice and convenience favor transfer of the severed claims to

3   those districts where transfer is being sought.

4                      1.    **The Interests of Justice Favor Transfer**

5          Of the two statutory factors — convenience and the interests of justice — generally more

6   weight is given to the interests of justice.  In fact, this Court has held that "[t]he 'interests of

7   justice' consideration is the most important factor a court must consider, and may be decisive in

8   a transfer motion even when all other factors point the other way."  *Gerin v. Aegon USA, Inc.*,

9   2007 WL 1033472, *6 (N.D. Cal., April 4, 2007) (quoting *London and Hull Mar. Ins. Co. Ltd. v.*

10  *Eagle Pac. Ins. Co.*, 1996 WL 479013, *3 (N.D. Cal. 1996)); *see also* Wright, Miller & Cooper,

11  *Federal Practice and Procedure: Jurisdiction* 2d § 3854 (1986) ("Indeed, a number of federal

12  courts have considered this factor decisive — outweighing the other statutory factors — in ruling

13  on a change of venue motion even though the convenience of the parties and witnesses pointed

14  in a different direction.").

15         In addition, this Court recently articulated a variation to the general procedures for

16  considering transfer in matters concerning environmental statutes.  Because many environmental

17  cases are typically resolved through the court's examination of the administrative record,

18         the factors set forth in the transfer statute, § 1404(a), and cases applying it,
           such as *Gerin, supra,* are for the most part not implicated.  There are no
19         witnesses to consider, and documentary evidence is as easily provided in
           one venue as another, especially in this age of electronic transmission.
20         The proposed transferee courts are equally familiar with the environmental
           laws at issue . . . .  Therefore, as in most environmental cases, the issue of
21         which federal district should adjudicate the issues is determined by
           weighing a plaintiff's choice of forum against the competing interest in
22         "having localized controversies decided at home."

23  *Ctr. for Biological Diversity*, 2007 WL 2023515 at *5 (quoting *Piper Aircraft v. Reyno*, 454 U.S.

24  235, 241 n.6 (1981)); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (superseded by statute

25  on other grounds)).  *See also Wild South*, No. 1:03-cv-1230-ODE, slip op. at 20-21.

26         In this case, the residents of Arizona, Colorado, Idaho, Oregon, Utah, Washington,

27  Wyoming, and the Eastern District of California have a compelling interest in seeing their

28  localized controversies decided at home.  *See Trout Unlimited*, 944 F. Supp. at 19.  In matters of

                                              13

1    environmental law and land use decisions such as those involve here, disputes "that are of great

2    importance to the State . . . should be resolved in the forum where the people 'whose rights and

3    interests are in fact most vitally affected by the suit'" are located.  *Id.* at 19–20 (quoting *Adams

4    v. Bell*, 711 F.2d 161, 167 n.34 (D.C. Cir 1983)).

5          In *Southern Utah Wilderness Alliance v. Norton*,, the court granted a motion to transfer to

6    the District of Utah a case involving an agency decision to permit oil and gas leases on federal

7    lands in Utah, noting "[l]and is a localized interest because its management directly touches local

8    citizens." 2004 WL 896522 at *6 (D.D.C., Apr. 27, 2004).  Again in *Trout Unlimited*, the court

9    granted the defendant's motion to transfer to the District of Colorado a case involving the

10   operation of a dam and reservoir in Colorado, emphasizing that Colorado

11   
12         possesses a significant and predominant interest in this suit because of the
         impact that the resolution of this action will have upon the affected lands,
         waters, wildlife and people of that state.  Moreover, Colorado has an
13         overwhelming connection to the subject matter of this action . . . .
         Importantly, the people who are concerned about the . . . impact . . . are
14         located in Colorado.

15   944 F. Supp. at 17.  In this case, the residents of the states within which the twenty-five

16   individual Forests are located have an overwhelming connection to the claims at issue.  The

17   resolution of those claims will have an impact on the citizens of those states, as well as on the

18   affected natural resources and their use.  This impact will especially be felt by those grazing

19   permittees whose interests and livelihoods are directly at stake.

20         Moreover, plaintiffs themselves allege an interest in Forests located within the transferee

21   districts.  For example, GCT members allege that they use and enjoy the forests of Southern

22   Utah, including the Fishlake and Manti La Sal National Forests, for "recreation, sightseeing,

23   aesthetic beauty, solitude, and scientific study," (*see* Pls.' First Amd. Compl. ¶ 21), thus

24   supporting the transfer of claims concerning those Forests to the District of Utah.  Plaintiffs UEC

25   and RRF allege similar interests in Utah National Forests, (*see* Pls.' First Amd. Compl. ¶¶ 22,

26   23), offering additional support for transfer of those claims to Utah.

27         Plaintiff ONDA staff and members allege that they use and enjoy the Umatilla and

28   Malheur National Forests for "educational, recreational, spiritual, aesthetic, and scientific

1   activities," (*see* Pls.' First Amd. Compl. ¶ 9), therefore providing support for transfer of those

2   claims to the District of Oregon.

3           Transfer of claims to the Eastern District of California is supported by allegations that the

4   staff and members of SFL use and enjoy the Modoc, Lassen, Plumas, Inyo, Sierra, Stanislaus,

5   and Sequoia National Forests for "hiking, camping, fishing, wildlife viewing, photography,

6   solitude, and other recreational, scientific, aesthetic, and spiritual pursuits." (*See* Pls.' First

7   Amd. Compl. ¶ 19.)   Plaintiffs KSW and SFK allege similar interests in the Klamath and

8   Sequoia National Forests, (*see* Pls.' First Amd. Compl. ¶¶ 17, 20), providing further support for

9   transfer of those claims to the Eastern District of California.

10          Courts have also considered the relative intensity within the transferee jurisdictions of

11  any local interest the litigation may generate. *Arete Power, Inc.*, 2008 WL 508477 at *9.

12  Grazing is undoubtedly an important issue to the citizens of Arizona, Colorado, Idaho, Oregon,

13  Utah, Wyoming, and Washington.  The judges in each district may be better acquainted with the

14  local interests generated by these claims.  In fact, a simple comparison of the grazing permits

15  issued by the Forest Service Regions involved in this case demonstrates the level of grazing

16  activity in most of the transferee districts is significantly higher, as compared with this district.

17  The Forest Service has issued 1,838 grazing permits in Region 4 (the Inter-Mountain States);

18  1,343 in Region (the Southwestern States): 1,302 in Region 2 (the Rocky Mountain States); 479

19  in Region 6 (the Pacific Northwest); and 401 in Region 5 (the Pacific Southwest).  Available at:

20  http://fs.fed.us/rangelands/reports/shtml.  Only two of the twenty-five National Forests involved

21  in this case lie within this district.

22          Furthermore, at least one permittee grazing association, the California Cattlemens'

23  Association, has moved this Court to intervene.  On July 30, 2008, this Court granted in part and

24  denied in part the motion.  [Dkt. #48].  The Court's Order further allowed joinder in that motion

25  by grazing associations from Arizona, Colorado, Idaho, Washington, Oregon, Wyoming, and

26  Utah.  *Id*. at 10 n.2.  Transfer would allow those organizations to participate in, or otherwise

27  observe, the proceedings without having to travel great distances.  As the Supreme Court has

28  stated,

1

> [i]n cases which touch the affairs of many persons, there is reason for
> holding the trial in their view and reach rather than in remote parts of the
> country where they can learn of it by report only. *There is a local interest
> in having localized controversies decided at home.*

2

3

*Gulf Oil Corp.*, 330 U.S. at 509 (emphasis added).

4

Finally, although plaintiffs' choice of forum is generally accorded deference, *see Pfeiffer*

5

*v. Himax Techs., Inc.*, 530 F. Supp. 2d 1121, 1123-24 (C.D. Cal 2008), this deference is lessened

6

when the plaintiffs' choice "has no meaningful ties to the controversy and no particular interest

7

in the parties or subject matter." *Trout Unlimited*, 944 F. Supp. at 17; *see also S. Utah*

8

*Wilderness Alliance*, 315 F. Supp. 2d at 86; *Florens Container v. Cho Yang Shipping*, 245 F.

9

Supp.2d 1086, 1092 (N.D. Cal. 2002) (citing *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949,

10

954 (9th Cir.1968)).  Indeed, where plaintiffs' choice of forum has "no factual nexus to the

11

case," where transfer is sought to the forums where the subject matter of the lawsuit is connected

12

with those districts, the degree to which the court must defer to the plaintiff's venue choice is

13

substantially reduced.  *Trout Unlimited*, 944 F. Supp. at 17 (internal quotations removed).

14

Here, plaintiffs' choice of forum has no factual nexus to 381 of the 386 allotments at

15

issue.[5]/  The Northern District of California has no meaningful ties to the controversies and no

16

particular interest in the subject matter of such claims.

17

As discussed *supra* at 6-7, the authorization of grazing allotments is an individualized,

18

fact-based determination made by local officials on a local level.  No Forest Service officials

19

located within this judicial district (or, in most cases, even in California) had any involvement in

20

authorizing 381 of the 386 grazing allotments challenged in this case.  Except for the five

21

allotments on the Mendocino and Los Padres Forests, none of the operative facts underlying

22

plaintiffs' claims arose in the Northern District of California, and the challenged decisions

23

authorizing grazing allotments are those in which the citizens of the transferee districts have a far

24

greater interest than those here.  While plaintiffs allege that "a substantial part of the events or

25

omissions giving rise to the claims herein occurred within this judicial district, [and] a

26

27

28

---

[5]/    As discussed *supra* at 9, plaintiffs' claims as to the five allotments on the Los Padres and
Mendocino National Forests are properly venued in this District.

16

1  substantial part of the public lands and resources at issues are located within this district," (*see*

2  Pls. First Amd. Compl. ¶ 9),  a simple comparison of the number of challenged decisions made

3  within this district – 5– against the number of decisions made outside the district – 381 –

4  demonstrates this statement to be incorrect.  Thus, this Court lacks ties to the subject matter and

5  the controversies at issue in the remaining claims and should therefore exercise its discretion to

6  transfer such claims.[6/]

7                          2.      **Transfer Would Not Result in Prejudice or Inconvenience**

8          The convenience of the parties in this case also weighs in favor of transferring the

9  severed actions to those districts where the controversies arose.  Plaintiffs would not be

10  inconvenienced because most maintain offices or are headquartered in the districts where

11  transfer is sought.[7/]  Nine of the thirteen plaintiffs maintain offices or are headquartered in the

12  transferee districts.  For example, WWP, GCT, UEC and RRF maintain offices or are

13  headquartered within the District of Utah.  (*See* Pls.' First Amd. Compl. ¶¶ 12, 21-23.)  Plaintiffs

14  WWP, CBD, and GCT maintain offices or are headquartered in the District of Arizona.  (*See*

15  Pls.' First Amd. Compl. ¶¶ 12, 14, 21.)  Plaintiff WWP maintains several offices within the

16  District of Idaho.  (*See* Pls.' First Amd. Compl. ¶ 12.)  The offices for CBD, KSW, and ONDC

17  are within the District of Oregon.  (*See* Pls.' First Amd. Compl. ¶¶ 14, 17, 24.)  In fact, plaintiffs

18  allege only that two of the thirteen plaintiffs reside in this district, California Trout and the

19  Environmental Protection Information Center ("EPIC").  (*See* Pls.' First Amd. Compl. ¶ 9.)

20

21  [6/]      Tellingly, none of the "test cases" that plaintiffs propose litigating first in these
22  proceedings (*see* Case Management Conf. Statement [Dkt. #46]) arises in the Northern District
    of California.

23  [7/]      It should be noted that courts have consistently held the location of the attorneys for the
24  plaintiffs is not an important factor to be considered.  *See In re Horseshoe Entm't*, 337 F.3d 429,
    434 (5th Cir.2003) ("The factor of 'location of counsel' is irrelevant and improper for considera-
25  tion in determining the question of transfer of venue"); *Solomon v. Cont'l Am. Life Ins. Co.*,
    472 F.2d 1043, 1047 (3rd Cir. 1973) ("The convenience of counsel is not a factor to be
26  considered"); *Sierra Club v. Flowers*, 276 F. Supp.2d 62, 69 (D.D.C. 2003) ("Because this action
    involves an administrative review that the court is likely to determine on the papers, the location
27  of counsel — already given little, if any, weight in transfer determinations — makes no
    difference here") (internal quotation marks removed); *Ctr. for Biological Diversity v. Rural
28  Utilities Serv.*, No. 3:08-cv-01240-MMC, slip op. at 3 (N.D. Cal. June 27, 2008) (holding "the
    convenience of counsel is not a recognized factor").

1    Thus, plaintiffs would not be inconvenienced by transfer.

2            Finally, potential witnesses would not be inconvenienced by transfer. Generally, the

3    convenience of witnesses in a case such as this "has less relevance because th[e] case involves

4    judicial review of an administrative decision." *Trout Unlimited*, 944 F. Supp. at 18. However,

5    to the extent that witnesses would be needed, for example, to attest to harm that might occur

6    from any relief plaintiffs may demand, (*see* Pls.' First Amd. Compl. ¶¶ A-G), such witnesses

7    work or reside in the jurisdictions where the affected grazing allotments are located and to which

8    transfer is sought.

9            In sum, transfer of the severed claims to their respective judicial districts would not result

10   in prejudice or inconvenience.

11                                    **CONCLUSION**

12           For the foregoing reasons, defendant respectfully requests that this Court grant its motion

13   to sever plaintiffs' claims and transfer those as follows: (1) claims challenging decisions on the

14   Los Padres and Mendocino National Forests should be severed and remain in the Northern

15   District of California; (2) claims challenging decisions on the Klamath, Modoc, Lassen, Plumas,

16   Stanislaus, Inyo, and Sequoia National Forests should be severed and transferred to the Eastern

17   District of California; (3) claims challenging decisions on the Prescott National Forest should be

18   severed and transferred to the District of Arizona; (4) claims challenging decisions on the

19   Salmon-Challis and Caribou-Targhee National Forests should be severed and transferred to the

20   District of Idaho; (5) claims challenging decisions on the Bridger-Teton and Shoshone National

21   Forests should be severed and transferred to the District of Wyoming; (6) claims challenging

22   decisions on the Wasatch-Cache, Ashley, Manti La Sal, and Fishlake National Forests should be

23   severed and transferred to the District of Utah; (7) claims challenging decisions on the Rio

24   Grande, Medicine Bow-Routt, and Pike and San Isabel National Forests should be severed and

25   transferred to the District of Colorado; (8) claims challenging decisions on the Malheur and

26   Umatilla National Forests should be severed and transferred to the District of Oregon; and (9)

27   claims challenging decisions on the Okanogan-Wenatchee and Colville National Forests should

28   be severed and transferred to the Eastern District of Washington.

1

2    Dated: August 6, 2008

3                                    Respectfully submitted,

4                                              RONALD J. TENPAS
                                               Assistant Attorney General
5                                              Environment and Natural Resources Division
                                               United States Department of Justice
6                                              Washington, D.C.  20530

7

8                                              /s/David B. Glazer
                                               DAVID B. GLAZER
9                                              Natural Resources Section
                                               Environment and Natural Resources Division
10                                             United States Department of Justice
                                               301 Howard Street, Suite 1050
11                                             San Francisco, California  94105
                                               Telephone:     (415) 744-6491
12                                             Facsimile:     (415) 744-6476
                                               E-mail:  david.glazer@usdoj.gov
13

14

15                                             /s/Alison D. Garner
                                               ALISON D. GARNER
16                                             Natural Resources Section
                                               Environment and Natural Resources Division
17                                             United States Department of Justice
                                               P.O. Box 663, Ben Franklin Station
18                                             Washington, D.C. 20044-0663
                                               Telephone:     (202) 514-2855
19                                             Facsimile:     (202) 305-0506
                                               E-mail: alison.garner@usdoj.gov

20

21

22

23

24

25

26

27

28

                                       19

1

**Certificate of Service**

2

I hereby certify that on August 6, 2008, Defendant filed through the United States District Court ECF System the foregoing Defendant's Notice of Motion and Motion to Sever Claims and Transfer Venue and Memorandum of Law in Support to be served by CM/ECF electronic filing on the following attorneys of record:

3

4

5

Jeffrey R. Chanin
jchanin@kvn.com

6

Klaus H. Hamm
khamm@kvn.com

7

8

Warren A. Braunig
wbraunig@kvn.com

9

Lauren M. Rule
lrule@advocateswest.org

10

11

12

/s/Alison D. Garner
ALISON D. GARNER

13

Natural Resources Section
Environment and Natural Resources Division

14

United States Department of Justice
P.O. Box 663, Ben Franklin Station

15

Washington, D.C. 20044-0663
Telephone:     (202) 514-2855

16

Facsimile:     (202) 305-0506
E-mail: alison.garner@usdoj.gov

17

/s/ Alison D. Garner

18

19

20

21

22

23

24

25

26

27

28

1  RONALD J. TENPAS
     Assistant Attorney General
2    Environment and Natural Resources Division
     United States Department of Justice
3  DAVID B. GLAZER (D.C. 400966; MD)
     Natural Resources Section
4    Environment and Natural Resources Division
     United States Department of Justice
5    301 Howard Street, Suite 1050
     San Francisco, California  94105
6    Telephone:    (415) 744-6491
     Facsimile:    (415) 744-6476
7    E-mail:  david.glazer@usdoj.gov
   ALISON D. GARNER (UT 9988)
8  Natural Resources Section
   Environment and Natural Resources Division
9  United States Department of Justice
   P.O. Box 663, Ben Franklin Station
10 Washington, D.C.  20004-0663
   Telephone:    (202) 514-2855
11 Facsimile:      (202) 305-0506
   E-mail:  alison.garner@usdoj.gov
12

13 Attorneys for the United States of America

14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                      SAN FRANCISCO DIVISION

18

19 _____
                                          )
20 WESTERN WATERSHEDS PROJECT, *et al.,*  )   No. 08-CV-1460 PJH
                                          )
21            Plaintiffs,                  )   [PROPOSED] ORDER GRANTING
                                          )   DEFENDANT'S MOTION TO SEVER
22       v.                                )   CLAIMS AND TRANSFER VENUE
                                          )
23                                         )
   UNITED STATES FOREST SERVICE,           )   Date:    September 3, 2008
24                                         )   Time:  9:00 a.m.
              Defendant.                   )
25 _____)   Hon. Phyllis J. Hamilton

26

27

28

*Western Watersheds Project, et al. v. U.S. Forest Service*, No. 08-cv-1460 PJH
Proposed Order Granting Defendant's Motion to Sever Claims and Transfer Venue

1         Upon consideration of Defendant's Motion to Sever Claims and Transfer Venue, it is

2    hereby ORDERED that

3         1.    Defendant's motion is GRANTED, and

4         2.    Plaintiffs' claims shall be severed into nine separate suits and transferred as

5    follows:  (1) claims challenging decisions on the Los Padres and Mendocino National Forests

6    should be severed and remain in the Northern District of California; (2) claims challenging

7    decisions on the Klamath, Modoc, Lassen, Plumas, Stanislaus, Inyo, and Sequoia National

8    Forests should be severed and transferred to the Eastern District of California; (3) claims

9    challenging decisions on the Prescott National Forest should be severed and transferred to the

10    District of Arizona; (4) claims challenging decisions on the Salmon-Challis and

11    Caribou-Targhee National Forests should be severed and transferred to the District of Idaho; (5)

12    claims challenging decisions on the Bridger-Teton and Shoshone National Forests should be

13    severed and transferred to the District of Wyoming; (6) claims challenging decisions on the

14    Wasatch-Cache, Ashley, Manti La Sal, and Fishlake National Forests should be severed and

15    transferred to the District of Utah; (7) claims challenging decisions on the Rio Grande, Medicine

16    Bow-Routt, and Pike and San Isabel National Forests should be severed and transferred to the

17    District of Colorado; (8) claims challenging decisions on the Malheur and Umatilla National

18    Forests should be severed and transferred to the District of Oregon; and (9) claims challenging

19    decisions on the Okanogan-Wenatchee and Colville National Forests should be severed and

20    transferred to the Eastern District of Washington.

21

22    IT IS SO ORDERED.

23

24

25    Dated: _____    _____

26                         HON. PHYLLIS J. HAMILTON
                     UNITED STATES DISTRICT JUDGE

27

28



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

DEC 1 8 2003

LUTHER D. THOMAS, CLERK
By:
Deputy Clerk

WILD SOUTH; FRIENDS OF
MISSISSIPPI PUBLIC LANDS;
SOUTHERN APPALACHIAN
BIODIVERSITY PROJECT; VIRGINIA
FOREST WATCH; OUACHITA WATCH
LEAGUE; JERRY WILLIAMS; FOREST
CONSERVATION COUNCIL; THE JOHN
MUIR PROJECT OF EARTH ISLAND
INSTITUTE; TEXAS COMMITTEE ON
NATURAL RESOURCES; and
SIERRA CLUB,

            Plaintiffs

v.                                      CIVIL ACTION NO.
                                        1:03-CV-1230-ODE

ROBERT JACOBS, in his official
capacity as Regional Forester
of the Southern Region of the
U.S. Forest Service; DALE
BOSWORTH, in his official
capacity as Chief of the U.S.
Forest Service; the UNITED
STATES FOREST SERVICE, an
agency of the United States
Department of Agriculture; ANN
VENEMAN, in her official
capacity as Secretary of the
U.S. Department of
Agriculture; and UNITED STATES
DEPARTMENT OF AGRICULTURE,

            Defendants

ORDER

    This civil action in which Plaintiffs, various environmental

organizations, challenge the action of Defendants in approving

timber sales and projects in the National Forests of Arkansas,

Mississippi, Texas, and Virginia, in violation of the

Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, the

National Forest Management Act (NFMA), 16 U.S.C. § 1600 et seq.,

and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. is currently before the Court on Defendants' Motion to Sever Plaintiffs' Claims and to Transfer Venue for Such Claims to the United States District Court for the Western District of Arkansas, the United States District Court for the Southern District of Mississippi, the United States District Court for the Southern District of Texas, and the United States District Court for the Western District of Virginia [# 29].  A hearing was held on this motion on December 11, 2003.  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' Motion.

I.    Background

     The instant case is a challenge to thirty-two (32) timber sales[1] in eight different National Forests in the United States Forest Service's Region 8[2], which is headquartered in Atlanta. Plaintiffs are nine environmental organizations and one individual.[3]  Defendants are three individuals, each sued in their

---

[1] Specifically, Defendants have contracted with various private companies who will cut and haul away the timber.  These contracts apparently also call for the creation of roads in some cases to permit access to the trees which are to be harvested.

[2]  Region 8, also known as the Southern Region, encompasses Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, Oklahoma, Puerto Rico, South Carolina, Tennessee, Texas and Virginia.

[3]  Plaintiffs are as follows: Wild South, an Alabama non-profit corporation based in Montgomery; Friends of Mississippi Public Lands, a Mississippi non-profit corporation based in Starkeville; Southern Appalachian Biodiversity Project, a North Carolina non-profit corporation based in Asheville; Virginia Forest Watch, a Virginia based non-profit corporation; Ouachita Watch League, an Arkansas based non-profit corporation; Texas Committee on Natural Resources, a Texas non-profit corporation

official capacity - Robert Jacobs, Regional Forester for Region 8;
Dale Bosworth, Chief of the United States Forest Service; and Ann
Veneman, Secretary of the United States Department of Agriculture
- and two agencies, the United States Forest Service and the
United States Department of Agriculture.  The challenged timber
sales occurred in the National Forests of Arkansas, Mississippi,
Texas, and Virginia.  Specifically, five sales occurred in
Arkansas (Ouachita National Forest), thirteen sales occurred in
Mississippi (Homochitto, De Soto, Bienville and Delta National
Forests), one sale occurred in Texas (Sam Houston National
Forest), and thirteen sales occurred in Virginia (Thomas Jefferson
and George Washington National Forests).

Plaintiffs' complaint includes four counts.  Count I alleges
that Defendants violated the National Forest Management Act
("NFMA"), 16 U.S.C. § 1600 <u>et seq.</u> and NFMA's implementing
regulations, specifically 36 C.F.R. §§ 219.19, 219.26, by failing
to collect necessary monitoring data prior to approving the timber
sales at issue.  Plaintiffs charge that these approvals as well as
Defendants' denials of the administrative appeals of these
approvals are arbitrary and capricious in violation of the
Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  Count
II alleges that Defendants violated Forest Plan[4] Requirements for

based in Houston; Forest Conversation Council, a national non-
profit environmental membership organization; John Muir Project,
a project of the Earth Island Institute which is a national non-
profit environmental organization; Sierra Club, a national non-
profit environmental organization; and Jerry Williams, an
individual resident of Arkansas.

[4] Within the statutory scheme, these plans are also referred
to as land and resource management plans ("LRMPs").  There are

3

Management Indicator Species ("MIS") by failing to collect necessary monitoring data and that such actions are arbitrary and capricious under the APA. Count III alleges that Defendants violated Forest Plan Requirements for species designated as proposed, endangered, threatened, or sensitive ("PETS") by failing to collect population inventory information or, in the alternative, by failing to comply with PETS monitoring requirements and that such actions are also arbitrary and capricious under the APA. Count IV alleges that the challenged decisions were not made in compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. because Defendants performed Environmental Assessments ("EAs") that improperly resulted in a Finding of No Significant Impact ("FONSI") for each timber sale at issue, thus improperly avoiding further preparation of a Environmental Impact Statement ("EIS"). Plaintiffs seek: (1) a declaratory judgment finding that the agency violated the APA, NFMA, NEPA, and the applicable implementing regulations; (2) an order setting aside and vacating all of the challenged project decisions; and (3) injunctive relief to enjoin the agency from proceeding with all of the challenged projects.

On October 23, 2003, Defendants' counsel informed Plaintiffs that several logging operations had begun on the challenged timber sales lands in Arkansas, Mississippi, and Virginia and that several more were scheduled to begin operation within two weeks of that date. On December 11, 2003, Defendants filed supplemental

---

five Forest Plans at issue in the instant suit.

4

declarations reporting the current status of those projects as
follows:

(1)  Arkansas:  Four projects with ongoing operations and three
     projects that may have operations within the next two weeks.

(2)  Mississippi:  Four projects with ongoing operations and nine
     projects that will not have operations within the next two
     weeks but may have operations thereafter.

(3)  Texas: One project that will not have operations within the
     next thirty days.

(4)  Virginia:  Two projects with ongoing operations and eleven
     that will not have operations within the next two weeks but
     may have operations thereafter.

Defs.' Supplemental Decls. [# 58].  Contemporaneously with this
order, the Court has issued an order granting in part Plaintiffs'
Motion for a Temporary Restraining Order and enjoining the
Arkansas projects from further logging pending further order of
the Court.

       Because the administrative and statutory schemes that these
timber sales took place under are important to the resolution of
Defendants' severance motion, a synopsis of that framework
follows.  Approximately one hundred and ninety million acres of
federal public land in the United States are managed by the Forest
Service.  The Forest Service operates primarily under the NFMA.
16 U.S.C. § 1600  et seq.  Under the NFMA, forest planning and
management occurs at two levels: National Forest and project.  36
C.F.R. Pt. 219.  At the first level, the Forest Service develops
a Forest Plan, or LRMP, which is a broad, programmatic document,
accompanied by an environmental impact statement and public review

process conducted in accordance with NEPA.  42 U.S.C. § 4331 <u>et</u> <u>seq</u>.  The Forest Plan must coordinate the management of "outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness."  16 U.S.C. § 1604(e)(1).  The Forest Plan must also "provide for diversity of plant and animal communities based on the suitability and capability of the specific land area in order to meet overall multiple-use objectives."  <u>Id</u>. § 1604(g)(3)(B).

At the second level, the Forest Service implements the Forest Plan by approving or disapproving particular projects such as the timber sales at issue here.  Proposed projects must be consistent with the Forest Plan and are subject to further NEPA review.[5]  16 U.S.C. § 1604(I).

To carry out the mandate of NFMA, which requires, among other things, ensuring a diversity of plant and animal species and maintaining the viability of desired species, the Forest Service has promulgated regulations.  At issue in this case is 36 C.F.R. Part 219 which sets forth the process for amending and revising

---

[5]  The Supreme Court in <u>Ohio Forestry Ass'n v. Sierra Club</u>, 523 U.S. 726 (1998), described the administrative process as follows.  A Forest Plan must permit logging to take place on the federally owned land by setting logging goals such as the areas of the forest that are suited to timber production or the appropriate method of timber harvest, but the Plan does not by itself permit the logging.  <u>Id.</u> at 729.  Before the Forest Service can permit the logging, it must (1) propose a specific area in which the logging will take place and the harvesting methods to be used; (2) ensure that the project is consistent with the Plan; (3) provide those affected by proposed logging notice and an opportunity to be heard; (4) conduct an environmental analysis pursuant to NEPA; and (5) subsequently make a final decision to permit logging (called a Record of Decision, "ROD"), which affected persons may challenge in an administrative appeals process (first with an appeal reviewing officer, then with an appeal deciding officer - here, the Regional Forester) and in court (APA review of final agency action, as here).  <u>Id.</u> at 729-30.

6

Forest Plans, for monitoring the results of the Plans, and for
guiding the selection and implementation of site-specific
actions.[6]    Section 219.26 titled "Diversity" is a general
statement of policy which reads:

> Forest planning shall provide for diversity of plant and
> animal communities and tree species consistent with the
> overall multiple-use objectives of the planning area.
> Such diversity shall be considered throughout the
> planning process.    Inventories shall include
> quantitative data making possible the evaluation of
> diversity in terms of its prior and present condition.
> For each planning alternative, the interdisciplinary
> team shall consider how diversity will be affected by
> various mixes of resource outputs and uses, including
> proposed management practices.

36 C.F.R. § 219.26.    In addition to this general mandate, 36
C.F.R. § 219.19, titled "Fish and Wildlife resource" focuses
specifically on the management of viable populations of fish and
wildlife providing in pertinent part:

> Fish and wildlife habitat shall be managed to maintain
> viable populations of existing native and desired non-
> native vertebrate species in the planning area.    For
> planning purposes, a viable population shall be regarded
> as one which has the estimated numbers and distribution
> of reproductive individuals to insure its continued
> existence is well distributed in the planning area.    In
> order to insure that viable populations will be
> maintained, habitat must be provided to support, at
> least, a minimum number of reproductive individuals and
> that habitat must be well distributed so that those
> individuals can interact with others in the planning
> area.
>
> (a) Each alternative shall establish objectives for the
> maintenance and improvement of habitat for management
> indicator species selected under paragraph (g)(1) of
> this section, to the degree consistent with overall
> multiple use objectives of the alternative.    To meet

---

[6]    These regulations were superseded by other regulations
adopted in the Clinton Administration.    However, the Bush
Administration suspended those regulations which had the effect of
reinstating the prior Part 219 regulations cited here.    Interim
Final Rule, 68 Fed. Reg. 53294 (Sept. 10, 2003).

> this goal, management planning for the fish and wildlife resources shall meet the requirements set forth in paragraphs (a)(1) through (a)(7) of this section.
>
> . . . .
>
> (6) Population *trends* of the management indicator species will be monitored and relationships to habitat changes determined.  This monitoring shall be done in cooperation with State fish and wildlife agencies, to the extent practicable.

36 C.F.R. § 219.19.  The function of Management Indicator Species ("MIS") in the statutory scheme is a key component in Plaintiffs' claims.  Subsection 219.19(a) explains that MIS may serve as surrogates for other species in the process of monitoring the effects of management decisions on wildlife.  Under this concept, MIS are used as proxies and a Forest Plan must include a listing of MIS for the area covered by the Forest Plan.

Plaintiffs claim (Count I & II) that before the Forest Service approved the timber sales at issue, it should have collected certain data on MIS - data that would gauge the effect of the loss of habitat on the MIS and by analogy the loss of habitat on the other species for which MIS serve as proxies. Plaintiffs also claim (Count III) that the Forest Service should have conducted population inventories for sensitive species - called *proposed, endangered,* threatened or sensitive species ("PETS") - species which usually differ from the MIS although they may overlap.

Additionally, Plaintiffs claim (Count IV) that Defendants violated the NEPA by approving the timber sales without issuing an Environmental Impact Statement ("EIS") rather than relying only an Environmental Assessment ("EA").  Under NEPA, when a federal agency proposes action, such as the timber sales here, it first

must comply with NEPA's environmental assessment ("EA") procedures. 40 C.F.R. § 1500 <u>et seq.</u> Under these procedures, a EA is prepared for every project which examines the environmental impacts of a proposed action and provides and evaluates alternatives to the action. <u>Id.</u> If the EA concludes that the proposed action will be significant, an EIS must be prepared. 42 U.S.C. § 4332(2)(C). An EIS is a more thorough and searching review of all of the reasonably foreseeable environmental impacts associated with the action and requires the generation and review of all available relevant scientific evidence. <u>Id.</u> If the EA concludes that the proposed action will not be significant, then a finding of no significant impact ("FONSI") is issued and the action can proceed without further NEPA analysis unless that conclusion is successfully challenged in Court. 40 C.F.R. § 1508.13. Under Count IV, Plaintiffs seek to challenge the FONSI conclusions as to each of the thirty-two projects at issue in this case.

The United States Court of Appeals for the Eleventh Circuit's decision in <u>Sierra Club v. Martin</u>, 168 F.3d 1 (1999), is central to this case though not dispositive of all of Plaintiffs' claims. <u>Martin</u> involved the Chattahoochee and Oconee National Forests in northern Georgia. In 1991, the Forest Service proposed seven timber sales on approximately 2000 acres of the forest and completed the requisite site-specific studies regarding the environmental impacts of the proposed sales. After the sales were approved, the Sierra Club and other environmental groups filed suit in the Northern District of Georgia alleging that the timber harvest approvals violated the NFMA. The district court granted

9

summary judgment to the Forest Service but on appeal, the Eleventh Circuit overturned the district court. First, the Eleventh Circuit addressed the Sierra Club's argument that the Forest Service violated NFMA by failing to comply with the Forest Plan's requirement that population inventory information on PETS be gathered and considered before implementing any decision affecting areas within the Forest. <u>Martin</u>, 168 F.3d at 3. It was undisputed that the Forest Service did not have the data at issue but the Forest Service argued that it had discretion to make determinations of potential impact based on information other than population inventory data, strictly defined. <u>Id.</u> at 4. The Eleventh Circuit disagreed and said that it could not defer to the Forest Service's FONSI conclusions when no evidence in the record supported the Forest Service's conclusion that the timber projects would not significantly impact species' diversity or viability. <u>Id.</u> Rather, the Eleventh Circuit found that there was a complete lack of inventory or population data on thirty-two of the thirty-seven vertebrate PETS species which inhabit the Chattahoochee National Forest. <u>Id.</u> The Eleventh Circuit came to this conclusion, not based on NFMA or its implementing regulations by themselves, but based on the language of the Forest Plan at issue which made mandatory the requirement to gather such data. <u>Id.</u> at 5. In the light of the Forest Plan's requirements and the failure by the Forest Service to gather the necessary information, the Eleventh Circuit found the agency's position to be contrary to the

clear language of the Plan and statute, and thus not entitled to any deference.[7]  Id.

Next, the Eleventh Circuit addressed the Sierra Club's claim that the Forest Service violated 36 C.F.R. §§ 219.19 and 219.26 because it failed to collect population data for MIS (as required by § 219.19) and for all affected species (as required by § 219.26).  Id.  The Eleventh Circuit first noted that "[t]he obligations of the Forest Service with regard to the Forest Plan continue throughout the Plan's existence," and thus challenges to site-specific projects under section 219.19 were proper.  Id. at 6.  Then it addressed the substantive dispute over whether the regulations required the collection of population data.  It found the requirement in the regulations that population trends be monitored to include an implicit requirement that such data be collected but found that the combination of §§ 219.26 and 219.19 only required the Forest Service to collect inventory data on MIS rather than on all species in the Forest.  Id.  Its reasoning was as follows:

> MIS are proxies used to measure the effects of management strategies on Forest diversity; Section 219.19 requires that the Forest Service monitor their relationship to habitat changes.  Section 219.26 requires the Forest Service to use quantitative inventory data to assess the Forest Plan's effects on diversity.  If § 219.19 mandates that MIS serve as the means through which to measure the Forest Plan's impact on diversity and § 219.26 dictates that quantitative data be used to measure the Plan's impact on diversity, then, taken together, the two regulations require the

---

[7]   As in Martin, this Court's standard of review under the APA is the arbitrary and capricious standard – meaning that agency action should be reversed if found to be "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Forest Service to gather quantitative data on MIS and use it to measure the impact of habitat changes on the Forest's diversity.

Id.

Defendants argue that the Martin decision, while holding that the Forest Service must collect MIS data before approving site-specific projects, does not lend support to the view that the Forest Service must collect site specific data before it approves any site-specific decision.[8]   Rather, Defendants submit that the Martin Court's decision was premised on the Forest Service's failure to collect MIS data at the forest-wide level before approving a site-specific project.   Defendants argue that in this case, they did collect MIS data on a forest-wide basis as required by Martin, although some data may be missing.

Defendants also point to other decisions of courts that support the view that when the Forest Service relies upon sufficient forest-wide data in making a site-specific decision, it need not separately monitor MIS in the project area itself.   These courts have relied on a combination of habitat analysis and

_____

[8]   Defendants also point out that courts are divided on whether the Forest Service needs to collect data regarding MIS at all and if so, whether such data must be collected on the site-specific level.   See Indiana Forest Alliance v. U.S. Forest Serv., 325 F.3d 851 (7th Cir. 2003) (finding that Forest Service could rely on baseline forest-wide data in combination with other habitat data); Inland Empire Public Lands Council v. U.S. Forest Serv., 88 F.3d 754 (9th Cir. 1996) (upholding use of habitat analysis); Appalachian Voices v. U.S. Forest Serv., Civ. No. 7:02CV00526 (W.D. Va. Dec. 12, 2002) (finding that habitat data on a forest-wide level can be used to determine the effect on MIS at a site-specific level as long as the Forest Service also relies on other data regarding population trends); Kirchbaum v. Kelley, 844 F. Supp. 1107 (W.D. Va. 1994) (approving of "habitat plus" approach).   Of course, established law of the Eleventh Circuit is binding on this Court.

12

population data - what the *Defendants* term the "habitat plus"
approach.   Plaintiffs respond that some courts interpreting
<u>Martin</u> have held that population data must be collected at the
project or site-specific level as well.[9]  Defendants appear to
admit that they have not collected such data for individual
project sites.

## II.  <u>Applicable Law</u>

Defendants seek to sever Plaintiffs' claims under Federal
Rules of Civil Procedure 20 and 21 for misjoinder.  They ask the
Court to sever the suit into thirty-two separate lawsuits or, in
the alternative, to sever the case into four lawsuits, one each
for the sales in Arkansas, Mississippi, Texas, and Virginia.  A
party seeking joinder under Federal Rule of Civil Procedure 20
must establish two prerequisites: (1) a right to relief arising
out of the same transaction or occurrence, and (2) some question
of law *or fact common to all persons seeking to be joined.*  <u>See</u>
Fed. R. Civ. P. 20(a).  Under Federal Rule of Civil Procedure 21
a court may sever any claim or party that is *misjoined and proceed*
separately.

Defendants also seek to transfer the venue of these cases to
the District Courts for the Western District of Arkansas, Southern
District of Mississippi, Southern District of Texas, and Western
District of Virginia under 28 U.S.C. § 1404(a).   Section 1404(a)

---

[9]   <u>See</u> <u>Utah Envtl. Congress v. Zeiroth</u>, 190 F. Supp. 2d 1265
(D. Utah 2002) (citing <u>Martin</u> and holding that data requirements
apply at a site-specific level for proposed timber sales); <u>Forest</u>
<u>Guardians v. U.S. Forest Serv.</u>, 180 F. Supp. 2d 1273 (D. N.M.
2001) (citing <u>Martin</u> and holding that population surveys must be
performed in timber sale area).

reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In considering a motion to transfer venue pursuant to section 1404(a), the burden is on the moving party to establish the propriety of the transfer. In re Ricoh Corp., 870 F.2d 570 (11th Cir. 1989). Unless the balance of factors under section 1404(a) weighs strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996).

III. Parties' Arguments

    A.    Severance

    First, Defendants argue that misjoinder exists because the claims involve thirty-two unrelated timber projects that do not constitute a common transaction or series of transactions. They point out that because a different fact-intensive analysis was made as to each of the projects, resulting in thirty-two decisions ("Decision Notice and Finding of No Significant Impact") by the District Ranger in the corresponding National Forest, these sales do not constitute a series of transactions. While the Regional Forester, based in Atlanta, ruled on the appeals from the various District Rangers' determinations, Defendants argue that the Regional Forester's rulings pointed to facts pertinent to the particular circumstances of each case.

    Second, Defendants argue that misjoinder exists because Plaintiffs' claims do not involve a common question of law or fact. Defendants submit that the essence of Plaintiffs' claims is

that the NFMA and/or the Forest Plans required the Forest Service
to collect data on MIS and PETS species prior to authorizing site-
specific projects involving timber harvesting.     But because
different MIS and PETS species occur in each National Forest and
thus the requirements for data collection differ, Defendants
contend that a common question of fact cannot exist.     Defendants
argue that the <u>Martin</u> claims do not constitute a common question
of law because Plaintiffs' claims are in reality based on a
"general legal theory" that does not provide the proper basis for
joinder.

     Plaintiffs argue in response that the Regional Forester
denied each of these appeals based on a refusal to apply <u>Martin</u> -
finding that quantitative MIS data and/or PETS population
inventories were not required and/or that all necessary wildlife
data existed.     They also submit that Defendants' actions
demonstrate a region-wide policy in that for each timber sale, the
Forest Service did not consider the impact of the sales
significant enough to warrant the preparation of a further EIS and
relied on the EA alone.     They also allege that in June of 1999,
the Forest Service Regional Headquarters in Atlanta issued a
regional directive to all Forest Supervisors in Region 8
authorizing them to continue with the MIS habitat analysis that
<u>Martin</u> had held was insufficient to meet 26 C.F.R. §§ 219.19 and
219.26. [<u>See</u> Pls.' Mot. in Opp'n to Defs.' Mot. to Sever/Transfer
Venue Ex. B].     Plaintiffs therefore assert a systemic failure to
apply established law which makes joinder proper under Rule 20
regardless of whether separate decisions (or separate appeals) for
particular projects were made.     Finally, Plaintiffs submit that

judicial economy favors continued joinder because severance of the case would multiply the proceedings.

B.   <u>Transfer</u>

Defendants first argue that this case might have been brought in the judicial districts where the national forests are located, thus satisfying § 1404(a)'s "where it may have been brought" requirement.   Second, Defendants argue that the interests of justice favor transfer because in this case there is a compelling interest in having this localized controversy decided in the states where the National Forests are located.   In matters of environmental law and land use, Defendants argue that disputes should be resolved where the rights and interests of the suit are most vitally affected.   Third, Defendants argue that transfer would not prejudice or inconvenience the parties or witnesses in this case because most of them reside in the districts of proposed transfer and that the administrative record is located in those districts.

Plaintiffs argue in response first that the Northern District of Georgia is the only forum in which the action could be brought in its entirety and thus efficiency and convenience suggest that it should remain here.   Second, Plaintiffs argue that because this case is related to *Chattooga Conservancy et al. V. Robert Jacobs, et al.,* Civil Action No. 1:01-cv-1976-ODE (N.D.Ga.),[10] involving Arkansas timber sales, transfer is disfavored.   Thus, if this case is severed and transferred duplicative and possibly inconsistent

---

[10]*Chattooga* involves challenges to the regional Vegetation Management Environmental Impact Statement which allegedly changes the PETs monitoring provisions of the Ouachita Forest Plan.

results in several courts could result.   Third, Plaintiffs argue that their choice of venue is entitled to deference and should not be disturbed unless other considerations clearly outweigh their choice.   They argue that it is common for suits to be filed in the venue where the final administrative decision was made, even though the environmental impact is in another venue.   Fourth, they dispute Defendants' contention that this venue is inconvenient for the parties and witnesses.    They note that most of the environmental organization plaintiffs have offices throughout the Southern Region and that the Defendants reside in this district. They also argue that the inconvenience of the witnesses is not a persuasive factor in this case because this Court's review will be limited to the administrative record and thus it is unlikely that there will be any witnesses.

Finally, Plaintiffs argue that no interests of justice strongly favor transfer and that transfer would unduly prejudice Plaintiffs.   They dispute Defendants' argument that this case is a local interest by noting that the resource at issue is federal land and thus constitutes a national interest.   Plaintiffs argue that transfer would unduly prejudice them because a multiplication of proceedings would substantially harm their ability to bring these cases by increasing the time and litigation costs involved in managing multiple cases.

IV.  <u>Analysis</u>

A.  <u>Severance</u>

Under Rule 20(a), Plaintiffs must assert a claim that arises out of the same transaction or occurrence or series of transactions or occurrences to warrant joinder of claims.   The

17

term "transaction" in Rule 20 has been given a flexible meaning
and "may comprehend a series of occurrences, depending not so much
upon the immediateness of their connection as upon their logical
relationship." <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303,
1323 (11th Cir. 2002) (quoting <u>Moore v. New York Cotton Exchange</u>,
270 U.S. 593, 610 (1926)).  Thus "all logically related events
entitling a person to institute a legal action against another
generally are regarded as comprising a transaction or occurrence."
<u>Id.</u> (internal citations omitted).  Here, Defendants submit that
the timber sales are thirty-two separate incidents approved under
different factual circumstances.   Plaintiffs counter that the
denial of their administrative appeals for all thirty-two sales by
the Regional Forester constitutes a logically connected series of
transactions because the Regional Forester engaged in a practice
of denying appeals based on <u>Martin</u> violations and that the
Regional Forester's June 1999 memorandum constitutes an occurrence
giving rise to each claim.

While the standard for joinder under Rule 20 is a liberal
one, the only logical connection between these claims is the
action of the Regional Forester in each administrative appeal of
these sales.   The sales were proposed and approved on an
individualized basis.  Moreover, the Forest Service conducted an
individualized EA on each sale and the purpose of each EA is to
consider the specific environmental impact of each sale on the
species in the proposed area.  Also, the Court does not believe
that the issuance of FONSIs as to the 32 projects means that there
is any policy disfavoring issuance of an EIS when needed;
determination of whether a FONSI was improperly issued must be

18

made on a case-by-case basis.  Finally, the Court does not find in
Exhibit B, supra, any directive to disregard required population
inventory in favor of habitat analysis.    Therefore, the Court
concludes that these claims do not meet the first prong of the
Rule 20 test because the only logical connection of these claims -
the final action of the Regional Forester - is simply too tenuous.

These claims also must contain some common question of law or
fact to meet the Rule 20(a) joinder standard.  Both sides appear
to concede that different facts are involved (at least for
projects in different forests) because each forest has different
species that are considered MIS/PETS.    In terms of a common
question of law, if Plaintiffs' arguments that 1) Martin requires
site-specific population data or 2) that if such data is missing
for any of the MIS identified by a Forest Plan is accepted,
Plaintiffs would prevail on many of their 32 claims.  Thus, under
the foregoing analysis, there may be a common question of law.
However, because the Court finds that the first prong of Rule
20(a) test is not satisfied, joinder is not proper.

Furthermore, in terms of judicial economy, whether the case,
even if joined properly, should be severed in the Court's
discretion is another important consideration.  Severing this case
into thirty-two separate cases would not be judicially efficient
because it would compound the proceedings exponentially.  However
because of the importance on the provisions of the various Forest
Plans the case could proceed efficiently if severed into four
cases, based on the four states and Forest Plans at issue.

Substantively, some of the claims in this case will likely proceed on two levels.[11]   First, the Court must determine what each of the four Forest Plans require in terms of data collection. This determination could be a straight application of <u>Martin</u> or the Court may have to make the further legal determination of whether the statute in conjunction with the Forest Plans at issue require site-specific as opposed to forest-wide data collection on MIS and PETS species.   Then, the Court would need to apply this rule of law to the administrative record for each timber sale and determine whether the approval of each of the thirty-two timber sales was based on sufficient MIS/PETS data.   This analysis will differ based on data that the Forest Service collected for each site and will also differ based on the different requirements of the Forest Plans.   Thus because of the improper joinder of these claims and the fact-specific nature of each timber sale at issue, the Court severs this case into four separate cases based on the states where the National Forests at issue are located.

B.   <u>Transfer</u>

Now the Court must address the transfer of these severed claims.   In deciding this motion, the Court must consider whether the factors in § 1404(a) clearly outweigh Plaintiffs' choice of forum.   The first two factors - convenience of parties and witnesses - seem to tilt in favor of transfer to the forums in which the Forests are located.   Plaintiffs, as parties, primarily reside in the states in which the sales they challenge took place.

---

[11]   Plaintiffs' Count I and IV are not dependent on what the Forest Plans state, but will involve straight statutory/regulatory to fact analysis.

While Defendant Regional Forester resides in Atlanta, the proposed transfer district of Virginia is more convenient for the other Defendants who are located in Washington, D.C. and the other districts, of Mississippi and Texas, are no more or less convenient for these other Defendants than Atlanta.  Regarding witnesses, Plaintiffs may be correct that no witnesses are likely to be involved in this litigation but the administrative records are located in the proposed states of transfer.

Under the third factor, the Court must look to the interests of justice.  Under this factor, Defendants' argument regarding the importance of having localized controversies decided at home is an important consideration; indeed, more important than the fact that the Regional Forester is located in Atlanta, Georgia.  They are correct that the people whose lives are most affected by the timber sales live in the proposed districts of transfer.  Also included in the interests of justice factor is the relation of this case to the *Chattooga* case, involving Arkansas timber sales, already pending in this Court.  The Court finds that the interests of justice substantially favor keeping the claims from this case that are related to *Chattooga* in this Court to prevent inconsistent judgments that will cover the same geographic area – Arkansas.  This is especially true because the Court will already be familiar with the Ouachita Forest Plan because it is also at issue in *Chattooga*.

Therefore, the Court finds that the balance of factors as to the Mississippi, Texas and Virginia claims favors transfer to each of those states while the Arkansas claims should remain with this Court because of their relation to the *Chattooga* case and the

21

Court's familiarity with the Forest Plan at issue.  While transfer
is statutorily limited to those judicial districts in which the
claim originally could have been brought, both parties agreed at
the hearing of this case that these districts are proper in terms
of venue and service of process on Defendants.

V.    Conclusion

Accordingly, this Court GRANTS in part and DENIES in part
Defendants' Motion to Sever Plaintiffs' Claims and to Transfer
Venue.  This suit is SEVERED into four separate suits based on the
challenged sales in each state.  Plaintiffs' claims relating to
the Arkansas timber sales will remain with this Court in the
Northern District of Georgia.    The remaining claims are
TRANSFERRED as follows:  claims relating to the thirteen sales
that occurred in Mississippi (Homochitto, De Soto, Bienville and
Delta National Forests) are transferred to the United States
District Court for the Southern District of Mississippi; claims
relating to the thirteen sales that occurred in Virginia (Thomas
Jefferson and George Washington National Forests) are transferred
to the United States District Court for the Western District of
Virginia; and claims relating to the one sale in Texas (Sam
Houston National Forest) are transferred to the United States
District Court for the Southern District of Texas.  Plaintiffs are
given leave to file separate complaints as to the several claims
in this Court within thirty (30) days of the date of entry of this
order; upon filing these cases will be transferred to the
appropriate district.  If Plaintiffs do not file these separate

complaints within the thirty (30) day period, this Court will DISMISS those claims without prejudice.

SO ORDERED, this _18_ day of December, 2003.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

23