JEFFREY R. CHANIN (CSB # 103649)
KLAUS H. HAMM (CSB # 224905)
WARREN A. BRAUNIG (CSB # 243884)
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188
Email: jchanin@kvn.com
       khamm@kvn.com
       wbraunig@kvn.com

LAUREN M. RULE (ISB # 6863), *pro hac vice*
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
Telephone:    (208) 342-7024
Facsimile:    (208) 342-8286
Email: lrule@advocateswest.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; NATURAL RESOURCES DEFENSE COUNCIL; CENTER FOR BIOLOGICAL DIVERSITY; CALIFORNIA TROUT; ENVIRONMENTAL PROTECTION INFORMATION CENTER; KLAMATH SISKIYOU WILDLANDS CENTER; LOS PADRES FOREST WATCH; SIERRA FOREST LEGACY; and SEQUOIA FOREST KEEPER,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. FOREST SERVICE,<br><br>Defendant. | Case No. 3:08-cv-01460-PJH<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO SEVER CLAIMS AND TRANSFER VENUE**<br><br>Date:      September 10, 2008<br>Time:      9:00 a.m.<br>Dept:      Courtroom 3, 17th Floor<br>Judge:     Phyllis J. Hamilton<br><br>Date Comp. Filed:   March 14, 2008<br><br>Trial Date: Not Assigned |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT AND AUTHORITIES....................................................................................2

    A. Plaintiffs' Claims Should Not be Severed. ..................................................................2

        1. The Forest Service's argument that Plaintiffs' claims are improperly joined relies on a misinterpretation of the Federal Rules of Civil Procedure. ...................................................................2

        2. Even were the Forest Service's interpretation of the Federal Rules correct, Plaintiffs' claims are sufficiently similar..............................4

        3. Rule 21 does not independently authorize severing Plaintiffs' claims, and doing so would be inefficient. ....................................................6

    B. Transferring This Action to Nine Different Courts is Not in the Interests of Justice and Will Inconvenience the Parties. ............................................8

        1. The interests of justice favor retaining this case as a single action in this district. ....................................................................................8

        2. Transferring this action will inconvenience the parties. ............................10

            a. Plaintiffs' choice of forum deserves substantial deference. ..........................................................................................11

            b. Severing and transferring this case would significantly inconvenience Plaintiffs. ..............................................12

        3. Other factors do not support severing and transferring this Case. ..............................................................................................................13

III. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Alexander v. Franklin Res., Inc.*
  2007 WL 518859 (N.D. Cal. 2007) ........................................................................... 9, 13

*Anrig v. Ringsby United*
  603 F.2d 1319 (9th Cir. 1979) .................................................................................... 6, 7

*Ashe v. Swenson*
  397 U.S. 436 (1970) ........................................................................................................ 3

*Atlantic Lumber Corp. v. Southern Pac. Co.*
  2 F.R.D. 313 (D. Or. 1941) ............................................................................................ 4

*Brackett v. Hilton Hotels Corp.*
  2008 WL 2632675 (N.D. Cal. 2008) ............................................................................ 12

*Browne v. S.F. Sheriff's Dep't*
  2008 WL 1944099 (N.D. Cal. May 2, 2008) ................................................................. 3

*Cal. Farm Bureau Fed'n v. Badgley*
  2005 WL 1532718 (D.D.C 2005) ............................................................................. 9, 14

*Center for Biological Diversity v. Kempthorn*
  2007 WL 2023515 (N.D. Cal. 2007) ............................................................................ 11

*Continental Grain Co. v. The FBL-585*
  364 U.S. 19 (1960) .......................................................................................................... 9

*Coughlin v. Rogers*
  130 F.3d 1348 (9th Cir. 1997) ............................................................................... 4, 5, 6

*Decker Coal Co. v. Commonwealth Edison Co.*
  805 F.2d 834 (9th Cir. 1986) .............................................................................. 8, 11, 15

*DirecTV, Inc. v. Leto*
  467 F.3d 842 (3d Cir. 2006) .......................................................................................... 6

*EEOC v. Boeing Co.*
  2007 WL 735562 (D. Ariz. 2007) ........................................................................... 3, 4, 7

*Environmental Def. v. U.S. Dept. of Transportation*
  2007 WL 1490478 (D.D.C. 2007) ............................................................................ 9, 10

*Forest Guardians v. Dombeck*
  131 F.3d 1309 (9th Cir. 1997) ..................................................................................... 14

*Forest Guardians v. Johanns*
  450 F.3d 455 (9th Cir. 2006) ....................................................................................... 14

*Forest Guardians v. Kempthorne*
  2007 WL 2572287 at *4 (S.D. Cal. 2007) ................................................................... 12

*Gerin v. Aegon USA, Inc.*
  2007 WL 1033472 (N.D. Cal. 2007) ........................................................................ 9, 10

*Getz v. Boeing Co.*
  547 F. Supp. 2d 1080 (N.D. Cal. 2008) ................................................... 8, 9, 12, 14, 15

**TABLE OF AUTHORITIES**
(cont'd)

**Page(s)**

*Gifford Pinchot Task Force v. U.S. Fish and Wildlife Serv.*
378 F.3d 1059 (9th Cir. 2004) ..................................................................................14

*Greater Yellowstone Coal. v. Bosworth*
180 F. Supp. 2d 124 (D.D.C. 2001) .........................................................................13

*Gulf Oil Corp. v. Gilbert*
330 U.S. 501 (1947) .................................................................................................11

*Int'l Patent Dev't Corp. v. Wyomont Partners*
489 F. Supp. 226 (D. Nev. 1980) ..............................................................................7

*Jones v. Bayer Healthcare*
2005 WL 1489525 (N.D. Cal. 2005) .........................................................................4

*Jones v. GNC Franchising, Inc.*
211 F.3d 495 (9th Cir. 2000) .....................................................................................8

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*
558 F.2d 914 (9th Cir. 1977) .....................................................................................5

*Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*
357 F. Supp. 2d 911 (E.D. Va. 2005) ........................................................................3

*Lou v. Belzberg*
834 F.2d 730 (9th Cir. 1987) ...................................................................................11

*Medina v. Argent Mortg. Co.*
2006 WL 1305230 (N.D. Cal. 2006) .........................................................................5

*Mountain States Legal Fed'n v. Andrus*
499 F. Supp. 383 (D. Wyo. 1980) ...........................................................................14

*National Wildlife Fed'n v. Burford*
677 F. Supp. 1445 (D. Mont. 1985) ........................................................................14

*Pac. Coast Fed'n v. Gutierrez*
2006 WL 194507 (N.D. Cal. 2006) .....................................................................9, 14

*Pacific Car & Foundry v. Pence*
403 F.2d 949 (D. Haw. 1968) .................................................................................12

*Schneider v. Sears*
265 F. Supp. 257 (S.D.N.Y. 1967) ............................................................................9

*Seattle Audubon Soc'y v. Evans*
771 F. Supp. 1081 (W.D. Wash. 1991) ...................................................................14

*Securities Investor Protection Corp. v. Vigman*
764 F.2d 1309 (9th Cir. 1985) ...................................................................................9

*Southern Utah Wilderness Alliance v. Norton*
315 F. Supp. 2d 82 (D.D.C. 2004) ..........................................................................11

*Trout Unlimited v. U.S. Dept. of Agriculture*
944 F. Supp. 13 (D.D.C. 1996) ...............................................................................11

*United Mine Workers of Am. v. Gibbs*
383 U.S. 715 (1966) ..................................................................................................3

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*United States v. Cathcart*
  2008 WL 2661941 (N.D. Cal. June 27, 2008) ............................................................. 1, 7

*United States v. Mississippi*
  380 U.S. 128 (1965) .................................................................................................... 5

*Van Dusen v. Barrack*
  376 U.S. 612 (1964) .................................................................................................... 8

*Wild South v. Jacobs*
  No. 1:03-CV-1230-ODE (N.D. Ga. Dec. 18, 2003) .................................................... 4

*Wyndham Assocs. v. Bintliff*
  398 F.2d 614 (2d Cir. 1968) ....................................................................................... 7

*Wynn v. NBC*
  234 F. Supp. 2d 1067 (C.D. Cal. 2002) ...................................................................... 5

**Federal Statutes**

28 U.S.C. § 1391 ............................................................................................................... 8
28 U.S.C. §1391(e) ............................................................................................................ 7
28 U.S.C. § 1404(a) ....................................................................................................... 8, 9

**Federal Rules**

Fed. R. Civ. P. 18 ................................................................................................. 1, 2, 3, 4
Fed. R. Civ. P. 18(a) .................................................................................................... 1, 3
Fed. R. Civ. P. 20 ...................................................................................................... *passim*
Fed. R. Civ. P. 20(a)(1) ..................................................................................................... 2
Fed. R. Civ. P. 21 ..................................................................................................... 2, 6, 7
Fed. R. Civ. P. 42(b) ................................................................................................... 4, 15

**Other Authorities**

Wright & Miller, *Federal Practice & Procedure* 3d, § 1655 (2001) ................................. 3

# I. INTRODUCTION

Plaintiffs' case is large, and it will require careful case management. But that does not mean it should be severed, or transferred to an alternative venue. The Forest Service's Motion to Sever Claims and Transfer Venue (Doc. 51) is founded on a misunderstanding of the Federal Rules of Civil Procedure and an interpretation of the venue case law that turns the principles of judicial economy and streamlined litigation on their heads. The Forest Service's proposal to break up Plaintiffs' Complaint into nine separate cases, tried in nine separate judicial districts, generating nine separate interpretations of the same law, would create redundancy and waste on a massive scale. Such an approach is contrary to law and should be rejected.

Overeager to make its case for a venue change—which depends on first severing this action—the Forest Service bases its severance analysis on the wrong Federal Rule. While Federal Rule 20 (Permissive Joinder of **Parties**) includes a requirement that the parties' relief arise from a similar transaction and share common law or facts, Federal Rule 18 (Joinder of **Claims**) does not. Rule 18 allows a plaintiff, or group of plaintiffs, to assert "as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). The Forest Service does not allege that Plaintiffs themselves are misjoined; therefore, its reliance on the Rule 20 language is erroneous. Furthermore, this Court has made clear that, contrary to the Forest Service's invitation, a district court should not grant a severance motion merely to effectuate a venue transfer. *United States v. Cathcart*, 2008 WL 2661941, at *1 (N.D. Cal. June 27, 2008). That principle carries even more force where severance would result in <u>nine</u> separate but almost identical cases throughout the federal judiciary.

The Forest Service's venue argument is equally misguided. Perhaps because it has the unlimited resources of the United States Government, the Forest Service pays little heed to the inconvenience that severance and transfer would cause to Plaintiffs, a collection of non-profit environmental groups, by requiring them to litigate nine separate cases in nine separate jurisdictions. But, in fact, the inconvenience to the plaintiffs, and the inefficient administration of justice that would result from trying the same legal issues nine times, tip the balance greatly in favor of keeping this case together. Plaintiffs, as the master of their Complaint, are entitled to a

1

high degree of deference to their choice of forum. They selected the Northern District of California because a good portion of the plaintiffs and underlying events are found in this district, and because it is a convenient forum. Now, citing only the local interest in individual grazing decisions, the Forest Service would wrest control of the Complaint and the litigation away from the Plaintiffs. Their proposed severance and venue transfer would render this case unmanageable, cost-prohibitive, and less likely to result in an efficient settlement of the issues. The Motion should be denied.

## II.   ARGUMENT AND AUTHORITIES

### A.   Plaintiffs' Claims Should Not be Severed.

#### 1.   The Forest Service's argument that Plaintiffs' claims are improperly joined relies on a misinterpretation of the Federal Rules of Civil Procedure.

The Forest Service's Motion to Sever Claims is fatally flawed because it is premised on an application of Federal Rule of Civil Procedure 20, which governs only Joinder of Parties. Instead, the Court should evaluate this Motion in light of Rule 18, which governs Joinder of Claims, and clearly authorizes joinder of the various challenges Plaintiffs now bring against the Forest Service

The Forest Service, either mistakenly or irresponsibly, argues in its Motion that, in order to be joined, a plaintiff's claims must "arise out of the same transaction, occurrence or series of transactions or occurrences" and share a common "question of law or fact." Doc. 51, at 4-5 (quoting Fed. R. Civ. P. 20(a)). If such a connection between claims does not exist, says the Forest Service, the Court may sever those claims pursuant to Federal Rule 21. *Id.* at 5.

But Rule 20 requires no such thing. Rule 20, entitled "Permissive Joinder of **Parties**," defines when **parties**—not **claims**—may be joined:

> Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1); *see id.* 20(b)(1) (applying same standard to defendants). The Forest

Service does not assert in its Motion that any plaintiffs or defendants were improperly joined in this case; thus, Rule 20 is irrelevant.

The relevant Rule is Rule 18, which the Forest Service does not even cite. Entitled "Joinder of **Claims**," Rule 18 states that "[a] party asserting a claim . . . may join, as independent alternative claims, *as many claims as it has* against an opposing party." Fed. R. Civ. P. 18(a) (emphasis added); *see also* Wright & Miller, *Federal Practice & Procedure* 3d, § 1655 (2001) ("Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18.").

"Rule 18 permits very broad joinder of claims . . . ." *Ashe v. Swenson*, 397 U.S. 436, 455 (1970); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). And, unlike Rule 20, Rule 18 does not require that the claims arise from the "same transaction" or "common law or fact." *See Browne v. S.F. Sheriff's Dep't*, 2008 WL 1944099, at *2 (N.D. Cal. May 2, 2008) (comparing Rules 18 and 20); *EEOC v. Boeing Co.*, 2007 WL 735562, at *1 (D. Ariz. 2007) ("In contrast to Rule 20, which addresses the joinder of *parties*, Rule 18 addresses the joinder of *claims*. . . . The "transaction" test and the "common question of law" test do not apply to joinder of claims, in contrast to joinder of parties.") (emphasis in original).

Indeed, Rule 18 was amended in 1996 specifically to <u>remove</u> language suggesting that Rule 20 imposed limits upon its scope: "Rule 18(a) is now amended ... to state clearly as a comprehensive position , that a party asserting a claim . . . may join as many claims as he has against an opposing party. . . . The joinder of parties is governed by other rules operating independently." Fed. R. Civ. P. 18, Advisory Cmmte Notes. As a result, under Rule 18, a party may join as many claims as it has against a single defendant, "regardless of whether those claims arose out of the same transaction or occurrence." *Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F. Supp. 2d 911, 919-20 (E.D. Va. 2005); *see also Boeing Co.*, 2007 WL

735562, at * 1.[1]

The Forest Service's novel reading of Rule 20 as extending to joinder of claims is not supported by case law or common sense. The two in-circuit cases cited by the Forest Service, not surprisingly, applied Rule 20 in the context of joinder of *parties*, and are therefore inapposite here. *See Coughlin v. Rogers*, 130 F.3d 1348, 1349-50 (9th Cir. 1997) (analyzing whether *parties* were improperly joined); *Jones v. Bayer Healthcare*, 2005 WL 1489525 (N.D. Cal. 2005) ("If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined *parties* . . . ." (emphasis added)). Thus, the only case the Forest Service cites in support of its approach is an unpublished 2003 district court case from the Northern District of Georgia. *See Wild South v. Jacobs*, No. 1:03-CV-1230-ODE (N.D. Ga. Dec. 18, 2003). *Wild South's* approach is flawed from the outset. The very first sentence of its "Analysis" section reads "Under Rule 20(a), Plaintiffs must assert a claim that arises out of the same transaction or occurrence or series of transactions or occurrences to warrant joinder of claims." *Id.* at 17. Of course, as described above, Rule 20 does not discuss joined claims. Like the Forest Service's motion, *Wild South* fails to even acknowledge, much less explain, the very different language of Rule 18 for joinder of claims, and thus this Court should reject its flawed reasoning.

2. **Even were the Forest Service's interpretation of the Federal Rules correct, Plaintiffs' claims are sufficiently similar.**

Should the Court determine that Plaintiffs' individual challenges to Forest Service decisions must meet the commonality requirement of Rule 20, the challenges nonetheless are sufficiently similar to defeat the Forest Service's severance motion. To join parties in litigation, there must exist both a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences," and "a question of law or fact common to all plaintiffs [or defendants]" Fed. R. Civ. P. 20(a).

Hypothetically, if this rule did apply to **claims**, Plaintiffs could satisfy both the common transaction or occurrence requirement, and the common question of law requirement. Rule 20

---

[1] If the Forest Service believes that Plaintiffs' challenges are too distinct to be tried at once, the proper approach would be to seek separate trials pursuant to Federal Rule of Civil Procedure 42(b). *See Boeing Co.*, 2007 WL 735562, at *2; *Atlantic Lumber Corp. v. Southern Pac. Co.*, 2

"is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). In that spirit, courts have repeatedly approved joinder of plaintiffs or defendants in cases where state or local officials made separate but similar decisions affecting discrete parties. *See e.g., United States v. Mississippi*, 380 U.S. 128, 142-43 (1965) (joinder of six county registrars who had committed discrete acts aimed at disenfranchising African-American voters); *League to Save Lake Tahoe*, 558 F.2d at 917 (joinder of various developers whose applications had been approved by the regional planning agency, even though each approval had occurred separately); *see also Medina v. Argent Mortg. Co.*, 2006 WL 1305230, at * 3 (N.D. Cal. 2006) (joining defendants where the complaint alleged "an ongoing scheme and enterprise" involving "similar circumstances").[2]

Likewise, here, Plaintiffs challenge 138 decisions made by the Forest Service to re-authorize grazing permits, all in violation of the 2005 appropriations rider and the National Environmental Policy Act, and as part of a systematic series of similar transactions occurring throughout the Western United States during the same brief period.[3] Second Am. Cmplt. ¶¶ 83-106. No fewer than 68 of the decisions implicate the common legal question of whether the Rider's first requirement that the authorization "continue current grazing management" can be satisfied when the Forest Service's decision would authorize substantially more grazing than has occurred in the past 3-5 years.[4] Second Am. Cmplt. (Doc. 50) ¶¶ 107-246. Numerous challenges will require a legal determination of how much monitoring data must exist (in many

---

F.R.D. 313, 314 (D. Or. 1941).

[2] The primary case relied upon by the Forest Service, *Coughlin v. Rogers*, is easily distinguishable. Not only was *Coughlin* a case where the Court severed misjoined *plaintiffs* (rather than *claims*), but the plaintiffs who sought to join their claims—aliens alleging various forms of delay by the INS—were linked together only by their common claim of undue delay. *See Coughlin*, 130 F.3d at 1349-50. They did not allege "a systematic pattern of events," nor a consistent "pattern or policy" of delay by the agency, and the "legal issues, standards, and procedures," were not the same from plaintiff to plaintiff. *Id.* at 1350-51.

[3] 77 of the 138 Forest Service decisions were issued between September 16 and September 30, 2007, the day the 2005 appropriations rider expired. A close temporal proximity between the claims of parties supports their joinder under Rule 20. *See Wynn v. NBC*, 234 F. Supp. 2d 1067, 1068 (C.D. Cal. 2002).

[4] 26 of those decisions involve situations where there has been no grazing at all in recent years.

decisions, there was no data at all; in others, the data was extremely limited) to demonstrate that current grazing management is meeting, or moving toward, objectives in the land and resource management plan. *Id.* And other challenges will require the Court to apply Forest Service policy concerning "extraordinary circumstances" to near-identical sets of facts. The similarity and interconnectedness of these Forest Service decisions, along with the common questions of law they implicate, would satisfy Rule 20 if it applied.

### 3. Rule 21 does not independently authorize severing Plaintiffs' claims, and doing so would be inefficient.

Because the Forest Service has not demonstrated any improper joinder of claims or parties under a proper reading of the Federal Rules, the Court can sever Plaintiffs' claims only if it relies on the final sentence in Rule 21 that the Court "may also sever any claim against any party." Fed. R. Civ. P. 21. However, by its plain terms, Rule 21 does not authorize severance here. Rule 21 is entitled "Misjoinder and Nonjoinder of Parties," and it reads in full: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." *Id.* The simplest reading of this Rule is that, while a Court may not dismiss an action because parties have been misjoined, it may take one of two actions: (1) it may add or drop the misjoined party; or (2) it may sever a claim against a party to remedy the misjoinder. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (noting that, to remedy misjoinder, a court has two options: dropping the misjoined parties or severing the claims against misjoined parties). Since the Forest Service does not allege that any plaintiffs or defendants are misjoined in this case, Rule 21 does not apply.

Yet even if that lone sentence of Rule 21 allows severance of claims in the absence of a misjoinder of parties—or if the Court otherwise has authority to sever claims—the circumstances of this case do not support severance. Not surprisingly given the text of the Rule, there is only one Ninth Circuit case authorizing a Rule 21 severance where parties were properly joined, and it was premised on a highly unusual set of facts.[5] In *Anrig v. Ringsby United*, 603 F.2d 1319 (9th

---

[5] District courts and circuit courts other than the Ninth Circuit have disagreed about whether

Cir. 1979), 14 plaintiffs (residing in four different states) sued 13 individual and corporate defendants (again with residences across four states). *Id.* at 1321. The district court dismissed the plaintiffs' claims on venue grounds, finding that all of the defendants did not reside in Washington, where the corporate defendants admittedly resided. *Id.* at 1321-23. The Court of Appeals, distinguishing dispensable and indispensable defendants, held that the proper approach would have been to sever the claims against dispensable defendants and "dismiss or transfer only the claims against those parties as to whom venue is improper." *Id.* at 1324 (quoting *Goldberg v. Wharf Constructers*, 209 F. Supp. 499 (N.D. Ala. 1962)). The Court explained that it was particularly concerned that a straight dismissal of the claims, in lieu of severance, would preclude certain of the plaintiffs from obtaining relief. *Id.* at 1325. Unlike the situation in *Anrig*, no one disputes that venue is proper in the Northern District of California, 28 U.S.C. § 1391(e); nor are there any concerns here that, in the absence of a Rule 21 severance, a party would not have its day in court. Therefore, *Anrig* does not support the Rule 21 severance the Forest Service seeks.

       Moreover, this Court (earlier this summer) specifically rejected severance for the purpose the Forest Service advances, to facilitate the transfer of severed claims to other venues:

> Nagy, one of the ten defendants named in the complaint, moves to sever all claims against him, pursuant to Federal Rule of Civil Procedure 21. He contends that severance should be granted solely to effectuate transfer, but no Ninth Circuit authority permits severance on this ground. Though other courts have permitted severance to effectuate transfer, they have only done so when the severed defendant was peripheral to the main action.

*Cathcart*, 2008 WL 2661941, at *1. The case against severance is even more compelling here because there is only one defendant, and severance and transfer would require Plaintiffs to try their case against that same defendant in multiple locations. As described below in the venue

---

Rule 21 confers on courts an independent basis to sever claims. *Compare Boeing Co.*, 2007 WL 735562, at * 1 (holding Rule 21 provides no authority to sever claims absent misjoinder of parties) *with Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) (allowing severance "where the administration of justice would be materially advanced"); *Int'l Patent Dev't Corp. v. Wyomont Partners*, 489 F. Supp. 226, 230 (D. Nev. 1980) (severing single claim that arose in Oklahoma and transferring severed case to Oklahoma).

analysis, severance and transfer in this case would impede, not further, the efficient administration of justice. Finally, the Forest Service's proposal is inappropriate because it seeks to do more than sever Plaintiffs' claims, it seeks to rewrite them. Plaintiffs assert only two claims in their Second Amended Complaint (violation of the 2005 appropriations rider, and violation of NEPA). The Forest Service proposes to rewrite the Complaint to contain hundreds of claims, and then sever them. The Rules do not permit this approach.

**B.    Transferring This Action to Nine Different Courts is Not in the Interests of Justice and Will Inconvenience the Parties.**

Under 28 U.S.C. § 1404(a), a court may transfer a case to any other district court where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."[6] The purpose behind Section 1404 is to "prevent the waste of time, energy, and money" and to protect litigants and the public from "unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal quotations omitted). Under Ninth Circuit law, additional factors courts may consider when deciding transfer motions include: plaintiffs' choice of forum; ease of access to sources of proof; familiarity of each forum with the applicable law; feasibility of consolidation with other claims; any local interest in the controversy; difference in the costs of litigation in the alternate forums; court congestion; the parties' contacts with the forums; availability of and access to witnesses; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See Getz v. Boeing Co.,* 547 F. Supp. 2d 1080, 1082 (N.D. Cal. 2008); *see also Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000).

As explained below, transferring pieces of this action to eight other courts is not in the interests of justice, will not convenience the parties, and is not supported by any other factors.

**1.    The interests of justice favor retaining this case as a single action in this district.**

When a party requests transfer "in the interests of justice," as the Forest Service does here, that party bears the burden to demonstrate that the interests of justice require transfer to

---

[6] The Forest Service does not contend that venue for this case is improper in the Northern District of California under 28 U.S.C. § 1391, or otherwise.

1   another district. *Getz*, 547 F. Supp. 2d at 1082 (citing *Commodity Futures Trading Comm'n v.
2   Savage*, 611 F.2d 270, 279 (9th Cir. 1979)). A key component to that analysis is whether the
3   transfer would avoid multiple actions. *See Alexander v. Franklin Res., Inc.*, 2007 WL 518859 at
4   *2 (N.D. Cal. 2007) (citing *A.J. Indus., Inc. v. United States Dist. Ct.*, 503 F.2d 384 (9th Cir.
5   1974)). As the United States Supreme Court has explained: "To permit a situation in which two
6   cases involving precisely the same issues are simultaneously pending in different District Courts
7   leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."
8   *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); s*ee also Securities Investor
9   Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (noting important interest to be
10  served by proceeding with one action, thereby avoiding duplicative litigation and inconsistent
11  results); *Pac. Coast Fed'n v. Gutierrez*, 2006 WL 194507 at *2 (N.D. Cal. 2006) (pendency of
12  similar or related actions is highly persuasive factor in determining whether transfer is in the
13  interest of justice); *Cal. Farm Bureau Fed'n v. Badgley*, 2005 WL 1532718 at *1 (D.D.C 2005)
14  (same). Even the authority quoted by the Forest Service, *Gerin v. Aegon USA, Inc.*, 2007 WL
15  1033472, at *6 (N.D. Cal. 2007), acknowledges the importance of avoiding duplicative litigation,
16  stating that "[a] major consideration is the desire to avoid multiplicity of litigation from a single
17  transaction." *Id.* at *6. Thus, where a transfer, or the failure to transfer, would result in
18  overlapping and potentially contradictory factual and legal determinations involving the exact
19  same parties, courts consistently act to avoid waste, duplication, and inconsistent results.[7]
20      Here, the Forest Service's proposal would *create* nine actions that involve the same
21  parties and legal issues, resulting in significant inefficiencies. The Forest Service would remain

---

[7] *See, e.g., Alexander*, 2007 WL 518859 at *2 (transferring case to New Jersey to avoid duplicative lawsuits arising from related facts); *Pac. Coast Fed'n*, 2006 WL 194507 at *3 (transferring case to Eastern District of California to try together with related case); *Cal. Farm Bureau Fed'n*, 2005 WL 1532718 at *2 (transferring case to Eastern District of California to allow related cases to proceed together); *Environmental Def. v. U.S. Dept. of Transportation*, 2007 WL 1490478 at *5 (D.D.C. 2007) (transferring case to consolidate with other case that had overlapping issues); *Schneider v. Sears*, 265 F. Supp. 257, 267 (S.D.N.Y. 1967)(transferring case to Texas to avoid "wasteful and unnecessary duplication" of actions). Notably, three of these cases were environmental cases challenging agency action, and the federal government took the position opposite to the one it takes here, arguing that cases with overlapping factual and legal questions should be transferred so that they might proceed as a single action. *See Pacific Coast Federation*, 2006 WL 194507, at *1-2; *Cal. Farm Bureau Fed'n*, 2005 WL 1532718, at *1-2;

the defendant in all actions, and at least some of the Plaintiffs, including Western Watersheds Project and Natural Resources Defense Council, would remain plaintiffs in all nine actions.

Moreover, all nine actions would raise the same legal issues, and would present factual scenarios that are repeated many times over. At the heart of Plaintiffs' challenges is the interpretation of the 2005 appropriations rider, and whether the Forest Service met the requirements of this rider when it reauthorized grazing on Forest Service lands. *See* Second Amended Complaint ¶¶ 5-6, 248 (Doc. #50). Plaintiffs' legal arguments concerning the Forest Service's failure to meet the rider's conditions will be identical for most of the challenged decisions, regardless of where those decisions originated, because the Forest Service has repeated the same flaws in its reauthorizations throughout Western forests. *Id.* ¶¶ 83-106. To cite one example, in no fewer than 68 of the 138 decisions, Plaintiffs challenge the Forest Service's reauthorizations because, although the 2005 appropriations rider required that the decisions "continue current grazing management," FY 2005 Consolidated Appropriations Act, Sec. 339 (Pub. L. 108-447), the Forest Service's authorizations would permit grazing at levels substantially higher than what has occurred over the past several years. If granted, the Forest Service's Motion would force the parties to re-litigate that same legal argument in nine different courts.

By contrast, keeping this action together would be preferable for the parties and the Courts. Instead of piecemeal litigation that could very well lead to inconsistent legal rulings and inconsistent obligations imposed on the Forest Service, litigating these challenges in one court (under whatever "test case" or bifurcated approach the parties and the Court agree is appropriate) will enable significant efficiencies, because a ruling on one challenge will provide a framework for the resolution of similar challenges. The interests of justice are best served if the action is not split apart and transferred.

       **2.    Transferring this action will inconvenience the parties.**

Transferring this action will also inconvenience the parties because (1) doing so would interfere with Plaintiffs' choice of forum, which is due significant deference; and (2) splitting up

---

*Environmental Defense*, 2007 WL 1490478 at * 3-4.

this action into nine cases and transferring it into nine different courts would substantially inconvenience Plaintiffs.

### a. Plaintiffs' choice of forum deserves substantial deference.

A plaintiff's choice of forum generally is given great weight, and a defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice. *Decker Coal*, 805 F.2d at 843; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (superseded by statute on other grounds) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (noting that "great weight is generally accorded plaintiff's choice of forum"). The Forest Service's argument that the Court should give little deference to Plaintiffs' forum choice is unavailing because the cases it relies upon for that proposition are ones that involved agency decisions affecting lands *entirely* in other districts, and where few, if any, of the plaintiffs or decision-makers were located in the original district. *See* Mot. to Sever Claims and Transfer Venue, at 16; *Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F. Supp. 13, 17-18 (D.D.C. 1996) (claims all involved decisions and land in Colorado and none of the parties were located in Washington D.C.); *Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 87 (D.D.C. 2004) (claims and decision-makers all were found in Utah); s*ee also Center for Biological Diversity v. Kempthorn*, 2007 WL 2023515 at *6 (N.D. Cal. 2007) (all operative facts concerning challenge to rule regulating harm to polar bears and walruses from oil and gas activities occurred in Alaska).

In this case, Plaintiffs' choice of forum deserves deference. Both the Plaintiffs and the activities at issue are connected to this district. Two of the plaintiffs have their headquarters in this district (California Trout and Environmental Protection Information Center) and two more have regional offices here (Natural Resources Defense Council and Center for Biological Diversity). *See* Second Amended Complaint ¶¶ 13-16. Further, Plaintiffs are challenging decisions from two forests that occur in the district: the Mendocino National Forest and the Los Padres National Forest. *See* Second Amended Complaint ¶¶ *107-115*. While there are certainly other forests at issue in this litigation that are found in other districts, this is hardly a case where

no connection exists between the district and the parties or subject matter at issue in the plaintiffs' complaint. *See Pacific Car & Foundry v. Pence*, 403 F.2d 949, 955 (D. Haw. 1968); *Getz*, 547 F. Supp. 2d at 1083. As the district court in *Forest Guardians v. Kempthorne* summarized:

> There may be numerous possibilities for venue. The moving party's task is not required [sic] to convince the Court that the transferee court is the most appropriate forum—venue is not limited to the district where the most substantial events occurred. *Ibrahim v. Chertoff*, 2007 WL 1558521 at *5 (S.D.Cal. May 25, 2007). Indeed, it is not appropriate to transfer a case "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by plaintiff." *Pain v. United Technologies Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).

2007 WL 2572287 at *4 (S.D. Cal. 2007). Because this district is connected to the case, Plaintiffs' choice of forum deserves significant deference. *Id.* at *3.

### b. Severing and transferring this case would significantly inconvenience Plaintiffs.

Forcing Plaintiffs to litigate their claims in nine different courts would severely handicap them. *First*, Plaintiffs, who are all non-profit organizations that cannot pay for legal representation, would be required to locate and obtain local counsel willing to participate in this case on a pro bono basis in eight other locations. *Second*, Plaintiffs would be required to amend their Complaint nine times, develop litigation plans and test cases for each of the nine actions, write legal briefs that will repeat many of the same legal arguments, and pay the related court costs of proceeding in nine forums instead of one. Litigation costs, and the financial ability of parties to pay for litigation, may be considered in transfer decisions. *Getz*, 547 F. Supp. 2d at 1084 (discussing litigation costs as convenience factor); *Brackett v. Hilton Hotels Corp.*, 2008 WL 2632675 at *7 (N.D. Cal. 2008) (noting that parties' relative financial ability is a relevant consideration). *Third*, litigating nine cases would also be a significant burden on Plaintiffs' attorneys, several of whom are located in San Francisco and working this case on a pro bono basis. Defendant, on the other hand, can simply notify the local Department of Justice attorneys in each state and have separate counsel handle each case. As one court in this district recently noted, "appearing in a single district is more convenient than appearing in two different districts

on opposite coasts of the country." *Alexander*, 2007 WL 518859 at *3. Appearing in *nine* different districts spread across the western United States is even less convenient. The inconvenience Plaintiffs would face cuts strongly against severance and transfer.

### 3.   Other factors do not support severing and transferring this Case.

The Forest Service conveniently ignores the inconvenience to Plaintiffs and the judicial inefficiency that would result from the duplicative litigation it proposes. Instead, the only factor the Forest Service points to in arguing for severance and transfer of these actions is the interest in having localized controversies decided at home. Doc. 51, at 13-15. But that factor alone does not warrant the extreme remedy the Forest Service seeks.

*First*, the Forest Service's suggestion that these grazing decisions are purely local controversies is incorrect. While some local residents undoubtedly have an interest in the challenged Forest Service decisions, compliance with federal environmental laws and management of our national forests is an issue of national interest. *See Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128-29 (D.D.C. 2001). That Plaintiffs here include local, regional and national environmental groups (both large and small) demonstrates the broad, nationwide concern with grazing policy on federal lands. Moreover, many of the challenged allotments fall within or near popular wilderness areas and National Parks that attract visitors from across the country, including Yellowstone National Park, the Bridger Wilderness in the Wind River Range of Wyoming, the High Uintas and Dark Canyon wilderness areas in Utah, and the Golden Trout and Kiavah wilderness areas in California. *See* Second Am. Cmplt. ¶¶ 150, 154, 167, 181, 191, 196, 200. Livestock damage to these popular and beloved areas (and their wildlife) is of great concern to a wide variety of people, including many who reside outside the "local" area.

*Second*, Plaintiffs have alleged that the Forest Service engaged in a common pattern or practice, throughout the Western United States, of using the 2005 appropriations rider where it plainly did not apply, in order to avoid conducting formal environmental reviews. *See id.*, ¶¶ 1, 5-6, 83-106. The whole reason Plaintiffs brought these 138 challenges in a single Complaint is because of the extensive overlap between the legal and factual issues in each decision. The

Forest Service's region-wide approach to utilizing the rider—as exemplified by the fact that 77 of the challenged decisions were issued within one two-week period—justifies a judicial review that examines these decisions on a region-wide basis.

Most importantly, the fact that these allotments and decisions span multiple states is no impediment to this Court's review of them as part of a single Complaint. District courts can, and regularly do, decide environmental cases that affect public lands in multiple states, particularly when agency decisions across different states or regions bear the same or similar legal flaws. *See e.g., Forest Guardians v. Johanns*, 450 F.3d 455, 458 (9th Cir. 2006) (describing case brought in District of Arizona that challenged federal grazing permits from Arizona and New Mexico); *Gifford Pinchot Task Force v. U.S. Fish and Wildlife Serv.*, 378 F.3d 1059, 1064-65 & n.3 (9th Cir. 2004) (describing challenge in Western District of Washington to multiple biological opinions covering national forests in Washington, Oregon, and California, using six decisions as test cases); *Forest Guardians v. Dombeck*, 131 F.3d 1309, 1310-11 (9th Cir. 1997) (describing litigation and preliminary injunction in District of Arizona over activities on eleven national forests in Arizona and New Mexico); *Seattle Audubon Soc'y v. Evans*, 771 F. Supp. 1081, 1096 (W.D. Wash. 1991) (enjoining timber sales in Washington, Oregon, and California for violating National Forest Management Act); *National Wildlife Fed'n v. Burford*, 677 F. Supp. 1445 (D. Mont. 1985) (case challenging sale of coal leases on public lands in Montana and Wyoming); *Mountain States Legal Fed'n v. Andrus*, 499 F. Supp. 383 (D. Wyo. 1980) (controversy over oil and gas lease applications on national forests in Wyoming, Idaho, and Montana).

As in those cases, it would serve both judicial efficiency and the interests of the parties to have all 138 challenges decided in one lawsuit, enabling consistent legal interpretations, consistent obligations imposed on the Forest Service for management of its lands, and a consistent global settlement. *See Pac. Coast Fed'n*, 2006 WL 194507 at *3 (noting the danger of inconsistent outcomes and piecemeal remedies imposed on agency if related cases were handled by different courts); *Cal. Farm Bureau Fed'n*, 2005 WL 1532718 at *2 (same).

Finally, to the extent the Court considers court congestion as part of its analysis, *see Getz*, 547 F. Supp. 2d at 1082, this factor also weighs against transfer. While this Court's docket may

be more congested than some of the other venues to which the Forest Service proposes transfer, the Forest Service's proposal would add eight new cases to the federal docket, contributing to congestion in eight separate districts, and making a universal settlement more difficult. In addition, issues of court congestion would be better remedied by case management and possible bifurcation of the proceedings, pursuant to Federal Rule of Civil Procedure 42(b).[8]

Considering the extreme prejudice and inconvenience to Plaintiffs from litigating nine cases, as well as the strong presumption against duplicative litigation, the balance of factors weighs heavily against severing and transferring this case. The Forest Service has not met its burden to overcome plaintiffs' choice of forum, *see Decker Coal*, 805 F.2d at 843 ("defendant must make strong showing of inconvenience to warrant upsetting plaintiff's choice of forum"), nor has it met its burden of demonstrating that the interests of justice would best be served by a transfer, *see Getz*, 547 F. Supp. 2d at 1082. A transfer of venue would thus be improper, impractical, and ill-advised.

### III.  CONCLUSION

For the foregoing reasons, the Forest Service's Motion to Sever Claims and Transfer Venue should be denied.

Dated: August 20, 2008                    KEKER & VAN NEST, LLP


By: */s/ Warren A. Braunig*
JEFFREY R. CHANIN
KLAUS H. HAMM
WARREN A. BRAUNIG
Attorneys for Plaintiffs

---

[8] During the most recent Case Management Conference (on August 14, 2008), the Court expressed concern about the burden of reviewing 138 different Administrative Records. While each of the challenged decisions will have its own record, Plaintiffs have brought this action precisely because the Forest Service took the position that the challenged decisions are *exempt* from the normal environmental review process. As such, and based on what Plaintiffs have received via FOIA requests, Plaintiffs believe the administrative records for these decisions will be far less extensive than the records in the typical environmental case that finds its way into federal court.