JEFFREY R. CHANIN (CSB # 103649)
KLAUS H. HAMM (CSB # 224905)
WARREN A. BRAUNIG - #243884
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188
Email: jchanin@kvn.com
          khamm@kvn.com

LAUREN M. RULE (ISB # 6863), *pro hac vice*
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
Telephone:     (208) 342-7024
Facsimile:     (208) 342-8286
Email: lrule@advocateswest.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; NATURAL RESOURCES DEFENSE COUNCIL; CENTER FOR BIOLOGICAL DIVERSITY; CALIFORNIA TROUT; ENVIRONMENTAL PROTECTION INFORMATION CENTER; KLAMATH SISKIYOU WILDLANDS CENTER; LOS PADRES FOREST WATCH; SIERRA FOREST LEGACY; and SEQUOIA FOREST KEEPER,,<br><br>                              Plaintiffs,<br><br>          v.<br><br>U.S. FOREST SERVICE,<br><br>                              Defendant. | Case No. 3:08-cv-01460-PJH<br><br>**JOINT STATUS CONFERENCE STATEMENT**<br><br>Date:         August 28, 2008<br>Time:         2:30 p.m.<br>Dept:         Courtroom 3, 17th Floor<br>Judge:        Phyllis J. Hamilton<br><br>Date Comp. Filed:     March 14, 2008<br><br>Trial Date:  Not Assigned |

On August 25, 2008, the parties discussed the case management of this matter pursuant to this Court's instructions at the initial case management conference conducted on August 14, 2008.

**A.    Settlement Conference**

The parties have agreed that this matter should be referred to a magistrate for an Early Settlement Conference, pursuant to ADR Local Rule 3-4(c).

**B.    Motion to Sever Claims and Transfer Venue**

The parties request that the Court continue the hearing on the Forest Service's Motion to Sever Claims and Transfer Venue until after the parties complete proceedings with a settlement magistrate. Should the Early Settlement Conference fail to result in a resolution, the parties will request that the Court reset that motion for hearing.

**C.    Filing of an Answer**

The parties agree that, within 21 days of this Court's Case Management Order, the Forest Service will file an Answer to Paragraphs [*Plaintiffs*: 1-82; *Defendants*: 1-40], 247-254, and the Prayer for Relief, which will clarify the factual and legal issues in dispute prior to any Settlement Conference.

**D.    Consenting to a Magistrate**

Plaintiffs have suggested that the parties either consent to having a magistrate hear this entire case, or alternatively that they jointly request that the Court refer portions of this action to a magistrate for a Report and Recommendation, in order to relieve any pressure on this Court's docket and to facilitate a more speedy determination of the merits. The Forest Service stated that it was not willing, at this point, to agree to these proposals but may reconsider them.

**E.    Case Management**

**1.    Plaintiffs' Proposed Streamlined Test Case Approach**

While this case very well may be resolved in the Early Settlement Conference, if it is not, Plaintiffs hope to address the Court's stated concerns with the "test case" approach outlined in the July 25, 2008 Joint Case Management Statement. As outlined in Plaintiffs' Opposition to the Forest Service's Motion to Sever Claims and Transfer Venue (Doc. 57), Plaintiffs believe that

severing this action into nine related litigations and transferring them to nine different courts would be not only contrary to law, but also would create repetitive and potentially inconsistent litigation, imposing a duplicative drain on multiple courts and lawyers, and decreasing the possibility for a global resolution of the issues.  At the same time, Plaintiffs recognize the case management challenges that gave rise to the Court's concerns expressed during the August 14, 2008 Case Management Conference.

As a result, Plaintiffs propose a different streamlined "test case" approach to be implemented by a magistrate or the Court.  The parties initially would litigate only three sets of representative test cases, with each set relating to a *single* legal issue.  This limitation would permit the Court to reach the primary legal issues in this case while considering only limited excerpts of record.

The sole dispute with respect to each of the 138 decisions in this case is whether it complies with Section 339 of the 2005 appropriations rider.  This law contains two sentences, which set forth *three* requirements that the Forest Service must satisfy: each decision must (1) continue current grazing management; (2) be supported by monitoring data that show the grazing allotment is meeting or moving toward desired conditions; and (3) comply with Forest Service policy on extraordinary circumstances.[1]  One set of representative test cases would be presented for each of the three requirements of the rider. The Court could consider the three sets of test cases in a single summary judgment motion, or in three separate summary judgment motions, based upon short excerpts from the administrative record addressing the requirement in question.  Because the decisions at issue, by definition, were excluded from review under the National Environmental Policy Act ("NEPA"), the administrative records for the decisions are much shorter than the records in typical NEPA cases.

---

[1] Section 339 states: "For fiscal years 2005 through 2007, a decision made by the Secretary of Agriculture to authorize grazing on an allotment shall be categorically excluded from documentation in an environmental assessment or an environmental impact statement under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) if: (1) the decision continues current grazing management; (2) monitoring indicates that current grazing management is meeting, or satisfactorily moving toward, objectives in the land and resource management plan, as determined by the Secretary; and (3) the decision is consistent with agency policy concerning extraordinary circumstances."

1    Plaintiffs assert that there are "clear patterns" to the Forest Service's abuses of Section

2    339 of the rider.  Second Amended Complaint ¶ 5.  As a result, once the Court determines the

3    meaning of the requirements—for example, what the phrase "continues current grazing

4    management" requires—it will become far more clear which of the challenged decisions violate

5    the rider.  Such clarity should position the parties for settlement, or allow the Court quickly to

6    dispose of the remaining decisions.

7    This streamlined approach would require the Court to focus on only limited and discrete

8    portions of the administrative record for each test case decision.  For example, the test cases

9    relating to the Forest Service's compliance with the first requirement of the rider, *i.e.*, whether

10    the decision "continues current grazing management of the allotment," would focus upon the

11    level of grazing that has taken place on the allotment during the five years prior to the challenged

12    decision.  Plaintiffs intend to include as a test case the Forest Service's July 12, 2006 decision to

13    permit grazing on the Diamond Mountain allotment in the Lassen National Forest.  *See*

14    Attachment A.  Based on what the Forest Service has produced in response to Plaintiffs'

15    expansive FOIA requests, the relevant evidence of record concerning the first requirement is a

16    single, three-page spreadsheet prepared by the Forest Service showing that the allotment was

17    grazed in 2002 and 2003, but not at all in 2004, 2005 and 2006, and, arguably, the Annual

18    Operating Instructions from 2002 and 2003,[2] each of which is only four pages long.  *See*

19    Attachments B-D.  In short, determining whether the Diamond Mountain decision complies with

20    the rider should require the review of only 11 pages from the administrative record.

21    Once the Court makes a decision on the Diamond Mountain decision, and the 1-2 other

22    test cases Plaintiffs anticipate bringing related to the first requirement, it should become very

23    obvious whether the 60 or so other decisions that Plaintiffs also challenge under the first prong of

24    the rider should stand.  While the interpretation of the other two requirements may require

25    slightly more record evidence, none of the plaintiffs' test case challenges will require the Court

26    to analyze lengthy record excerpts, as the Court feared.  Moreover, Plaintiffs are willing to work

27    _____

28    [2] The Forest Service apparently did not issue Annual Operating Instructions in 2004-2006, when
      the allotment was not grazed.

1    with the Forest Service to identify joint excerpts of record to further minimize the breadth of the

2    record.

3            Contrary to the Forest Service's suggestion below, this Court (or a magistrate judge)

4    should not limit the "test cases" to decisions arising from National Forests within the Northern

5    District of California. As Plaintiffs explained in their Opposition to the Forest Service's motion

6    to sever and transfer, district courts can, and regularly do, decide environmental cases that affect

7    public lands in multiple states, particularly when agency decisions across different states or

8    regions bear the same or similar legal flaws, as alleged here.[3]  Besides, assuming that the Forest

9    Service's motion to sever and transfer must be denied (as Plaintiffs believe it must), then all 138

10   challenges are properly before this Court, and there is no reason to place any limit on the

11   geographic location of the "test cases."

12           Plaintiffs believe that, short of a settlement, their streamlined approach provides the most

13   straightforward way to balance the Court's need to consider a limited record with the desire of

14   the parties to obtain an expeditious and straightforward resolution of all 138 decisions, without

15   litigating each of them individually.

16           **2.**       **Forest Service's Proposed Case Management Approach**

17           The Forest Service agrees that this litigation poses some daunting case management

18   challenges. In fact, this is not a single case, but a conglomeration of a number of individual

19   cases, brought by different groups of plaintiffs and concerning grazing allotments within

20   different judicial districts. For that reason, the Forest Service filed its motion to sever and

21   transfer. As an alternative to plaintiffs' revised "test case" approach (discussed above), the Court

22

23   [3] *See e.g., Forest Guardians v. Johanns,* 450 F.3d 455, 458 (9th Cir. 2006) (describing case brought in District of Arizona that challenged federal grazing permits from Arizona and New Mexico); *Gifford Pinchot Task Force v. U.S. Fish and Wildlife Serv.,* 378 F.3d 1059, 1064-65 & n.3 (9th Cir. 2004) (describing challenge in Western District of Washington to multiple biological opinions covering national forests in Washington, Oregon, and California, using six decisions as test cases); *Forest Guardians v. Dombeck*, 131 F.3d 1309, 1310-11 (9th Cir. 1997) (describing litigation and preliminary injunction in District of Arizona over activities on eleven national forests in Arizona and New Mexico); *Seattle Audubon Soc'y v. Evans*, 771 F. Supp. 1081, 1096 (W.D. Wash. 1991) (enjoining timber sales in Washington, Oregon, and California for violating National Forest Management Act); *National Wildlife Fed'n v. Burford*, 677 F. Supp. 1445 (D. Mont. 1985) (case challenging sale of coal leases on public lands in Montana and Wyoming); *Mountain States Legal Fed'n v. Andrus*, 499 F. Supp. 383 (D. Wyo. 1980) (controversy over oil

1   could resolve the two grazing allotment decisions that concern Forests within this judicial

2   district, which might provide the Parties guidance as to future litigation, just as plaintiffs' test

3   case approach, but without requiring the Court to make determinations as to Forests far removed

4   from this jurisdiction.

5          However, the Forest Service is willing to work with the plaintiffs to determine whether

6   there is a common approach that may be taken with respect to at least some of these grazing

7   allotments that might help to narrow or resolves the issues.  To that end, the Forest Service is

8   willing to defer its motion to sever and transfer.  The Forest Service also would not object to a

9   reference to a Magistrate Judge for purposes of further case management discussions or some

10  manner of alternative dispute resolution.  With the Magistrate Judge's guidance, and after taking

11  a closer look at individual allotment decisions, the Parties may be able to better assess how best

12  to proceed.  If it does not appear that it is possible to take a more global approach than

13  proceeding allotment-by-allotment, then the motion to sever and transfer should be placed back

14  on the Court's calendar for resolution.

15  Dated:  August 27, 2008                          FOR PLAINTIFFS

16

17

18                                        By:  /s/ Warren A. Braunig
                                               JEFFREY R. CHANIN
19                                             KLAUS H. HAMM
                                               WARREN A. BRAUNIG
20                                             KEKER & VAN NEST, LLP
                                               710 Sansome Street
21                                             San Francisco, CA  94111
                                               Telephone:     (415) 391-5400
22                                             Facsimile:      (415) 397-7188
                                               Email:      jchanin@kvn.com
23                                                         khamm@kvn.com
                                                           wbraunig@kvn.com
24

25

26

27

28  and gas lease applications on national forests in Wyoming, Idaho, and Montana).

424204.01

1

2

3          By:  _/s/ Lauren M. Rule_____
4               LAUREN M. RULE
                ADVOCATES FOR THE WEST
                P.O. Box 1612
5               Boise, Idaho 83701
                Telephone:      (208) 342-7024
6               Facsimile:      (208) 342-8286
                Email:     lrule@advocateswest.org
7

8

9               FOR DEFENDANTS

10

11         By:  _/s/ David B. Gazer_____
12              DAVID B. GLAZER
                Natural Resources Station
13              Environmental and Natural Resources Division
                United States Department of Justice
14              301 Howard Street, Suite 1050
                San Francisco, CA  94105
15              Telephone:      (415) 744-6491
                Facsimile:      (415) 744-6476
16              Email:     david.glazer@usdoj.gov

17              **ATTORNEY ATTESTATION OF CONCURRENCE**

18         I hereby attest that I have obtained concurrences in this filing for the signatures indicated

19   by a "conformed" signature ("s/") within this e-filed document.

20   Dated:  August 27, 2008              FOR PLAINTIFFS

21

22

23         By:  _/s/ Warren A. Braunig_____
                JEFFREY R. CHANIN
24              KLAUS H. HAMM
                WARREN A. BRAUNIG
25              KEKER & VAN NEST, LLP
                710 Sansome Street
26              San Francisco, CA  94111
                Telephone:      (415) 391-5400
27              Facsimile:      (415) 397-7188
                Email:     jchanin@kvn.com
28                         khamm@kvn.com
                           wbraunig@kvn.com

6

424204.01